3⁊

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

APR 1 6 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **ROYAL SURPLUS LINES** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. B-03-109** |
| | § | **JURY DEMANDED** |
| **BROWNSVILLE INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF ROYAL'S MOTION TO ABATE AND SEVER OR TO ABATE AND SET
SEPARATE TRIALS OF EXTRA-CONTRACTUAL CAUSES OF ACTION**

Royal Surplus Lines Insurance Company (Royal) files its Motion to Abate and Sever or to

Abate and Set Separate Trials of Extra-Contractual Causes of Action, as authorized by Federal Rule

of Civil Procedure 21, or alternatively Federal Rule of Civil Procedure 42(b).

### I. SUMMARY OF ARGUMENT

In Texas an insured may not prevail on a bad faith claim without **first** showing that the

insurer breached the contract. *Liberty National Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex.

1996). Consequently, there can be no claim for bad faith when an insurer has denied a claim that

is, in fact, not covered, and it has not otherwise breached the contract. *Tapatio Springs Builders v.

Maryland Cas. Ins. Co.*, 82 F. Supp.2d 633, 647 (W.D. Tex. 1999); *Akin*, 927 S.W.2d at 629.

Accordingly, there must first be a breach of an insurance policy by the insurer before the insured

could even have a colorable claim for bad faith claims handling.

Therefore, before the issues raised by Defendant/Counter-Plaintiff Brownsville Independent

School District's (BISD's) broad bad faith claims are litigated in this case, the insurance contract

issues must first be resolved. Accordingly, BISD's extra-contractual ("bad faith claims") should be

506434.1                              -1-

severed and abated in this case to conserve judicial resources and to avoid the effort and expense of litigating bad faith claims that may be nullified by a judgment for Royal on the contract claim. Severance and abatement of the extra-contractual causes of action will preserve the integrity of the discovery process by focusing discovery on relevant issues and will promote the goal of judicial economy. Moreover, Texas law mandates severance and abatement of the extra-contractual causes of action in instances such as this where the insurer has offered to settle the disputed contractual claims in their entirety.

## II. FACTUAL BACKGROUND

This is an insurance coverage dispute. BISD owns and operates Besteiro Middle School (Besteiro) and Aiken Elementary School (Aiken) in Brownsville, Texas. BISD is the named insured under a series of commercial property policies issued by Royal that insured both Besterio and Aiken from September 1, 1996 through April 1, 2002. On November 29, 2001, BISD made a claim under one of the policies for damage and loss to Besterio and Aiken. Royal promptly acknowledged receipt of the notice of loss and began its investigation.

Additionally, in April 2002, BISD provided Royal a notice of loss for damages and loss under the three (3) additional policies.

On June 9, 2003, as a result of its investigation, Royal filed this action, seeking a declaratory judgment and requesting that this Court declare Royal's obligations, if any, under the policies relative to the claims made by BISD. On December 12, 2003, BISD filed its counterclaim against Royal alleging breach of contract, as well as extra-contractual claims alleging breach of the duty of good faith and fair dealing, common law misrepresentation, violation of the Texas Deceptive Trade Practices Act and violations of the Texas Insurance Code. (*See* Doc. No. 18, BISD's Counterclaim).

BISD has served Royal with written discovery, including Requests for Production and Interrogatories, copies of which are attached as Exhibits "A" and "B", respectively. This written discovery focuses not only on the insurance contract and Royal's coverage obligations, if any, under the policies, but also Royal's claims handling and investigation, Royal's policies and procedures for claims handling, Royal's communications with investigators, adjusters and attorneys it hired in connection with such claim, and Royal's thought process in handling the underlying claim and unrelated claims, among other irrelevant issues. BISD's discovery on its extra-contractual claims is not relevant to the contract coverage issue.

Coverage is a threshold issue; therefore, Royal anticipates filing one or more dispositive motions on the contract coverage issues and expects that one or more such motions will dispose of this entire lawsuit. Accordingly, it would be unreasonably burdensome, harassing, inefficient, and invasive of various privileges to require Royal to respond to discovery concerning its claims handling of the subject claim, much less any other insurance claim involving other insureds, other policies, and other facts. If there is no coverage afforded by the insurance policies, Texas law is clear that these claims-handling issues never become relevant or ripe.

Royal files this motion and requests that BISD's extra-contractual claims be severed from the contract claims and that the Court abate such severed action, as well as all discovery relating to the extra-contractual claims, until such time as the contractual claims have been concluded and the issue of coverage has been determined by this Court.

### III. ARGUMENTS AND AUTHORITIES

A court may conduct separate trials or sever any claim or issue presented. Fed. R. Civ. P. 21; *see Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995). A district court has broad discretion to order the severance of particular claims and afford them separate

treatment when doing so advances the administration of justice. *El Aguila Food Products, Inc., v. Gruma Corp.*, 167 F.Supp.2d 955, 959 (S.D. Tex. 2001). A trial courts decision on severance under Rule 21 is reviewed for abuse of discretion. *See Burnet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). Additionally, pursuant to Rule 42(b), a court may order separate trials of any claim or separate issue "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). This case requires severance and abatement under Rule 21 and/or Rule 42(b) because Defendants have alleged separate claims and because severance of the bad faith claims will further convenience and economy.[1]

In general, under Texas law an insured may not prevail on a bad faith claim without first showing that the insurer breached the insurance contract. *Akin*, 927 S.W.2d at 629. Consequently, there can be no claim for bad faith when an insurer has denied a claim that is, in fact, not covered, and has not otherwise breached the contract. *Id.*

Therefore, before the issues raised by BISD's broad extra-contractual claims are litigated in this case, the insurance contract issues should first be resolved. BISD's extra-contractual claims in this action should be abated to conserve judicial resources and those of the parties, as well as to avoid the effort and expense of litigating bad faith claims that may be nullified by a judgment for Royal on the contract claims. In addition, BISD's extra-contractual claims should be severed and abated in this case to avoid prejudice to Royal, including the invasion of privileges.

---

[1] The Texas Rules of Civil Procedure also support this position. Under the Texas rules, any claim against a party may be severed and proceeded with separately. TEX. R. CIV. P. 41. The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Guaranty Federal Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990).

### A.   Discovery on Extra-Contractual Claims will Focus on Different Facts and Issues than Discovery Necessary for the Contractual Claims.

The extra-contractual claims made by BISD are not so interwoven with the contractual claims at issue that they involve the same identical facts and issues. *See United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 672 (Tex. App.–Houston [1st Dist.] 1993, original proceeding) ("[a] breach of an insurance contract claim is separate and distinct from bad faith, Insurance Code or DTPA causes of action"); *Liberty National Fire Ins. Co. v. Akin,* 927 S.W.2d 627 (Tex. 1996) (J. Abbott, dissenting) (suggesting abating discovery on the bad faith claim pending resolution of the contract claim).

Discovery necessary for a determination of the coverage (contractual) issue will focus on the schools and BISD's compliance with conditions precedent (*e.g.*, prompt notice). In other words, this type of discovery will focus on the cause of the water intrusion and elevated humidity in the schools, the maintenance and/or repairs to the schools (if any) that was performed by BISD or others, the cause of the mold and other damage found in the buildings, when the alleged damages to the buildings commenced, and what work will be necessary to restore the buildings. Causation evidence will require testimony of fact witnesses, as well as testimony from engineers and other experts knowledgeable about construction, maintenance, and microbial contamination and remediation.

Discovery of evidence relevant to the <u>extra-contractual issues</u> (*i.e.*, bad faith), on the other hand, will focus on an entirely different set of facts. For example, this evidence will deal with the steps Royal and its representatives took to investigate the claim and timing of Royal's investigation. Evidence needed for resolution of the extra-contractual claims will also include expert testimony as to the reasonableness of the extent and promptness of Royal's investigation, and whether Royal's liability for the claim ever became reasonably clear (and if so, when). Such expert testimony, of

506434.1                                         -5-

course, would be totally irrelevant and unnecessary if the Court rules that the damages claimed by BISD are not covered by the insurance policies.

In addition to requiring the parties to focus first on the threshold issue of whether there is coverage under the insurance contract, severance and abatement of the extra-contractual issues will protect communications that are privileged and wholly irrelevant to the contractual issues. BISD's extra-contractual claims may involve evidence and proof that is privileged, inadmissible and prejudicial to the basic insurance contract claim. BISD has sought to discover privileged communications among Royal, Royal's counsel, and GAB taking place even after the June 9, 2003 declaratory judgment action was filed. Severance and abatement of the extra-contractual issues properly delays, until relevant, any discovery of privileged communications that may be permitted by this Court.[2]

**B.     *Texas Law Requires Severance and Abatement of the Extra-Contractual Claims When a Settlement Offer Has Been Made.***

In Texas, severance of claims ordinarily rests within the sound discretion of the trial court. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990).[3] However, Texas trial courts are *required* to sever and abate extra-contractual claims when an insurer has made an offer to settle the contract claim. *See In re Allstate Insurance Co. and Heidi Inglet*, 2003 WL

---

[2]Royal does not agree, but stringently denies, that the discovery of privileged communication will ever be necessary or appropriate at any stage of this litigation.

[3]Rule 41, Texas R Civ. P., provides in pertinent part:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added, or suits filed separately may be consolidated, or actions, which have been improperly joined may be severed and each ground of recovery improperly joined may be docketed as a separate suit between the same parties, by order of the court on motion of any party or on its own initiative at any stage of the action, before the time of submission to the jury or to the court if trial is without a jury, on such terms as are just. *Any claim against a party **may** be severed and proceeded with separately.*

506434.1                                    -6-

21026877 (Tex. App.–Houston [1st Dist.] May 8, 2003, orig. proceeding) (attached to this motion as Exhibit D); *see also In re Republic Lloyds, et al.*, 104 S.W.3d 354 (Tex.App.–Houston [14th Dist.] May 8, 2003, orig. proceeding).

Moreover, several Texas courts of appeals have held in "bad faith" cases, when an insurer has made an offer to settle the contract claim, the bad faith claims **must** be severed and abated to avoid undue prejudice to the insurer in its defense of the coverage/contract dispute. *See In Re: Foremost Ins. Co.*, 966 S.W.2d 770 (Tex. App.–Corpus Christi 1998, orig. proceeding); *Mid-Century Ins. Co. v. Lerner*, 901 S.W.2d 749, 752-53 (Tex. App.–Houston [14th Dist.] 1995, orig. proceeding); *Northwestern Nat'l Lloyds Ins. Co. v. Caldwell*, 862 S.W.2d 44, 46-47 (Tex. App.–Houston [14th Dist.] 1993, orig. proceeding); *F.A. Richard & Assocs. v. Millard*, 847 S.W.2d 668, 673 (Tex. App.–Houston [1st Dist.] 1993, orig. proceeding); *State Farm Mut. Auto. Ins. Co. v. Wilborn*, 835 S.W.2d 260, 262 (Tex. App.–Houston [14th Dist.] 1992, orig. proceeding).

Texas courts of appeals have held that when the insurer has made an offer to settle the contract claim, a severance of extra-contractual claims is ***required*** to avoid undue prejudice to the insurer in its defense of the contract/coverage dispute. *See e.g., Mid-Century Ins. Co. v. Lerner*, 901 S.W.2d 749, 752-53 (Tex.App.–Houston [14th Dist.] 1995, orig. proceeding); *Northwestern Nat'l Lloyds Ins. Co. v. Caldwell*, 862 S.W.2d 44, 46-47 (Tex.App.–Houston [14th Dist.] 1993, orig. proceeding); *F.A. Richard & Assocs. v. Millard*, 856 S.W.2d 765, 767 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding); *State Farm Mut. Automobile Ins. Co. v. Wilborn*, 835 S.W.2d 260, 262 (Tex.App.-Houston [14th Dist.] 1992, orig. proceeding). In *Akin,* the Supreme Court specifically concurred with these decisions. *Akin*, 927 S.W.2d at 630.

Royal has had several settlement discussions with counsel for BISD, which have included offers to settle the disputed contractual claims in their entirety. (*See* Exhibit C, Affidavit of Jay W.

Brown). In *Akin,* the Supreme Court specifically noted that an insurer would be unfairly prejudiced

if the breach of contract and extra-contractual claims were tried together when the insurer has made

a settlement offer on the disputed contract claim. *Akin,* 927 S.W.2d at 630. Thus, pursuant to *Akin,*

a severance is required in the present action as the insurer has made a settlement offer on the entire

breach of contract claim. *Id.*; *see also In re Republic Lloyds,* 104 S.W.3d 354 (Tex.App.–Houston

[14th Dist.] May 8, 2003, orig. proceeding).[4]

### C.    *Bad faith claims should be severed and abated to avoid prejudice to Royal.*

When contract and bad faith "claims handling" claims are tried together, the jury hears

evidence not only about whether a claim is covered or not covered, but the insurer's conduct in

investigating the claim. Not only can this lead to confusion of issues and unnecessary complexity,

there is great potential for prejudice.

As detailed above, BISD has already sent initial discovery to Royal seeking information and

documents regarding Royal's investigation of the claim, its claims-handling of this and other claims,

Royal's policies and procedures for adjusting claims, and the conduct of the independent adjuster

hired by Royal. Royal's insurance claim file, however, is privileged and protected from discovery

on the contract cause of action. *See, e.g., Leski, Inc. v. Federal Ins. Co.,* 129 F.R.D. 99, 105-106 (D.

N.J. 1989) (request for files from other insureds, reinsurance and reserve information denied); *Food

Lion, Inc. v. United Food & Commercial Workers Union,* 103 F.3d 1007, 1012-13, (D.C. Cir. 1997)

(a request for information that has no conceivable bearing on claims or defenses should be

disallowed); *see also Maryland Am. Gen. Ins. v. Blackmon,* 639 S.W.2d 455, 458 (Tex. 1982)

---

[4]If left joined, Royal would be in the unenviable position of having to argue a contradiction to the jury. The contract claim would require Royal to contend it had no obligation to pay out under the policies. At the same time, evidence of the offered pay out would be necessary to the bad faith claim. In a trial of these two matters together, the offer of settlement could be introduced in evidence by the court for the bad faith cause of action, but be highly prejudicial and not admissible in the contract case. Such a contradiction requires severance.

(finding that discovery relating to investigation of the insurance claim and materials relating to the insurer's decision to either pay or not pay the claim, and information relating to the claim, are privileged as to the contract claim).  Therefore, although certain portions of the claim file may arguably be discoverable, in part, on the extra-contractual claims, it is neither admissible nor even discoverable on the contract claim under Texas law.  Discovering and litigating contract and extra-contractual claims together in this case is prejudicial to Royal and contrary to notions of justice.

Prejudice to Royal can also result because in order to defend itself on BISD's extra-contractual allegations, Royal may have to waive certain privileges.  Such waiver may negatively impact Royal's ability to defend the breach of contract/coverage claims. *See Mid-Century,* 901 S.W.2d at 752 (discussing the problems associated with forcing an insurer to choose between waiving attorney-client privilege to defend bad faith claim and protecting privileged material in breach of contract cases).

For example, when the bad faith claims are tried with the contract claim, there is a conflict which may unfairly force the insurer to choose between (1) insisting on its right to exclude evidence of any settlement negotiations and coverage determinations (thereby losing the advantage of showing that it was attempting to be reasonable in defense of the bad faith claims) and (2) putting on such evidence and risking a prejudicial inference that it has admitted liability on the contract action. *See Akin*, 927 S.W.2d at 631 (Abbott, J., joined by Gonzales, Hecht & Owens, JJ., dissenting) (noting that undue prejudice can result from the presentation of inconsistent defenses).  Accordingly, Royal should not be forced to choose between waiving or not waiving privileges to defend itself, when severance and abatement will eliminate the prejudice to Royal and will promote justice and efficiency.

Severance and abatement are also necessary because without it, the parties will be put through the effort and expense of conducting discovery and preparing for trial of claims that Royal believes will likely be disposed of by the resolution of the contract/coverage claim. *See Millard*, 847 S.W.2d at 673.

**D.    *Judicial Economy Dictates Severance and Abatement, Because the Coverage Issue Must Be Resolved Prior to BISD's Bad Faith Claims.***

Because an insured's bad faith claims depend upon the outcome of the contract cause of action, "[t]rying these claims separately avoids potentially unnecessary litigation and expense." *Greil v. GEICO*, 2001 WL 1148118, *1 (N.D. Tex. Sept. 18, 2001) (attached as Exhibit "E"); *see also South Hampton Refining Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 875 F. Supp. 382, 384 (E.D. Tex. 1995) (holding that where parties' contractual coverage issues are unresolved, severing the contractual coverage issues from the bad faith claims is warranted so that the court and parties do not waste valuable resources attending to claims which could be disposed of by a determination of the insurance coverage); *State Farm Mut. Auto Ins. Co. v. Wilborn*, 835 S.W.2d 260, 261 (Tex. App. – Houston [14th Dist.] 1992, orig. proceeding) (noting that breach of an insurance contract claim is separate and distinct from bad faith, Insurance Code, or DTPA causes of action, and finding severance appropriate).

The Texas Supreme Court has observed that severance may be necessary in some bad faith cases. *Akin*, 927 S.W.2d at 630. One example cited by the Texas Supreme Court is when "the insurer has made a settlement offer on the disputed contract claim." *Id.*, citing *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 4 (Tex. 1986) (holding that settlement offers are inadmissible to prove or disprove liability on a claim). Accordingly, severance and/or bifurcation of the bad faith claims, so that the contract issues can be resolved first, is warranted in this case.

506434.1                                    -10-

Severance and abatement of the extra-contractual claims is particularly appropriate in this case because the determination of the coverage/contractual issues may completely obviate the need to determine BISD's extra-contractual claims based on bad faith, and purported Texas Insurance Code violations. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex. 1995) (as a general rule there can be no claim for bad faith where an insurer has denied a claim that is in fact not covered under the policy).[5]

No depositions have been taken since the lawsuit was filed in June 2003. The Court has not yet heard any discovery disputes concerning the proper scope of "extra-contractual" discovery. Severance and abatement of the extra-contractual claims will prevent the parties from incurring the cost and inconveniences of discovery that would be needless in the likely event that BISD cannot prevail on the issue of coverage under the insurance contract. It will also prevent the parties from inconveniencing the Court with discovery disputes on extra-contractual matters that are almost certain to arise, since they become moot if the Court rules against BISD on the contractual claim. For the sake of judicial economy, all extra-contractual claims should be severed and abated until and unless the issue of coverage is resolved in favor of the insured. *See In Re: Foremost Ins. Co.,* 966

---

[5]In *Stoker*, the Supreme Court of Texas cited the following cases in support of the general rule that there can be no claim for bad faith when an insurer has denied a claim that is in fact not covered: *O'Malley v. United States Fidelity & Guar. Co.,* 776 F.2d 494, 500 (5th Cir. 1985) (noting that no Mississippi case has ever allowed bad faith recovery for the insured without first establishing liability under the policy); *Gilbert v. Congress Life Ins. Co.,* 646 So.2d 592, 593 (Ala. 1994) (plaintiff bears the burden of proving a breach of contract by the defendant); *Reuter v. State Farm Mut. Auto. Ins. Co., Inc.,* 469 N.W.2d 250, 253 (Iowa 1991) ("a bad faith failure to pay the insured when the insured event occurs...may subject the insurer to tort liability"); *Wittner v. Jones,* 864 S.W.2d 885, 890 (Ky. 1993) (noting that in order to establish a tort action for bad faith the insured must first prove that the insurer was obligated to pay under the policy); *Pemberton v. Farmers Ins. Exchange,* 109 Nev. 789, 858 P.2d 380, 382 (1993) ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy"); *Bartlett v. John Hancock Mut. Life Ins. Co.,* 538 A.2d 997, 1000 (R.I. 1988) ("there can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance"); *see also* OSTRAGER & NEWMAN, INSURANCE COVERAGE DISPUTES § 12.01 at 503 (7th ed. 1994) ("The determination of whether an insurer acted in bad faith generally requires as a predicate a determination that coverage exists for the loss in question"), 15A RHODES, COUCH ON INSURANCE LAW 2d § 58:1 at 249 (Rev. Ed 1983) ("As a general rule, there may be no extra-contractual recovery where the insured is not entitled to benefits under the contract of insurance which establishes the duties sought to be sued upon").

S.W.2d 770 (Tex. App.–Corpus Christi 1998, orig. proceeding); *Millard,* 847 S.W.2d at 673 (ordering abatement of extra-contractual issues so that the parties would not be put to the effort and expense of conducting discovery and preparing for trial of claims that may be disposed in a previous trial); *Wilborn*, 835 S.W.2d at 262 (abating the proceedings on the bad faith claim until final disposition of the uninsured motorist claim).

If this Court determines that there is no coverage under the Royal insurance policies for BISD's claimed damages, BISD's extra-contractual claims become moot and ripe for dismissal. *Stoker,* 903 S.W.2d at 341. However, in the unlikely event the Court finds coverage under the Royal policies for some of the damages claimed by BISD, the parties can then proceed with and conduct discovery on the claims handling and other facts relevant to the extra-contractual/bad faith claims.

## IV. CONCLUSION

Therefore, abatement and severance of the bad faith "claims-handling" claims in this matter will avoid the wholesale waste of time, money, and judicial resources, as severance and abatement will allow the contract issues to be resolved first, which may nullify the extra-contractual claims altogether. In addition, severance and abatement will prevent prejudice to Royal and confusion of issues.

## V. PRAYER

Royal Surplus Lines Insurance Company prays that the Court (1) grant its motion to abate and sever Counter-Plaintiff Brownsville Independent School District's extra-contractual claims from the contract claims; (2) order the clerk of the court to assign a new number to the severed action; (3) abate all the extra-contractual claims and "claims-handling" discovery pending full and final resolution of the contractual coverage issues; (4) enter a final judgment in favor of Royal on the

breach of contract claims; and (5) grant Royal Surplus Lines Insurance Company all other relief to which it is justly entitled.

Respectfully submitted,

**Jay W. Brown**
State Bar No. 03138830
SDT No. 1314
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEY-IN-CHARGE FOR PLAINTIFF
ROYAL SURPLUS LINES INSURANCE
COMPANY**

*with express permission by
John V. Trevino*

**OF COUNSEL:**

BEIRNE, MAYNARD & PARSONS, L.L.P.
**Stephen R. Wedemeyer**
State Bar No. 00794832
S.D.T. No. 19797
**John V. Trevino, Jr.**
State Bar No. 24003082
S.D.T. No. 23860
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

506434.1                          -13-

## CERTIFICATE OF CONFERENCE

I certify that we have conferred with Baltazar Salazar, counsel for Defendant BISD, and he has indicated that BISD is opposed to this motion.

Jay W. Brown

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record on April 15, 2004.

Craig S. Smith                              *Via Certified Mail/Return Receipt Requested*
LAW OFFICE OF CRAIG S. SMITH
14493 S.P.I.D., Suite A, P.M.B. 240
Corpus Christi, Texas 78418

Baltazar Salazar                           *Via Certified Mail Return Receipt Requested*
1612 Winbern
Houston, Texas 77004

Ramon Garcia                               *Via Certified Mail Return Receipt Requested*
LAW OFFICE RAMON GARCIA, P.C.
222 W. University
Edinburg, Texas 78539

*Attorneys for Defendant BISD*

Jay W. Brown

## IN THE UNITED STATES DISTRSTICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROYAL SURPLUS LINES | § | |
| INSURANCE COMPANY, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-03-109 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
|     Defendant | § | |

## BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S
## REQUEST FOR PRODUCTION TO PLAINTIFF

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant, Brownsville Independent School District, requests that Plaintiff Royal Surplus Lines Insurance Company, produce for inspection and copying the documents and tangible things described below. Production of the documents and tangible things requested herein shall occur on the thirty-first (31st) day following service of this request, at either of the offices of Defendant's counsel, beginning at 9:00 am, or at such time and at such other location as may be agreed upon by the parties, or as the court may direct, and shall continue during regular business hours until completed. The following definitions and instructions apply to this request for production and your production and responses thereto.

## DEFINITIONS AND INSTRUCTIONS

1.     As used herein, the word "document" shall mean and include every writing or record of every type and description printed or recorded or reproduced by mechanical means or hand that is or has been in your possession, custody or control or of which you have knowledge, including, without limitation, correspondence, memoranda, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, voice recordings, video recordings, stenographic or tape or wire recordings, maps, surveys, minutes or statistical data, data processing cards, computer records or type or printout, every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy contains any commentary or notations whatsoever that do not appear on the original, agreements,

EXHIBIT "A"

contracts, telegrams, summaries, including, without limitation, summaries of telephone conversations and summaries or reports of investigations or negotiations, photographs, negatives, motion picture film, magnetic tapes, newspaper stories or clippings and drafts of any of the foregoing.

2.  "You," "your" and "Plaintiff" shall mean Royal Surplus Lines Insurance Company and each and every servant, employee, expert witness, independent contractor, attorney, and all other persons acting on or for Plaintiff's behalf.

3.  As used herein, the word "person" shall mean and include an individual, association, firm, partnership, corporation, board, committee, agency or commission, or any legal entity of any type, or any other organization or entity, whether public or private.

4.  The singular and masculine form of any noun or pronoun shall embrace and be read and applied as the plural or the feminine or the neuter, as circumstances shall be appropriate.

5.  Each request should be construed independently and not be referenced to any other request therein for purposes of limitation, unless one request specifically refers to another request.

6.  Privilege: If response to any request is withheld under claim of privilege, state with specificity the claim of privilege or other grounds for refusing to respond and provide all information necessary to evaluate the claim of privilege, including, without limitation, the date of each document and the subject matter thereof, identify the persons named therein, and identify all persons to whom any portion of the content of that document has been disclosed. Such information should be provided in a manner sufficient to allow it to be described to the Court for ruling on the privilege or other reason asserted.

7.  Documents produced pursuant to this request should be tendered either in the precise form or manner as they are kept in the usual and ordinary course of business or organized and labeled to correspond with the categories, which follow.

8.  If any document or material requested herein has been destroyed or lost, describe in detail the circumstances of, and the reasons for, such destruction or loss and produce all documents that relate to either the circumstances or the reasons for such destruction or loss.

9.  If you have ever had any of the documents requested in your possession, custody or control, but at the present do not have these documents in your possession, custody or control, you are requested to state the following with respect to each such document or material:

   a.  The present location, if known;

   b.  The date each such document or material left your possession, custody, or control;

   c.  The reasons why each such document left your possession, custody or control; and;

   d.  The names and addresses of all persons having knowledge about the matters inquired about in the immediately preceding subparagraphs a-c.

10.   This request is continuing in nature. If further information comes into your possession or is brought to your attention or to your attorney's attention in the course of trial or preparation for trial, supplementation of the responses is required.

11.   As used herein, a document or tangible thing "relating to" or "pertaining to" a given subject means any document or tangible thing that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, involves or is in any way pertinent, directly or indirectly, to that subject including, without limitation, documents concerning the presentation and preparation of other documents or tangible things.

BY: _____

Baltazar Salazar
State Bar No. 00791590
Fed. Bar No. 18536
**Law Offices of Baltazar Salazar**
1612 Winbern
Houston, Texas 77004
Tel: 713-655-1300
Fax: 713-807-1930
Attorney in Charge for BISD

OF COUNSEL FOR BISD:
Ramon Garcia
State Bar No. 07641800
Fed. Bar No. 3936
Catherine W. Smith
State Bar No. 18547080
Fed. Bar No. 19360
**Law Offices of Ramon Garcia, P.C.**
222 W. University Drive
Edinburg, Texas 78539
Tel: 956-383-7441
Fax: 956-381-0825

## CERTIFICATE OF SERVICE

I hereby certify that these discovery requests were served by certified mail, return receipt requested on the attorney in charge for Royal Surplus Lines Insurance Company on this the 16th day of March, 2004, addressed as follows:

Mr. Jay Brown
Beirne, Maynard & Parsons, L.L.P.
1300 Post Oak Blvd.
Suite 2500
Houston, Texas  77056-3000

BALTAZAR SALAZAR

4

## **REQUEST FOR PRODUCTION TO PLAINTIFF**

**REQUEST FOR PRODUCTION 1:**

All documents that identify the person(s) involved in monitoring, investigating, and/or adjusting of BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 2:**

Please provide the following documents for each of the person(s) involved in investigating, monitoring, and/or adjusting BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

(a)     all personnel file(s) (including both "official" and "desk" versions);

(b)     resume;

(c)     the size of their caseload (number of pending claim files);

(d)     all documents discussing or concerning their ability to handle claim files (including all reprimands, goals for future performance, or notes of any such conversations); and

   (e)     all orientation manuals or handbooks given to these person(s).

   (f)

**RESPONSE:**

**REQUEST FOR PRODUCTION 3:**

All files (including claims file(s), coverage question files, and investigation files) relating in any way to BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School (including any such files maintained by the insurance agent or broker, your local claims office, your home office, and any claim file(s) set up by independent insurance adjusters or private investigators).

**RESPONSE:**

**REQUEST FOR PRODUCTION 4:**

All claims manuals used by the person(s) involved in monitoring, investigating, and/or adjusting BISD's claim (including any such manuals used by the insurance agent or broker, your local claims office, your home office, or any independent insurance adjusters).

**RESPONSE:**

**REQUEST FOR PRODUCTION 5:**

All policy manuals and procedural manuals used by the person(s) involved in monitoring, investigating, and/or adjusting of BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School (including any such manuals used by the insurance agent or broker, your local claims office, your home office, or any independent insurance adjusters).

**RESPONSE:**

**REQUEST FOR PRODUCTION 6:**

A complete copy of all policies you have issued to BISD since 1996 (include the policy jacket, any amendments, endorsements, declaration sheets, and the application for each policy).

**RESPONSE:**

**REQUEST FOR PRODUCTION 7:**

All underwriting file(s) for all policies issued to BISD since 1996.

**RESPONSE:**

**REQUEST FOR PRODUCTION 8:**

All brochures, handbooks, or marketing materials relating to the policies you have issued to BISD since 1996.

**RESPONSE:**

**REQUEST FOR PRODUCTION 9:**

All customer survey reports or compilations relating to commercial property policies you have issued since 1996.

**RESPONSE:**

**REQUEST FOR PRODUCTION 10:**

All complaint logs, reports or compilations relating to commercial property policies you have issued since 1996.

**RESPONSE:**


**REQUEST FOR PRODUCTION 11:**

Produce the primary pleading (i.e., petition or complaint) filed in any litigation (instituted in the last five years) where claims for relief were brought against Royal or by Royal against any of your policy holders based upon allegations of coverage for water damage and/or mold under a commercial property policy. (Alternatively, you may simply provide a list of such litigation, including the style of the case, the court in which in was filed.)

**RESPONSE:**


**REQUEST FOR PRODUCTION 12:**

All documents (including all correspondence, memorandums, and electronic communications) regarding or relating to the investigations and coverage concerning BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**


**REQUEST FOR PRODUCTION 13:**

All documents referring or relating to the establishment of reserves for BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School (including all local, regional, and home office reserve amounts).

**RESPONSE:**


**REQUEST FOR PRODUCTION 14:**

A "flow chart" illustrating the structure of the claims department and underwriting departments of the Plaintiff and its subsidiaries.

**RESPONSE:**

**REQUEST FOR PRODUCTION 15:**

All demonstrative charts or other tangible items which you intend to display to the jury during the trial of this cause.

**RESPONSE:**

**REQUEST FOR PRODUCTION 16:**

All 10Ks, 8Ks, and 10Qs filed by you within the last five years.

**RESPONSE:**

**REQUEST FOR PRODUCTION 17:**

Any and all opinion letters you received from any lawyer or other individual stating whether coverage should or should not be extended for BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 18:**

Produce all documents evidencing any communication between you and any other party relating to whether BISD had insurance coverage for the claims involving Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 19:**

Produce any and all documents supporting your contention that you did not violate §21.21 of the Texas Insurance Code.

**RESPONSE:**

**REQUEST FOR PRODUCTION 20:**

Produce any and all documents supporting your contention that you did not breach your contract with BISD.

**RESPONSE:**

**REQUEST FOR PRODUCTION 21:**

Produce any and all documents supporting your contention that you did not violate §21.55 of the Texas Insurance Code.

**RESPONSE:**

**REQUEST FOR PRODUCTION 22:**

Produce any and all documents evidencing any invoice, bill, or fee statement received by you from any attorney whom you claim recovery of attorneys' fees in this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION 23:**

Produce any and all documents supporting your contention that you did not breach the duty of good faith and fair dealing which you owed to BISD.

**RESPONSE:**

**REQUEST FOR PRODUCTION 24:**

Produce any and all documents supporting your contention that you had a reasonable or good faith basis for delaying paying and/or not paying and/or denying BISD's claims.

**RESPONSE:**

**REQUEST FOR PRODUCTION 25:**

Produce any and all tape, electrical, or mechanical recordings or transcription evidencing, referring or relating in any way to BISD's claims for damage to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 26:**

Produce all credited and uncredited financial statements for the last five years that reflect your net worth.

**RESPONSE:**


**REQUEST FOR PRODUCTION 27:**

Produce all documents supporting your contention that the damages to the Besteiro Middle School and Bruce Aiken Elementary School are not from a covered cause of loss.

**RESPONSE:**


**REQUEST FOR PRODUCTION 28:**

Produce all documents supporting your contention that the Causes Of Loss-Special Form, exclusion B1c for governmental action, exclusion B1g for water and/or B2d (1)-(7) apply to exclude coverage for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**


**REQUEST FOR PRODUCTION 29:**

Produce all documents supporting your contention that the exception to exclusion B2d in the Causes Of Loss-Special Form does not apply to BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**


**REQUEST FOR PRODUCTION 30:**

Produce all documents supporting your contention that exclusion B3 (a)-(c) of the Causes Of Loss-Special Form apply to exclude coverage for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 31:**

Produce all documents supporting your contention that Limitation C5 applies to coverage for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 32:**

Produce all documents supporting your contention that E2 of the Causes Of Loss-Special Form applies to exclude coverage for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 33:**

Produce all documents supporting your contention that the damages to the Besteiro Middle School and Bruce Aiken Elementary School are not within Section A coverage under the Building and Personal Property cover form.

**RESPONSE:**

**REQUEST FOR PRODUCTION 34:**

Produce all documents supporting your contention that BISD has failed to fulfill any condition under E3 (a)-(b) under the Building and Personal Property coverage form regarding BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 35:**

Produce all documents supporting your contention that BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School does not fall within coverage provided by the Business Income (and Extra Expense) coverage form.

**RESPONSE:**

**REQUEST FOR PRODUCTION 36:**

Produce all documents supporting your contention that BISD failed to comply with any condition set forth in section D2(a)-(b) of the Business Income (and Extra Expense) coverage form regarding BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 37:**

Produce all documents reflecting the relationship between G.A.B. Robbins and EFI.

**RESPONSE:**

**REQUEST FOR PRODUCTION 38:**

Produce all documents reflecting the selection and/or approval of EFI by G.A.B. Robbins to perform work at Besteiro Middle School and Bruce Aiken Elementary School.

**RESPONSE:**

**REQUEST FOR PRODUCTION 39:**

Produce all correspondence regarding BISD's claims for damages to the Besteiro Middle School and Bruce Aiken Elementary School between EFI by G.A.B. Robbins.

**RESPONSE:**

**REQUEST FOR PRODUCTION 40:**

Produce all correspondence regarding BISD's claims for damages to the Besteiro Middle School and Bruce Aiken Elementary School between Royal and EFI or between G.A.B. Robbins and EFI.

**RESPONSE:**

G:\WP\2009-Ramon Garcia matters\001-Brownsville ISD\discovery\RFP.doc

## IN THE UNITED STATES DISTRSTICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

ROYAL SURPLUS LINES      §
INSURANCE COMPANY,      §
       Plaintiff,      §
     §
vs.      §      CIVIL ACTION NO. B-03-109
     §
BROWNSVILLE INDEPENDENT      §
SCHOOL DISTRICT,      §
       Defendant      §

## BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S
## INTERROGATORIES TO PLAINTIFF

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant, Brownsville Independent School District, propounds the attached interrogatories to Plaintiff. You are advised that your responses to these interrogates must be written, signed and sworn to, and must be served upon the undersigned counsel within thirty-one (31) days following service of these Interrogatories upon your attorney. You are requested to place your answers to the Interrogatories in the spaces provided for them or to restate each interrogatory, followed by your answer thereto, in a separate document. The following instructions and definitions apply to these Interrogatories and your answers thereto:

### INSTRUCTIONS

1.     These interrogatories are continuing in nature and require supplementary answers if you or your attorney obtain information that reveals that your answers were incorrect or incomplete when made, or that your answers are no longer complete.

2.     These interrogatories and your answers to them may be offered into evidence at the trial of the above cause.

3.     Your failure to respond to these interrogatories as required by the Federal Rules of Civil Procedure within the time required may result in entry of judgment against you, assessment of attorney's fees against you, or other sanctions determined by the court.

EXHIBIT "B"

## DEFINITIONS

A.    **"Document"** means each of the following that is in the possession, custody or control of each party named above or that can be obtained by the party named above because the party named above has a superior right to compel production from a third person: the original and <u>each nonidentical copy</u> (whether different from the original by virtue of notes made or otherwise) and, if the original is not in existence or subject to your control, each nonidentical copy, regardless of origin or location, of any handwritten, typewritten, printed, recorded, transcribed, filmed, microfilmed, or otherwise prepared matter, including without limitation, drafts, however produced or reproduced, and further including without limitation any papers, book accounts, drawings, graphs, charts, photographs, phone records, plans, blueprints, telexes, telegrams, electronic or videotaped or mechanical recordings, magnetic impulses, and any other data compilation from which information can be obtained or translated into reasonably usable form.

B.    Documents or communications that "relate(s) to" or that are "in connection with" a given subject, claim, assertion, or defense shall mean any document or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyzes, or is in any way pertinent to that subject, including, without limitation, documents concerning the presentation or preparation of other documents.

C.    The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb shall be considered to include within its meaning all other tenses of the verb so used.

D.    Unless the context clearly indicates to the contrary, "and" and "or" both mean "and/or."

E.    "Identify, " when used with reference to a **person**, means to state the person's full name, the person's present home and business addresses and present home and business telephone numbers, and the person's present employer, job title, substantive responsibilities, and job description.

F.    "Identify," when used with reference to any **entity** other than a person, means to state each of the following: (a) the full name of the entity; (b) the present or last known address of the entity's principal office or place of business; and (c) the type of entity (e.g., corporation or partnership).

G.    "Identify, " when used in reference to a **document**, means to state, without limitation, the type of document (e.g., letter, memorandum, telegram, chart, etc.); the name, address, business affiliation and title of the author or signer thereof; its date; the name, address, business affiliation and title of all addressees and recipients; its present location; and the name, present address, business affiliation and title of the person having present custody thereof.

H.    "Identify, " when used in reference to a **communication**, means, without limitation, to describe with particularity and certainty the information communicated; to state the manner in which the communication occurred (e.g., by document, by telephone conversation, or by meeting); if the communication was by document, to identify each person who sent and received the document and to state the date on which and the place to which the document was sent and received; and if the communication was in person, by meeting and/or by telephone, state the date, time and place of the communication, to identify each natural person who was present during all or part of the communication, and to describe in detail the information communicated by each natural person.

I.    "Identify, " when used in reference to an **act**, means, without limitation, to state with particularity and certainty each and every item of behavior, communication and/or tangible thing which constitutes the act, including the place, time and date of each such item; to identify each and every person participating in the act and to specify the items of behavior performed, information communicated, and/or tangible thing provided, by each such person; and to identify each and every document and communication which constitutes or describes the behavior, communication, tangible thing, or any part thereof.

J.    "Identify, " when used in reference to an **omission to act**, means, without limitation, to state with particularity and certainty each and every item of behavior, communication and/or tangible thing which you contend should have been performed, communicated, and/or provided and the place, time, and date each such performance or communication should have occurred; to identify each and every natural person who, by reason of knowledge or particular circumstances, you contend should have performed, communicated, and/or provided each item of omitted behavior, communication and/or tangible thing; and to identify each and every document or communication which you believe tends to establish that the omitted behavior, communication and/or tangible thing should have been performed, provided, or communicated.

K.    "Identify, when used in reference to a **lawsuit**, means, without limitation, to state for each criminal and/or civil action, the case, including the cause number, court, and parties; your status as either plaintiff, defendant, intervenor, interpleader, or third party plaintiff or defendant; the substance of the claim[s] and defense[s] asserted; and the ultimate disposition or resolution of the claim[s] and defense[s].

L.    With respect to and as part of the answer to each Interrogatory, state whether the answer is given upon personal knowledge and, if so, identify each person upon whose knowledge the answer is given. If any answer is not given upon personal knowledge, identify the source of the information or belief. If any answer is based upon documents, identify each such document.    If any answer is based upon oral communications, identify each such oral communication.

M.    The word "person" means any natural person, corporation, proprietorship, partnership, professional corporation, joint venture, association, group, governmental or quasi-governmental agency or agent whether foreign or domestic and any other entity.

N .    "You," "your" and "Plaintiff" shall mean Royal Surplus Lines Insurance Company, the party to whom these interrogatories are directed, and also means each and every entity on whose behalf this suit has been brought by Plaintiff in a representative capacity, and each and every servant, employee, agent, expert witness, independent contractor, attorney (and the agents, employees and servants of each attorney), and any and all other persons acting on or for such party's, person's or entity's behalf.

O.    "Plaintiff's Complaint" shall mean Plaintiffs' Original Petition in this cause and any and all amended complaints that may be filed.

P.    "BISD's claim" shall mean the damages to Besteiro Middle School and Bruce Aiken Elementary School.

Q.    "Your claim" means any allegation of a cause of action contained in Plaintiff's Complaint.

R.    "Communication" includes within its meaning any and all representations and warranties.

S.    "Defendant" shall mean any party from whom you seek recovery of any of the damages alleged in Plaintiff's Complaint.

BY: _Baltazar Salazar_
Baltazar Salazar
State Bar No. 00791590
Fed. Bar No. 18536
**Law Offices of Baltazar Salazar**
1612 Winbern
Houston, Texas 77004
Tel: 713-655-1300
Fax: 713-807-1930
Attorney in Charge for BISD

OF COUNSEL FOR BISD:
Ramon Garcia
State Bar No. 07641800
Fed. Bar No. 3936
Catherine W. Smith
State Bar No. 18547080
Fed. Bar No. 19360
**Law Offices of Ramon Garcia, P.C.**
222 W. University Drive
Edinburg, Texas 78539
Tel: 956-383-7441
Fax: 956-381-0825

## CERTIFICATE OF SERVICE

I hereby certify that these discovery requests were served by certified mail, return receipt requested on the attorney in charge for Royal Surplus Lines Insurance Company on this the 16th day of March, 2004, addressed as follows:

Mr. Jay Brown
Beirne, Maynard & Parsons, L.L.P.
1300 Post Oak Blvd.
Suite 2500
Houston, Texas 77056-3000

BALTAZAR SALAZAR

## INTERROGATORIES

**INTERROGATORY 1:**

Identify each person contributing answers to these interrogatories, identifying such person(s) specifically to the appropriate interrogatory.

**ANSWER:**

**INTERROGATORY 2:**

Identify each individual(s) involved in investigating, monitoring, and/or adjusting BISD's claims.

**ANSWER:**

**INTERROGATORY 3:**

Identify each individual(s) involved in underwriting policies for BISD since 1996, and identify which policies they were involved with.

**ANSWER:**

**INTERROGATORY 4:**

Describe, in detail, the process that you undertook to investigate whether there was coverage for BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School under your policy after you received BISD's notice of claim.

**ANSWER:**

**INTERROGATORY 5:**

Identify any and all lawsuits filed against you and/or by you in the past five years arising out of your denial of a claim by an insured for water and/or mold damage under a commercial property policy.

**ANSWER:**

**INTERROGATORY 6:**

Describe in detail all action(s) that were taken by your employees, agents or representatives in creating a reserve of funds for the payment of BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**


**INTERROGATORY 7:**

Identify each section of your policy that you contend shows that you have no duty to provide coverage for BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**


**INTERROGATORY 8:**

Identify your net worth as of the date you answer these interrogatories.

**ANSWER:**


**INTERROGATORY 9:**

Describe your policies and practices, whether oral or written, that you follow in determining whether to pay claims submitted by your insureds against losses arising out of mold and/or water damage.

**ANSWER:**


**INTERROGATORY 10:**

Describe, in detail, any investigation undertaken by you, your officers, employees or agents pertaining to the merits of BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**

**INTERROGATORY 11:**

What filing, notice, proof of loss, or any other document, if any, do you claim that BISD has not provided to you with regard to BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**


**INTERROGATORY 12:**

State whether, between 1996 and the present, you have paid a claim of one of your insureds under a commercial property policy for claims similar to BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School. If there have been similar claims, identify, in detail, each claim.

**ANSWER:**


**INTERROGATORY 13:**

Please describe in detail the nature of the relationship between G.A.B. Robbins and EFI.

**ANSWER:**


**INTERROGATORY 14:**

Please state in detail the basis for your contention that the damages to the Besteiro Middle School and Bruce Aiken Elementary School are not from a covered cause of loss.

**ANSWER:**


**INTERROGATORY 15:**

Please state in detail the basis for your contention that the Causes Of Loss-Special Form, exclusion B1c for governmental action, exclusion B1g for water and/or B2d (1)-(7) apply to exclude coverage for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**

**INTERROGATORY 16:**

Please state in detail the basis for your contention that the exception to exclusion B2d in the Causes Of Loss-Special Form does not apply to BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**

**INTERROGATORY 17:**

Please state in detail the basis for your contention that exclusion B3 (a)-(c) of the Causes of Loss-Special Form applies to exclude coverage for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**

**INTERROGATORY 18:**

Please state in detail the basis for your contention that Limitation C5 applies to coverage for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**

**INTERROGATORY 19:**

Please state in detail the basis for your contention that E2 of the Causes Of Loss-Special Form applies to exclude coverage for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**

**INTERROGATORY 20:**

Please state in detail the basis for your contention that the damages to the Besteiro Middle School and Bruce Aiken Elementary School are not within Section A coverage under the Building and Personal Property cover form.

**ANSWER:**

**INTERROGATORY 21:**

Please state in detail the basis for your contention that BISD has failed to fulfill any condition under E3 (a)-(b) under the Building and Personal Property coverage form regarding BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**

**INTERROGATORY 22:**

Please state in detail the basis for your contention that BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School does not fall within coverage provided by the Business Income (and Extra Expense) coverage form.

**ANSWER:**

**INTERROGATORY 23:**

Please state in detail the basis for your contention that BISD failed to comply with any condition set forth in section D2 (a)-(b) of the Business Income (and Extra Expense) coverage form regarding BISD's claims for the damages to the Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**

**INTERROGATORY 24:**

Please state in detail the process and identify the individuals involved with the approval and/or selection of EFI to perform work at Besteiro Middle School and Bruce Aiken Elementary School.

**ANSWER:**

### AFFIDAVIT OF JAY W. BROWN

COUNTY OF HARRIS          §
                          §
STATE OF TEXAS            §

     BEFORE ME, the undersigned authority, personally appeared Jay W. Brown, who being first

by me duly sworn, stated as follows:

1.     My name is Jay W. Brown. I have represented and continue to represent Royal Surplus Lines Insurance Company in the dispute made the subject of Civil Action No. B-03-109; *Royal Surplus Lines Insurance Company v. Brownsville Independent School District*; pending in the United States District Court for the Southern District of Texas, Brownsville Division. I am over the age of eighteen, of sound mind and have never been convicted of a felony. The statements in this affidavit are based on my personal knowledge, and are true and correct.

2.     Royal has had several settlement discussions with counsel for Brownsville Independent School District about this claim, which have included offers to settle the disputed contractual claims in their entirety. For example, in correspondence to BISD's counsel of June 9, 2003, I , on behalf of Royal, formally offered to settle all disputed contract claims in their entirety for a sum certain.

Further, affiant saith not.



Jay W. Brown

     Sworn to and subscribed to on this the 15th day of April, 2004, to certify which witness my hand and seal of office.

Notary Public, State of Texas

LINDA ANN CONDON
Notary Public, State of Texas
My Commission Expires
JUNE 27, 2006

# EXHIBIT "C"

Not Reported in S.W.3d                                                           **Page  3**
**(Cite as: 2003 WL 21026877 (Tex.App.-Hous. (1 Dist.)))**
<KeyCite Citations>

Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION

Court of Appeals of Texas, Houston (1st Dist.).

**In re ALLSTATE INSURANCE COMPANY and Heidi Inglet, Relators.**

**No. 01-02-01235-CV.**

May 8, 2003.

Insured who was injured in a hit-and-run accident sued his uninsured/underinsured insurer, alleging breach of contract, breach of the duty of good faith and fair dealing, and Insurance Code violations. The 113th District Court, Harris County, Patricia Hancock, J., denied insurer's motion to sever and abate extra-contractual claims from breach of contract claim. Insurer filed petition for writ of mandamus. The Court of Appeals, Sherry Radack, C.J., held that trial court should have severed and abated bad faith claims, pending trial of breach of contract claim, which insurer had offered to settle.

Writ conditionally granted.

**Abatement and Revival** ⊖ 5
2k5
Trial court should have severed and abated insured's bad faith claims against uninsured/ underinsured insurer, pending trial of the breach of contract claim, which insurer had offered to settle, so that evidence of the settlement offer would not be admitted in the breach of contract case.

**Action** ⊖ 60
13k60
Trial court should have severed and abated insured's bad faith claims against uninsured/ underinsured insurer, pending trial of the breach of contract claim, which insurer had offered to settle, so that evidence of the settlement offer would not be admitted in the breach of contract case.

Original Proceeding on Petition for Writ of Mandamus.

David E. Lueders, Frank D. Lanter, Lueders & Boanerges, Houston, for appellant.

Nomaan Husain, Houston, for appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

MEMORANDUM OPINION

SHERRY RADACK, Chief Justice.

*1 Relators, Allstate Insurance Company and Heidi Inglet, filed a petition for writ of mandamus complaining about the trial court's [FN1] October 16, 2002 order denying Allstate's motion for separate trial and plea in abatement. We conditionally grant the writ.

> FN1. The Honorable Patricia Hancock, presiding judge of the 113th District Court of Harris County, Texas. The underlying lawsuit is trial court cause number 2002-41904, styled Jun Ho Baek v. Allstate Insurance Co. and Heidi Inglet.

After a hit-and-run accident in October 2001, the plaintiff/real party in interest, Jun Ho Baek, sued his uninsured/underinsured insurance carrier, Allstate Insurance Company, alleging (1) breach of contract, (2) breach of the duty of good faith and fair dealing, and (3) violations of article 21.21 of the Texas Insurance Code. Allstate moved to sever and abate the extra-contractual claims from the breach of contract claim. The trial court denied the motion, and this petition for writ of mandamus followed.

This court, and many others, have held that when an insurer has made an offer to settle the contract claim, a severance of the tort and contract claims is required to avoid undue prejudice to the insurer in its defense of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT "D"



Not Reported in S.W.3d
(Cite as: 2003 WL 21026877, *1 (Tex.App.-Hous. (1 Dist.)))

Page   4

coverage dispute. See Mid-Century Ins. Co. v. Lerner, 901 S.W.2d 749, 752-53 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding); Northwestern Nat'l Lloyds Ins. Co. v. Caldwell, 862 S.W.2d 44, 46-47 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding); F.A. Richard & Assocs. v. Millard, 856 S.W.2d 765, 767 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding); United States Fire Ins. Co. v. Millard, 847 S.W.2d 668, 673 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding); State Farm Mut. Auto. Ins. Co. v. Wilborn, 835 S.W.2d 260, 262 (Tex.App.-Houston [14th Dist.] 1992, orig. proceeding). The rationale of these cases is that, ordinarily, offers of settlement of a coverage dispute are inadmissible on the contract claim, but may nevertheless be admissible on the tort claim to rebut evidence of bad faith. Liberty Nat. Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex.1996).

In this case, Allstate offered to settle the breach of contract case for $1200. Therefore, under the reasoning of the cases cited above, the trial court should have severed and abated the bad faith claims, pending trial of the breach of contract claim, so that evidence of the $1200 settlement offer would not be admitted in the breach of contract case. See also Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 4 (Tex.1986) (holding that settlement offers are inadmissible to prove or disprove liability on a claim).

The present case is distinguishable from Akin, in which the supreme court held that severance and abatement was not required in a case in which "settlement negotiations" involved only the payment by the insurer of the undisputed portion of the claim. 927 S.W.2d at 630. In fact, the Akin court noted that an offer to settle the entire contract claim would have required a severance. Id. The record in this case shows that Allstate attempted to settle the entire breach of contract claim, not merely an undisputed portion of it. Therefore, we hold that the trial court erred by denying Allstate's motion to sever and abate the extra-contractual claims from the breach of contract claim. [FN2]

FN2. It appears the trial court was misled in this case by the plaintiff's response to the motion to sever, in which the plaintiff claimed that a severance is not permitted when the plaintiffs claims are brought pursuant to article 21.55 of the Texas Insurance Code, which imposes damages for failing to promptly pay claims. See Lusk v. Puryear, 896 S.W.2d 377, 379 (Tex.App.-Amarillo 1995, orig. proceeding) (holding severance improper because article 21.55 claims and breach of contract claim are not separate causes of action). Lusk is not applicable to this case because plaintiff did not sue pursuant to article 21.55--he sued under article 21.21 and bad faith. Plaintiff, apparently realizing that his pleadings do not permit him to rely on Lusk, has abandoned that argument as grounds for denying mandamus relief.

*2 Accordingly, we direct the trial court to (1) vacate her order of October 16, 2002, denying Allstate's motion to sever and abate the bad faith claims from the contract claim; (2) grant Allstate's October 3, 2002 motion for separate trial and plea in abatement; (3) sever the bad faith and article 21.21 claims from the contract claim; and (4) abate all proceedings on the bad faith claim and article 21.21 claims until the breach of contract claim is resolved. The writ of mandamus is conditionally granted and will issue only if the trial court fails to comply with the orders of this Court.

2003 WL 21026877 (Tex.App.-Hous. (1 Dist.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in F.Supp.2d
(Cite as: 2001 WL 1148118 (N.D.Tex.))
< KeyCite History >

Page  14

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

**Roxanne GREIL, Plaintiff,**
v.
**GEICO, Geico General Insurance Company and Jenetha Holt, Defendants.**

No. 3:01-CV-0352-H.

Sept. 18, 2001.

MEMORANDUM OPINION AND ORDER

SANDERS, Senior J.

*1 Before the Court is Defendants' Motion for Severance and Abatement, filed June 15, 2001, Plaintiff's Response, filed June 27, 2001, and Defendants' Reply to Plaintiff's Response, filed July 6, 2001.

I. BACKGROUND

Plaintiff Roxanne Greil was involved in an automobile accident with Stacy Howard on or about February 19, 1997. Greil suffered injuries as a result of this accident. Howard caused the collision, but she was underinsured for purposes of satisfying Greil's claims. At the time of the accident, Greil had Uninsured Motorist/Underinsured Motorist ("UM/UIM") coverage with Geico. Greil filed her claim with Geico, but disputed the amount Geico offered to pay. Greil filed suit in the 134 th Judicial District Court of Dallas County alleging breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and violations of Articles 21.21 and 21.55 of the Texas Insurance Code. Greil also sought attorneys' fees pursuant to the DTPA and the Insurance Code. Geico removed the case to this Court based on diversity jurisdiction. See 28 U.S.C. §§ 1332 & 1446. The amount in controversy exceeds $75,000.

II. SEPARATE TRIALS

The Court will treat Defendants' motion to sever as a motion for separate trials. Pursuant to Fed. R. Civ. P. 42(b), the Court may order separate trials "to avoid prejudice" to a party. Here, Geico argues that defending the contract claim before the same jury that would hear evidence of a settlement offer relating to Greil's tort claims would be unfairly prejudicial. The Court agrees.

The Texas Supreme Court has implied that the presence of a settlement offer may make severance of contractual from extra-contractual claims necessary to ensure a fair trial. See Liberty National Fire Ins. Co. v. Akin, 927 S.W.2d 627, 630 (Tex.1996). This Court is not bound by Texas law on this procedural issue. See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). However, Texas decisions aid the Court in determining whether separate trials should be ordered. See Karam v. Nationwide General Ins. Co., No. 3:99-CV-2047-G, 1999 WL 1240791, at *1 (N.D.Tex. Dec. 20, 1999). Texas courts are in the best position to determine when claims arising under Texas law warrant separate trials. See id. With this in mind, the Court finds the Texas Supreme Court's position on this issue highly persuasive. In Liberty, the court noted that "[a] trial court will undoubtedly confront instances in which evidence admissible only on the bad faith claim would prejudice the insurer to such an extent that a fair trial on the contract claim would become unlikely." Liberty, 927 S.W.2d at 630. The court explained that one instance would be where an insurer has made a settlement offer on the disputed contract claim. See id. It then endorsed several Texas appellate court decisions severing breach of contract claims from extra-contractual ones based on the presence of a settlement offer. See id.

*2 Geico has made a settlement offer to Greil that was declined. Allowing the jury to hear this evidence would create a great danger of prejudice to Geico; this could not be sufficiently mitigated by a limiting instruction. See Karam, 1999 WL 1240791, at *1. The Court also notes that Greil's bad faith,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT "E"



Article 21.21 and DTPA claims depend upon the outcome of the contract cause of action. See U.S. Fire Ins. Co. v. Millard, 847 S.W.2d 668, 673 (Tex.App.-Houston [1 st Dist.] 1993, orig. proceeding), cited with approval in Liberty, 927 S.W.2d at 630. Trying these claims separately avoids potentially unnecessary litigation and expense. Accordingly, Geico's motion for separate trials for the contract and extra-contractual claims is GRANTED. Greil's breach of contract claims must be tried separately from, and prior to, her bad faith, Article 21.21 and DTPA claims. Greil's Article 21.55 claim will be tried with the contract claim as it is considered part of the same cause of action. See Hartman v. St. Paul Fire and Marine Ins. Co., 55 F.Supp.2d 600, 603 n. 2 (N.D.Tex.1998), aff'd in part, 95 F.3d 1149 (5 th Cir.1996) (TABLE, No. 94-11164); Lusk v. Puryear, 896 S.W.2d 377, 380 (Tex.App.-Amarillo 1995, no writ). Greil will also be entitled to pursue attorneys' fees under Insurance Code Article 21.55 or Tex. Civ. Prac. & Rem.Code § 38 .001 et. seq. arising from her contractual cause of action in the first trial.

### III. ABATEMENT

In addition to seeking separate trials, Geico moves to abate the bad faith claims pending trial of the contract issue. Geico argues abatement will conserve judicial resources and reduce the parties' expense. The latter point is especially well taken since reaching the bad faith claims is dependent upon the outcome of the trial on the contractual claims. See Millard, 847 S.W.2d at 673. Accordingly, Geico's motion to Abate the claims of breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and violations of Article 21.21 of the Insurance Code is GRANTED pending trial on the contractual claim.

### IV. CONCLUSION

Greil's claims for breach of contract and violations of Insurance Code Article 21.55 will proceed in a SEPARATE TRIAL from her good faith and fair dealing, DTPA, and

Insurance Code Article 21.21 claims. Further, Greil's good faith and fair dealing, DTPA, and Insurance Code Article 21.21 claims are ABATED pending the trial on the contractual claim. Greil's claim for attorneys' fees under Insurance Code Article 21.55 or Tex. Civ. Prac. & Rem.Code § 38 .001 et. seq. will be permitted in the first trial for fees related to the contractual claim.

THE CLERK IS DIRECTED TO IMMEDIATELY FAX THIS ORDER TO COUNSEL.

SO ORDERED.

2001 WL 1148118 (N.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

