43

United States District Court
Southern District of Texas
FILED
MAY 17 2004
Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **ROYAL SURPLUS LINES INSURANCE COMPANY,** | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **CIVIL ACTION NO. B-03-109** **JURY DEMANDED** |
| **BROWNSVILLE INDEPENDENT SCHOOL DISTRICT,** | § | |
| **Defendant.** | § | |

**PLAINTIFF ROYAL'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO ABATE AND SEVER OR TO ABATE AND SET SEPARATE TRIALS OF EXTRA-CONTRACTUAL CAUSES OF ACTION**

Royal Surplus Lines Insurance Company (Royal) files its Reply Brief in Support of its Motion to Abate and Sever or to Abate and Set Separate Trials of Extra-Contractual Causes of Action, as authorized by Federal Rule of Civil Procedure 21, or alternatively Federal Rule of Civil Procedure 42(b).

**Relief Requested**

The Court should grant Royal's motion to abate and sever or to abate and set separate trials on extra-contractual causes of action, because Texas law requires that a showing that an insurer breached the insurance policy before an insured can even have a colorable claim for bad faith claims handling. *Liberty National Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996); *Tapatio Springs Builders v. Maryland Cas. Ins. Co.*, 82 F. Supp.2d 633, 647 (W.D. Tex. 1999). Therefore, Royal asks that the Court sever the extra-contractual ("bad faith") claims under Fed. R. Civ. P. 21 and abate the severed action until the contract claims are resolved. In the alternative, Royal asks that the Court set separate trials

for the extra-contractual claims and abate that setting until after the resolution of the contractual claims in this declaratory action.

**Grounds for Relief**

A. ***Texas Case Law Offers Federal Trial Courts Persuasive Guidance on Severance Motions***

Where Texas law forms the basis of a case, Texas courts are in the best position to determine whether the nature of the claims warrant separate trials. *Griel v. Geico*, 2001 WL 1148118, *1 (N.D.Tex.) (Exhibit A); *Karam v. Nationwide General Ins. Co.*, 1999 WL 1240791, *1 (N.D. Tex.) (Exhibit B); *Bays v. State Farm Mutual Automobile Ins. Co.*, 1999 WL 68648, *1 (N.D. Tex.) (Exhibit C). Therefore, several federal district courts confronted with motions for severance like Royal's have looked to Texas case law for guidance and followed those decisions. *See Griel*, 2001 WL 1148118 at *1; *Karam*, 1999 WL 1240791 at *1; *Bays*, 1999 WL 68648 at *1. As discussed in more detail in Royal's motion, the Texas Supreme Court has explained that a trial court "will undoubtedly confront instances in which evidence admissible only on the bad faith claim would prejudice the insurer such an extent that fair trial on the contract claim would become unlikely." *See Griel*, 2001 WL 1148118 at *1 (quoting *Liberty Nat'l Fire. Ins. Co. v. Akin*, 927 S.W.2d 627, 639 (Tex. 1996)). One such instance would be where an insurer has made a settlement offer on the disputed contract claim. *See id.*

Royal has made a settlement offer to BISD that was declined. Allowing a jury to hear this evidence would create a great danger of prejudice to Royal; this could not be sufficiently mitigated by a limiting instruction. *See id*; *Karam*, 1999 WL 1240791 at *1. Contrary to BISD's assertion that no settlement

discussions have taken place, the parties have discussed settlement.[1] *See* Exhibit D, Joint Discovery/Case Management Plan at ¶ 14. In addition, Royal sent a formal settlement letter to BISD in June 2003. *See* Exhibit F. Therefore, the contract claim must be tried separately and prior to BISD's extra-contractual claims. *See Karam*, 1999 WL 1240791 at *2.

**B. *BISD's Extra-contractual Claims are Separate and Distinct from the Contractual Claim***

As discussed in more detail in Royal's motion, and not refuted by BISD, BISD's extra-contractual claims are not so interwoven that they involve the same facts and issues. The Texas Supreme Court has explained that "[a] breach of an insurance contract claim is separate and distinct from bad faith, Insurance Code or DTPA causes of action." *Akin,* 927 S.W.2d 627 (Tex. 1996) (J. Abbott, dissenting) (suggesting abating discovery on the bad faith claim pending resolution of the contract claim).

The contractual claim focuses on the schools and BISD's compliance with conditions precedent required in the policies. In other words, the focus is on the cause of the water intrusion and elevated humidity in the schools, the maintenance and/or repairs to the schools (if any) that was performed by BISD or others, the cause of the mold and other damage found in the buildings, when the alleged damages to the buildings commenced, and what work will be necessary to restore the buildings. Causation evidence will require testimony of fact witnesses, as well as testimony from engineers and other experts knowledgeable about construction, maintenance, and microbial contamination and remediation.

---

[1] BISD attaches an affidavit signed by Baltazar Salazar suggesting that Royal approached BISD about the possibility of abating this declaratory action. That statement is not true. In fact, Mr. Salazar approached counsel Royal and proposed on behalf of BISD (1) to dismiss BSD's currently-abated state court law suit against Royal, and (2) to stay this declaratory action until the resolution of the state court lawsuits to which BISD is or was a party and that relate to the alleged contamination of Aiken and Besterio schools. *See* Exhibit E, Letter to Baltazar Salazar dated February 23, 2004. Mr. Salazar suggested that BISD would like to stay this case and continue settlement discussions with Royal, which would also afford BISD additional time to attempt to resolve the other state court lawsuits.

The extra-contractual issues (*i.e.*, bad faith), on the other hand, focuses on an entirely different set of facts. This focus looks at Royal and its representatives' investigation of BISD's claim and timing of Royal's investigation. Evidence needed for resolution of the extra-contractual claims will also include expert testimony as to the reasonableness of the extent and promptness of Royal's investigation, and whether Royal's liability for the claim ever became reasonably clear (and if so, when). Such expert testimony, of course, would be totally irrelevant and unnecessary if the Court rules that the damages claimed by BISD are not covered by the insurance policies.

BISD offers no explanation on their bold position that "the claims are not distinct and separable[.]" *See* BISD's Response at ¶ 16. It simply states that the claims involve the same parties and arise out of the same "operative set of facts and circumstances." *Id.* However, as discussed above, the contractual claims focus on the BISD's compliance with its obligations under the policies, while the extra-contractual claims focus on Royal's investigation of the claim, which involves a clearly different set of facts. Moreover, reaching BISD's extra-contractual claims is dependent upon the outcome of the trial or dispositive ruling by the Court on the contractual claims. *Greil*, 2001 WL 1148118 at * 2 (quoting *U.S. Fire. Ins. Co. v. Millard*, 847 S.W.2d 668, 673 (Tex. App. – Houston [1st Dist.] 1993, orig proceeding)).

Therefore, this Court should sever the extra-contractual claims into a separate action under Fed. R. Civ. P. 21 and abate the severed action pending resolution of the contractual claims, including discovery of extra-contractual matters.

In the alternative, the Court should order separate trials under Fed. R. Civ. P. 42(b). The Court may order separate trials under this rule "to avoid prejudice" to a party. BISD has made multiple settlement demands. As discussed above, Royal has made an offer to settle that BISD has declined. Therefore,

Royal would be irreparably prejudiced if the contract claim is tried together with the extra-contractual claims. In addition, setting a separate trial for the extra-contractual claim and abating that trial until after resolution of the contract claims avoids potentially unnecessary litigation and expense. *See Griel*, 2001 WL 1148118 at *2.

**Conclusion**

Therefore, abatement and severance of the bad faith "claims-handling" claims in this matter will avoid the wholesale waste of time, money, and judicial resources, as severance and abatement will allow the contract issues to be resolved first, which will nullify the extra-contractual claims altogether. In addition, severance and abatement will prevent prejudice to Royal and confusion of issues.

Royal Surplus Lines Insurance Company asks that the Court (1) grant its motion to abate and sever Counter-Plaintiff Brownsville Independent School District's extra-contractual claims from the contract claims under Fed. R. Civ. P. 21; (2) order the clerk of the court to assign a new number to the severed action; (3) abate all the extra-contractual claims and "claims-handling" discovery pending full and final resolution of the contractual coverage issues; (4) enter a final judgment in favor of Royal on the breach of contract claims; and (5) grant Royal Surplus Lines Insurance Company all other relief to which it is justly entitled.

In the alternative, Royal asks that the Court (1) order separate trials of BISD's extra-contractual claims from the contract cliams under Fed. R. Civ. P. 42(b); (2) abate all the extra-contractual claims and "claims-handling" discovery pending full and final resolution of the contractual coverage issues; and (3)

grant Royal Surplus Lines Insurance Company all other relief to which it is justly entitled.

Respectfully submitted,

J W Brown by Express Permission

**Jay W. Brown**
State Bar No. 03138830
SDT No. 1314
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEY-IN-CHARGE FOR PLAINTIFF ROYAL SURPLUS LINES INSURANCE COMPANY OF COUNSEL:**

BEIRNE, MAYNARD & PARSONS, L.L.P.
**Stephen R. Wedemeyer**
State Bar No. 00794832
S.D.T. No. 19797
**John V. Trevino, Jr.**
State Bar No. 24003082
S.D.T. No. 23860
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record on May 17th, 2004.

Craig S. Smith — *Via Certified Mail/Return Receipt Requested*
LAW OFFICE OF CRAIG S. SMITH
14493 S.P.I.D., Suite A, P.M.B. 240
Corpus Christi, Texas 78418

Baltazar Salazar — *Via Certified Mail Return Receipt Requested*
1612 Winbern
Houston, Texas 77004

Ramon Garcia — *Via Certified Mail Return Receipt Requested*
LAW OFFICE RAMON GARCIA, P.C.
222 W. University
Edinburg, Texas 78539

*Attorneys for Defendant BISD*

Jay W. Brown by express permission

514368.1

# EXHIBIT "A"

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

**Roxanne GREIL, Plaintiff,
v.
GEICO, Geico General Insurance Company and Jenetha Holt, Defendants.**

**No. 3:01-CV-0352-H.**

Sept. 18, 2001.

MEMORANDUM OPINION AND ORDER

SANDERS, Senior J.

*1 Before the Court is Defendants' Motion for Severance and Abatement, filed June 15, 2001, Plaintiff's Response, filed June 27, 2001, and Defendants' Reply to Plaintiff's Response, filed July 6, 2001.

I. BACKGROUND

Plaintiff Roxanne Greil was involved in an automobile accident with Stacy Howard on or about February 19, 1997. Greil suffered injuries as a result of this accident. Howard caused the collision, but she was underinsured for purposes of satisfying Greil's claims. At the time of the accident, Greil had Uninsured Motorist/Underinsured Motorist ("UM/UIM") coverage with Geico. Greil filed her claim with Geico, but disputed the amount Geico offered to pay. Greil filed suit in the 134 th Judicial District Court of Dallas County alleging breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and violations of Articles 21.21 and 21.55 of the Texas Insurance Code. Greil also sought attorneys' fees pursuant to the DTPA and the Insurance Code. Geico removed the case to this Court based on diversity jurisdiction. See 28 U.S.C. §§ 1332 & 1446. The amount in controversy exceeds $75,000.

II. SEPARATE TRIALS

The Court will treat Defendants' motion to sever as a motion for separate trials. Pursuant to Fed. R. Civ. P. 42(b), the Court may order separate trials "to avoid prejudice" to a party. Here, Geico argues that defending the contract claim before the same jury that would hear evidence of a settlement offer relating to Greil's tort claims would be unfairly prejudicial. The Court agrees.

The Texas Supreme Court has implied that the presence of a settlement offer may make severance of contractual from extra-contractual claims necessary to ensure a fair trial. See Liberty National Fire Ins. Co. v. Akin, 927 S.W.2d 627, 630 (Tex.1996). This Court is not bound by Texas law on this procedural issue. See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). However, Texas decisions aid the Court in determining whether separate trials should be ordered. See Karam v. Nationwide General Ins. Co., No. 3:99-CV-2047-G, 1999 WL 1240791, at *1 (N.D.Tex. Dec. 20, 1999). Texas courts are in the best position to determine when claims arising under Texas law warrant separate trials. See id. With this in mind, the Court finds the Texas Supreme Court's position on this issue highly persuasive. In Liberty, the court noted that "[a] trial court will undoubtedly confront instances in which evidence admissible only on the bad faith claim would prejudice the insurer to such an extent that a fair trial on the contract claim would become unlikely." Liberty, 927 S.W.2d at 630. The court explained that one instance would be where an insurer has made a settlement offer on the disputed contract claim. See id. It then endorsed several Texas appellate court decisions severing breach of contract claims from extra-contractual ones based on the presence of a settlement offer. See id.

*2 Geico has made a settlement offer to Greil that was declined. Allowing the jury to hear this evidence would create a great danger of prejudice to Geico; this could not be sufficiently mitigated by a limiting instruction. See Karam, 1999 WL 1240791, at *1. The Court also notes that Greil's bad faith,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Article 21.21 and DTPA claims depend upon the outcome of the contract cause of action. See U.S. Fire Ins. Co. v. Millard, 847 S.W.2d 668, 673 (Tex.App.-Houston [1 st Dist.] 1993, orig. proceeding), cited with approval in Liberty, 927 S.W.2d at 630. Trying these claims separately avoids potentially unnecessary litigation and expense. Accordingly, Geico's motion for separate trials for the contract and extra-contractual claims is GRANTED. Greil's breach of contract claims must be tried separately from, and prior to, her bad faith, Article 21.21 and DTPA claims. Greil's Article 21.55 claim will be tried with the contract claim as it is considered part of the same cause of action. See Hartman v. St. Paul Fire and Marine Ins. Co., 55 F.Supp.2d 600, 603 n. 2 (N.D.Tex.1998), aff'd in part, 95 F.3d 1149 (5 th Cir.1996) (TABLE, No. 94-11164); Lusk v. Puryear, 896 S.W.2d 377, 380 (Tex.App.-Amarillo 1995, no writ). Greil will also be entitled to pursue attorneys' fees under Insurance Code Article 21.55 or Tex. Civ. Prac. & Rem.Code § 38 .001 et. seq. arising from her contractual cause of action in the first trial.

III. ABATEMENT

In addition to seeking separate trials, Geico moves to abate the bad faith claims pending trial of the contract issue. Geico argues abatement will conserve judicial resources and reduce the parties' expense. The latter point is especially well taken since reaching the bad faith claims is dependent upon the outcome of the trial on the contractual claims. See Millard, 847 S.W.2d at 673. Accordingly, Geico's motion to Abate the claims of breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and violations of Article 21.21 of the Insurance Code is GRANTED pending trial on the contractual claim.

IV. CONCLUSION

Greil's claims for breach of contract and violations of Insurance Code Article 21.55 will proceed in a SEPARATE TRIAL from her good faith and fair dealing, DTPA, and Insurance Code Article 21.21 claims. Further, Greil's good faith and fair dealing, DTPA, and Insurance Code Article 21.21 claims are ABATED pending the trial on the contractual claim. Greil's claim for attorneys' fees under Insurance Code Article 21.55 or Tex. Civ. Prac. & Rem.Code § 38 .001 et. seq. will be permitted in the first trial for fees related to the contractual claim.

THE CLERK IS DIRECTED TO IMMEDIATELY FAX THIS ORDER TO COUNSEL.

SO ORDERED.

2001 WL 1148118 (N.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



# EXHIBIT "B"

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas.

**Mary Emma KARAM, Plaintiff,**
**v.**
**NATIONWIDE GENERAL INSURANCE COMPANY, Defendant.**

**No. CIV.A. 3:99-CV-2047-.**

Dec. 20, 1999.

MEMORANDUM ORDER

FISH, District J.

*1 Before the court is the motion of the defendant Nationwide General Insurance Company ("Nationwide") to sever the extracontractual claims of the plaintiff Mary Emma Karam ("Karam") and abate them until her contract claim has been adjudicated. Treating Nationwide's motion as a motion for separate trials under FED. R. CIV. P. 42(b), the court grants the motion to sever but denies the motion to abate.

I. BACKGROUND

On July 6, 1995, Karam was involved in an automobile accident with Bill Hooser ("Hooser"), while Hooser was conducting business for his employer, McFry, Inc. ("McFry"). Defendants's Amended Motion for Severance and Abatement ("Amended Motion") at 1. Karam settled with Hooser for $50,000--the limits Hooser's insurance policy--and with McFry, who was uninsured, for $666.00. Response to Defendant's Motion for Severance and Abatement and Protective Order ("Response") at 1. Karam then filed a claim with Nationwide, her own insurer, for benefits under the personal injury and under-insured motorist provisions of her policy. Id. Nationwide issued a check to Karam for $10,000 for her personal injuries but denied her claim based on the under-insured provision of her policy. Id. at 2. Believing the payment to be insufficient, Karam brought this action for (1) breach of contract; (2) violation of the duty of good faith and fair dealing; (3) violations of the Texas Administration Code; (4) violations of the Texas Business and Commerce Code; and (5) violations of the Texas Insurance Code. Amended Motion at 2. Nationwide then made a settlement offer to Karam of $10,000, which the plaintiff refused. Response at 2, 3; Amended Motion at 2. Contending that a trial of all these claims together would be unfairly prejudicial, Nationwide now files this motion to sever and abate.

II. ANALYSIS
A. Separate Trials

The court will treat Nationwide's motion to sever as a motion for separate trials. Pursuant to FED. R. CIV. P. 42(b), the court may order separate trials "to avoid prejudice" to a party. Here, Nationwide argues that having to defend the contract claim before the same jury that would also hear evidence that it made a settlement offer would be unfairly prejudicial. The court agrees.

Although not bound by Texas law on this procedural issue, [FN1] Texas "decisions are helpful in determining whether separate trials should be ordered." Bays v. State Farm Mutual Automobile Insurance Company, No. 3:98-CV-3027-D, 1999 WL 68648, at *1 (N.D.Tex. Feb. 4, 1999) (Fitzwater, J.). Where Texas law forms the basis of a case, "Texas courts are in the best position to determine whether the nature of the claims warrants bifurcation at trial." Id. The Texas Supreme Court has implied that the presence of a settlement offer may make severance of contractual from extracontractual claims necessary to ensure a fair trial. See Liberty National Fire Insurance Company v. Akin, 927 S.W.2d 627, 630 (Tex.1996). In Liberty, the court upheld a trial court's denial of severance but did note that "[a] trial court will undoubtably confront instances in which evidence admissible only on the bad faith claim would prejudice the insurer to such an extent that a fair trial on the contract claim would become unlikely." Id. One such

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



instance, the court explained, is where an insurer has made a settlement offer on the disputed contract claim. Id. The court then endorsed several state courts of appeal decisions that severed breach of contract claims from extracontractual ones based on the presence of a settlement offer. Id.

*2 Here, Nationwide has made a settlement offer to Karam that was declined. To allow a jury to hear this evidence would create a great danger of prejudice to Nationwide, a danger that could not be sufficiently mitigated by a limiting instruction to the jury. Thus, Karam's breach of contract claims must be tried separately from, and prior to, her extracontractual claims. [FN2]

B. Abatement

Next, Nationwide argues that "certain information sought by [Karam] through discovery is privileged with respect to the Contract Claim" and thus, asks this court to abate Karam's other claims until the contractual claim is resolved. Motion at 3. Nationwide, however, has not offered examples of such information and abating the noncontractual claims "would unduly prolong the litigation in the event [Nationwide] is found to have breached the insurance contract." Bays, 1999 WL 68648 at *2. Thus, at least at this stage, Nationwide has presented no demonstrable basis for abatement.

III. CONCLUSION

For the reasons discussed above, Nationwide's motion for separate trials of Karam's contractual and extracontractual claims is GRANTED. Its motion to abate the extracontractual claims, however, is DENIED.

SO ORDERED.

FN1. Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938).

FN2. This result may be achieved by simply ordering the proof at a single trial. In this procedure, the contractual claim would be submitted to the jury first and a verdict received on that claim. Then evidence on the remaining claims would be presented to the same jury and a verdict received on those claims.

1999 WL 1240791, 1999 WL 1240791 (N.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



# EXHIBIT "C"

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.

**Jamie Bloxom BAYS, Plaintiff,**
**v.**
**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**No. Civ.A. 3:98-CV-3027-D.**

Feb. 4, 1999.

MEMORANDUM OPINION AND ORDER

FITZWATER, J.

***1** In this removed action, defendant State Farm Mutual Automobile Insurance Company ("State Farm") moves the court to sever the extracontractual claims of plaintiff Jamie Bloxom Bays ("Bays") and abate them until Bays' contract claim has been adjudicated. Treating State Farm's request for a severance as a motion for separate trials, the grants the motion and directs that Bays' contract claim be tried separately from, and prior to, her extracontractual claims. The court denies as premature State Farm's motion to abate.

I

Bays was injured while riding as a passenger in an automobile. She was covered under a policy issued by State Farm to Jacob Bays. State Farm paid personal injury protection benefits to her. The other driver's liability insurer apparently paid Bays its policy limits. Bays then made a claim under the State Farm policy for underinsured/ uninsured motorist benefits. When she and State Farm could not resolve the claim, she filed the instant suit in state court, alleging claims for breach of contract, breach of duty of good faith and fair dealing, and violations of the Texas Insurance Code. State Farm removed the case to this court, and now moves the court to sever and abate the extracontractual claims. Bays has not responded to the motion.

II

At the outset, the court addresses, and rejects, State Farm's assertion that Texas law controls the disposition of this motion. State Farm recognizes that this question is resolved under Erie [FN1] principles, but contends that mandatory severance and abatement, as dictated by the Texas Supreme Court in Liberty Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627 (Tex.1996), is substantive law. The court disagrees. In Whittenburg v. State Farm Mut. Auto. Ins. Co., Civil Action No. 3:96-CV-2837-D, slip op. at 2 (N.D.Tex. Jan. 8, 1997) (Fitzwater, J.), this court held, in the context of another State Farm motion for severance and abatement, that "Texas court procedural decisions are not binding on this court." [FN2]

FN1. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

FN2. State Farm removed this case, as it did Whittenburg, from Texas state court to this court. If it desires to take advantage of mandatory Texas law of severance and abatement, it should allow these types of cases to remain in state court.

III
A

Although not bound by Texas law, the court concludes that State Farm's motion for severance should be treated as a motion for separate trials, and that separate trials should be conducted. In Whittenburg the court recognized that Texas decisions "are helpful in determining whether separate trials should be ordered" and that where "[t]he claims in question ... arise under Texas law ... Texas courts are in the best position to determine whether the nature of the claims warrants bifurcation at trial." Id. The court in Whittenburg treated State Farm's motion for severance as a motion for separate trials and, pursuant to Fed.R.Civ .P. 42(b) and to avoid undue prejudice, granted separate trials of the plaintiff's claim for breach of insurance contract, and his extracontractual claims for





breach of duty of good faith and fair dealing, Texas Insurance Code and DTPA violations, and negligence based on State Farm's claims-handling practices. Id. The court reaches the same result in today's case, and concludes that Bays' breach of contract claim must be tried separately from, and prior to, her extracontractual claims.

B

*2 The court declined in Whittenburg, however, to abate the litigation of the extracontractual claims. The court held that "[t]his would unduly prolong the litigation in the event State Farm is found to have breached the insurance contract [and that] [t]he protection that State Farm should be accorded can adequately be conferred by conducting separate trials." Id. The court reaches the same result in the present case.

State Farm maintains that if the court does not abate the litigation of the extracontractual claims, and allows discovery to go forward, it will be forced to decide prematurely whether to waive the attorney-client privilege and work product doctrine. D. Mot. at 5. This assertion is very general at this stage. There is no indication in the record that State Farm has generated, in this fairly straightforward underinsured/uninsured case, privileged communications or attorney work product that it must rely on to defend against Bays' extracontractual claims. The court is hesitant to abate a lawsuit on a hypothetical ground. Accordingly, because this concern appears to be premature, and because the court can later enter an order of abatement upon a showing of demonstrable prejudice, the court denies State Farm's motion for abatement without prejudice to its later seeking this relief for good cause shown.

* * *

The court grants State Farm's January 13, 1999 motion for severance to the extent that, treating the request as a motion for separate trials, the court grants the motion and directs that Bays' contract claim be tried separately from, and prior to, her extracontractual claims. The court denies without prejudice State Farm's motion to abate.

SO ORDERED.

1999 WL 68648, 1999 WL 68648 (N.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

10

United States District Court
Southern District of Texas
FILED

SEP 0 8 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROYAL SURPLUS LINES INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. B-03-109 |
| BROWNSVILLE INDEPENDENT SCHOOL DISTRICT, | § | |
| Defendant. | § | |

## JOINT DISCOVERY/CASE MANAGEMENT PLAN UNDER RULE 26(f) FEDERAL RULES OF CIVIL PROCEDURE

1. **State where and when the meeting of the parties required by Rule 26(f) was held, and identify the counsel who attended for each party.**

On September 2, 2003, the parties met via teleconference.

Jay W. Brown, Stephen R. Wedemeyer, and John V. Trevino attended on behalf of Plaintiff Royal Surplus Lines Insurance Company ("Royal").

Craig Smith, Eric Jarvis, and Baltazar Salazar attended for Defendant Brownsville Independent School District ("BISD").

2. **List the cases related to this one that are pending in any state or federal court with the case number and court.**

*Brownsville Independent School District vs. Royal Surplus Lines Insurance Company and Cavazos Insurance*; In the 103rd Judicial District Court of Cameron County Texas.

*American Standard & The Trane Company vs. Brownsville Independent School District*; In the 357th Judicial District Court of Cameron County Texas.

*Angel Castillo & Maria Rosalva Castillo, et. al vs. Carroll Dusang & Rand, Inc., et. al*; In the 197th District Court of Cameron County, Texas.

*Brownsville Independent School District vs. Stotler Construction Company, et. al*; In the 138th District Court of Cameron County, Texas.
Dismissed by Plaintiff on November 5, 2002

3. **Specify the allegation of federal jurisdiction.**

Diversity of citizenship, with the amount in controversy exceeding seventy-five thousand dollars ($75,000). 28 U.S.C. § 1332.

4. **Name the parties who disagree and the reasons.**

BISD disagrees for the reasons set forth in its Motion to Dismiss or Abate Pending Resolution of the Parallel State Court Action (hereafter "Motion to Dismiss"), filed on or about June 30, 2003, and its anticipated supplemental filing.

5. **List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

BISD's position is that there are no additional parties at this time; however, should the Court deny its Motion to Dismiss, BISD wishes to add Cavazos Insurance Agency ("Cavazos") and Cigna Lloyd Insurance ("Cigna") to this declaratory action.

At this time, based on the information known, Royal cannot discern a need for either Cavazos or Cigna to participate in an action determining the rights and duties of Royal and BISD under their contracts for insurance.

6. **Listed anticipated interventions.**

None.

7. **Describe class-action issues.**

None.

8. **State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.**

No party has made its Rule 26(a) disclosures. For the sake of judicial economy, the parties request a deferral of the Rule 26 disclosures until *after* the Court rules on the jurisdictional issues raised in BISD's Motion to Dismiss, filed on or about June 30, 2003.

F. **When Plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.**

The parties disagree as to whom should designate experts first. *See* Section 10 below.

BISD proposes the following:

Royal: ____________________________.

BISD: 30 Days after Royal designates experts.

Due to the inability of the parties to agree on a proposed trial date, Royal is unable to propose a date for expert designations, but suggests that 90 days before trial may be appropriate for the party with the burden of proof.

G. **List expert depositions Plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert reports).**

BISD proposes that expert depositions be concluded within 60 days of the filing of expert reports.

Royal plans to depose all experts designated by BISD and anticipates that BISD will cooperate in scheduling such depositions no later than the discovery deadline ordered by the Court. (Within 50 days of their designation by BISD).

H. **List expert depositions Defendants anticipate taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert reports).**

BISD proposes that expert depositions be concluded within 60 days of the filing of expert reports.

10. **If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

- Trial Date

BISD has proposed a February or March 2004 trial setting as a reasonable setting for trial of this declaratory action.

Royal, however, does not agree that such a date is a reasonable setting for this complex declaratory action. As set out more fully in Royal's Complaint, BISD did not provide to Royal the reports on the schools at issue until well over a year from the date BISD filed its insurance claim. BISD has hired numerous experts who have studied the problems at the schools over a period of many, many months, and then produced lengthy, detailed, and technical reports. In addition, Royal has not yet been provided the opportunity for its experts to inspect the schools at issue. Adequate time for Royal's experts to examine the facilities and digest the tens of thousands of pages, many of which contain technical data, is necessary, just as it was necessary for BISD's many experts. It is, therefore, unreasonable to suggest that a February or March 2004 trial setting affords Royal and its experts a reasonable amount of time to study the issues and prepare for trial of this complex declaratory action.

- Order of Expert Designations

BISD insists that its deadline to designate experts come 30 days *after* Royal designates its experts.

Royal's position is that BISD, as an insured making a claim under an insurance policy, is the party with the burden of proof on the issue of coverage; therefore, BISD should be required to designate experts prior to Royal's designations.

**11. Specify the discovery beyond initial disclosures that has been undertaken to date.**

BISD disclosed CD-ROMs containing a substantial number of documents and other documents (hard copies), including reports from Assured Indoor Air Quality ("AIAQ"), Ambiotec Environmental Consultants ("Ambiotec"), and Engineering & Fire Investigations ("EFI"), relating to the insurance claim, causation, and damages.

**12. State the date the planned discovery can reasonably be completed.**

At this point in time, BISD anticipates that planned discovery can reasonably be completed by the proposed January 30, 2004 discovery deadline.

At this point in time, Royal anticipates that planned discovery can reasonably be completed 30 days prior to the September/October 2004 trial setting.



13. **Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

The parties discussed mediation, but agree that for mediation to be successful, significant discovery of the parties' claims and defenses, and perhaps a ruling on one or more dispositive motions on key, legal (coverage) issues must first be completed.

14. **Describe what each party has done or agreed to do to bring about a prompt resolution.**

The parties discussed settlement.

BISD has made a demand of $10 Million and has indicated that a second demand of $20.3 Million would be made prior to the Initial Pretrial Conference.

Royal has offered $100,000.00 for all disputed claims.

15. **From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable, and state when such a technique may be effectively used in this case.**

The parties discussed mediation, but agree that for mediation to be successful, significant discovery of the parties' claims and defenses must first be completed, and the Court will need to first rule on one or more dispositive motions on key, legal (coverage) issues.

16. **Magistrate judges may now hear jury and non-jury trials. Indicate the parties' joint position on a trial before a magistrate judge.**

The parties do *not* agree to trial before a magistrate judge.

17. **State whether a jury demand has been made and if it was made on time.**

No jury demand has been made.

18. **Specify the number of hours it will take to present the evidence in this case.**

The parties are uncertain at this stage how long it will take for Plaintiff and Defendant to present the evidence in this case. Much will depend on the rulings on anticipated dispositive motions.

19. **List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

BISD's Motion to Dismiss, filed on June 30, 2003, and its anticipated supplemental filing.

20. **List other motions pending.**

None.

21. **Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.**

None.

22. **List the names, bar numbers, addresses and telephone numbers of all counsel.**

**Jay W. Brown**
State Bar No. 03138830
SDT No. 1314
**Stephen R. Wedemeyer**
State Bar No. 00794832
SDT No. 19797
**John V. Trevino, Jr.**
State Bar No. 24003082
SDT No. 23860
BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

9/5/03
**Date**

**ATTORNEYS FOR PLAINTIFF ROYAL SURPLUS LINES INSURANCE COMPANY**

_______________________ 9/5/03
Baltazar Salazar Date
State Bar No. 00791590
SDT No. 18536
1612 Winbern
Houston, Texas 77004

Craig S. Smith
State Bar No. 18553570
SDT No. ________
LAW OFFICE OF CRAIG S. SMITH
14493 S.P.I.D., Suite A, P.M.B. 240
Corpus Christi, Texas 78418

Ramon Garcia
State Bar No. 07641800
SDT No. ________
LAW OFFICE RAMON GARCIA, P.C.
222 W. University
Edinburg, Texas 78539

**ATTORNEYS FOR DEFENDANT BISD**

# EXHIBIT "E"

BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 POST OAK BOULEVARD
SUITE 2500
HOUSTON, TEXAS 77056-3000
(713) 623-0887
FAX. (713) 960-1527

JAY W. BROWN
PARTNER

BOARD CERTIFIED
CIVIL TRIAL LAW
PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

DIRECT DIAL: (713) 960-7306
E-MAIL: jbrown@bmpllp.com

February 23, 2004

Mr. Baltazar Salazar
Attorney at Law
1612 Winbern
Houston, Texas 77004

***Via Facsimile 281-749-8104***

RE: *Royal Surplus Lines Insurance Company v. Brownsville Independent School District*, C.A. No. B-03-109; In the United States District Court for the Southern District of Texas, Brownsville Division.

Dear Mr. Salazar:

As you requested, we have given thoughtful consideration to BISD's proposal to (1) dismiss BISD's currently-abated state court action against Royal, and (2) stay the above-styled Federal Court lawsuit until the resolution of the state court lawsuits to which BISD is or was a party and that relate to the alleged contamination of Aiken and Besteiro. Pursuant to our discussions last week, we have prepared a draft stipulation that addresses the proposed dismissal, abatement, credit, and other related concerns that Royal has in response to BISD's proposal. The draft stipulation has been enclosed for your review and consideration. We would be glad to discuss any aspect of it with you.

As you know, the Royal policy imposes upon BISD the duty to provide Royal, in connection with any claim, a description of "how, when and where the loss or damage occurred." Because of the fact that the BISD claim is now in litigation, the litigation is the only vehicle for Royal to obtain additional information from BISD about the claim and BISD's contentions. Royal propounded several sets of discovery to BISD to further its assessment of BISD's claim, but still lacks very basic information about the claim, including items required in BISD's sworn proof of loss (*e.g.*, cause and timing of loss). Royal's chief concern has been and remains the fact that it does not have what it needs to further assess BISD's coverage position and alleged damages. Some of these concerns are explained in considerable detail in our letter to you dated February 20, 2004.

While Royal appreciates BISD's spirit of willingness to work together to address the stay proposal, as well as BISD's overture that it would like to attempt to resolve this case in the near term, Royal's concern remains the fact that it still needs additional information and documents from BISD. If the federal court lawsuit is stayed, Royal would have no means to obtain the needed information. Thus, any stay proposal must go hand-in-hand with the resolution of the many outstanding discovery issues.

We look forward to your comments and suggestions on the stay and discovery issues.

Very truly yours,

Jay W. Brown

JWB/ccc
#496356.1

Enclosure

cc: Mr. Craig Smith — *Via Facsimile 361-949-0843*
Mr. Ramon Garcia — *Via Facsimile 956-381-0825*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **ROYAL SURPLUS LINES INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. B-03-109** |
| | § | **JURY DEMANDED** |
| **BROWNSVILLE INDEPENDENT SCHOOL DISTRICT,** | § | |
| | § | |
| **Defendant.** | § | |

**STIPULATION OF THE PARTIES**

Plaintiff/Counter-Defendant Royal Surplus Lines Insurance Company ("Royal") and Defendant/Counter-Plaintiffs Brownsville Independent School District ("BISD"), collectively referred to herein as "the Parties," hereby stipulate as follows:

**Authority to Bind Client**

1. The undersigned counsel for Plaintiff/Counter-Defendant Royal is making this agreement on behalf of Plaintiff/Counter-Defendant Royal, whom he represents, and the undersigned counsel for Defendant/Counter-Plaintiff BISD is making this agreement on behalf of Defendant/Counter-Plaintiff BISD, whom he represents.

2. The undersigned counsel for Royal has authority to enter into this agreement on behalf of his client, and the undersigned counsel for BISD has authority to enter into this agreement on behalf of his client.

**Agreement as to Temporarily Staying the Federal Court Lawsuit.**

3. BISD has proposed staying this above-styled and numbered action that was filed as a declaratory judgment action by Royal on June 9, 2003, and in which BISD has asserted a counterclaims against Royal alleging, *inter alia*, breach of contract, misrepresentation,

statutory violations, and seeking various categories of damages ("the Federal Court Lawsuit").

4. The Federal Court Lawsuit arises from an insurance claim ("the Subject Insurance Claim") made by BISD between November 29, 2001 and April 2, 2002, for alleged property damage to two schools in BISD's district that were insured by Royal at various times and under various policies during the years 1996 through 2002: Aiken Elementary School and Besteiro Middle School (the "Subject Schools").

5. BISD has proposed that the Federal Court Lawsuit be stayed until the resolution, by way of settlement, dismissal and/or final judgment, of the following related lawsuits currently pending or previously pending in Cameron County, to which BISD is or was a party (the "Related Lawsuits"):

   a. *Angel Castillo & Maria Rosalva Castillo, et. al vs. Carroll Dusang & Rand, Inc., et. al*; In the 197th District Court of Cameron County, Texas, Cause No. 2001-11-004959-C; and

   b. *Angel Castillo & Maria Rosalva Castillo, et. al vs. Carroll Dusang & Rand, Inc., et. al*; In the 197th District Court of Cameron County, Texas, Cause No. 2003-08-4013-C; and

   c. *American Standard & The Trane Company vs. Brownsville Independent School District, Al Cardenas Masonry, Inc., et al.*; In the 357th Judicial District Court of Cameron County Texas, Cause No. 2003-08-4078-E, In the 357th District Court of Cameron County, Texas; and

   d. *Brownsville Independent School District vs. Stotler Construction Company, et. al*; In the 138th District Court of Cameron County, Texas, Cause No. 2002-01-000071-B.

6. The Related Lawsuits involve, among other things, the design, construction, and maintenance of the Subject Schools; alleged mold and water damage at the Subject Schools; the cause of such alleged damage; and alleged personal injuries to students, faculty and staff from the alleged exposure to mold and possibly other substances at the two schools.

7. BISD agrees to produce to Royal all settlement agreements concerning the Subject Schools and/or the Related Lawsuits within thirty (30) days of their execution by BISD. If any settlement agreement terms are not reduced to writing, BISD will provide them to Royal within thirty (30) days of BISD's reaching the settlement agreement. With respect

to any settlements to date, BISD will produce the written agreements and/or their terms to Royal within fourteen (14) days of signing this Stipulation.

8. Royal agrees to not oppose BISD's motion seeking to stay the Federal Court Lawsuit. Further, the Parties agree not to move to lift the stay or otherwise challenge the stay until such time as the Related Lawsuits have been fully and finally resolved by settlement, dismissal and/or final judgment, or until twelve (12) months from the date the Stay Order is entered by the Court, whichever is sooner. At that time, the Parties may agree to extend the stay, provided the Court approves.

**Agreement as to this Court's Proper Jurisdiction**

9. The Parties' claims, issues and disputes arising from and related to the Subject Insurance Claim are properly before this Court, which has jurisdiction over them. Accordingly, unless the Parties otherwise agree in advance in writing, neither BISD nor Royal will take or encourage any action that is designed to eliminate or arguably does eliminate this Court's jurisdiction over Royal, BISD and/or the issues, claims and counterclaims made the subject of the Federal Court Lawsuit. Further, the Parties agree that this Court is the proper forum for the eventual resolution of the issues in the Federal Court Lawsuit arising from or related to the Subject Insurance Claim, including but not limited to any claims/counterclaims for declaratory relief; alleged breaches of contract; insurance coverage; alleged "bad faith"; alleged violations of common law or statutory duties; alleged misrepresentation; actual, enhanced, or exemplary/punitive damages; and attorneys' fees. The Parties do not, and will not in the future, either before or after the entry of any stay of the Federal Court Lawsuit, object to this Court's assertion of jurisdiction over any party or claim made the subject or to be made the subject of the Federal Court Lawsuit.

10. If the Federal Court Lawsuit is stayed, upon the final resolution of the Related Lawsuits, unless the Federal Court Lawsuit has been resolved by the Parties in the interim, any party may move to lift the stay in Federal Court Lawsuit. The Parties will then proceed in the Federal Court Lawsuit to resolve any and all issues and claims that remain, by way of dispositive motions, trial and/or settlement.

**Dismissal of the Currently Abated State Court Action.**

11. On or around June 30, 2003, BISD filed an action styled and numbered *Brownsville Independent School District vs. Royal Surplus Lines Insurance Company and Cavazos Insurance*; Cause No. 2003-06-3344-D; In the 103rd Judicial District Court of Cameron County Texas (the "State Court Lawsuit").

12. BISD, within ten (10) days of any Order staying the Federal Court Lawsuit, will dismiss with prejudice any and all claims that it has made against Royal in the State Court Lawsuit.

BISD will not file or make any other claims related to or arising from the Subject Insurance Claim in that court or in any other court, except in the Federal Court Lawsuit, which BISD agrees is the proper forum for the resolution of all claims and issues arising from the Subject Insurance Claim.

13. BISD will not contend, by reason of this Stipulation or otherwise, that the State Court Lawsuit, or any lawsuit other than the Federal Court Lawsuit, is the proper forum for the resolution of any claim or issue between Royal and BISD arising from the Subject Insurance Claim and/or made the subject of the Federal Court Lawsuit.

**Delay Resulting from Any Stay of the Federal Court Lawsuit**

14. BISD agrees that any delay in (i) any payment to BISD by Royal related to the Subject Insurance Claim, and/or (ii) the eventual resolution of the Subject Insurance Claim, that results from any stay of the Federal Court Lawsuit is not the fault of and will not be attributed to Royal at any time. Further, in any consideration of Royal's liability, BISD agrees the jury or other fact finder will be advised of the time periods of the stay, and that the stay was requested by BISD.

15. The accrual of any applicable prejudgment interest, statutory interest (*e.g.,* Texas Insurance Code, Art. 21.55), or other interest will be tolled during the period of any stay of the Federal Court Lawsuit.

**Credit to Royal**

16. In the event that Royal is ever found by a court or jury to owe any money to BISD arising from or relating to the Subject Insurance Claim, BISD agrees that Royal, at a minimum, is entitled to a dollar-for-dollar credit for any and every dollar paid to BISD--or for the benefit of BISD--by any party, potential or former party, or future party to one or more of the Related Lawsuits, regardless of whether the payment is made as part of a settlement, or is paid in satisfaction of a judgment. Similarly, if any item of value *other than cash* (*e.g.*, security, services, real property) is provided or paid to BISD--or for the benefit of BISD--by any party, potential or former party, or future party to one or more of the Related Lawsuits, regardless of whether the item is paid or provided as the result of a settlement, or is paid in satisfaction of a judgment, Royal, at a minimum, is entitled to a credit in the amount of the dollar value of the item paid or provided to BISD or for the benefit of BISD. This credit shall be applied regardless of how such settlement/judgment proceeds to BISD are described, characterized, categorized, or determined.

17. The credit described in the preceding paragraph is not meant to be exclusive and does not preclude Royal from seeking any other credit or offset provided by law. Further, the

application of such credit is not an admission by Royal and shall not be used by BISD to contend that coverage exists for any category or type of damages claimed by BISD.

**BISD's Designation of Experts in the Federal Court Lawsuit**

18. Notwithstanding any Motion to Stay or Order of Stay entered by the Court in the Federal Court Lawsuit, BISD will identify its experts and produce expert reports in compliance with Federal Rule of Civil Procedure 26, the Court's scheduling order, and the Parties' January 12, 2004 letter agreement by which BISD's expert designation deadline was extended from February 20, 2004 until March 1, 2004. Nevertheless, BISD *may* provide Royal BISD's designation of experts and expert reports within the context of a confidential settlement brochure.

19. Regardless of the form in which BISD's expert designation and expert reports are provided to Royal, BISD is still bound by its designations and the opinions offered by its experts, just as if filed and served in the typical manner contemplated by Rule 26. The fact that the designations, opinions, and/or reports may be provided to Royal in the form of a settlement brochure will not preclude their admissibility in the Federal Court Lawsuit, and will not provide BISD any justification for attempting to withdraw, improperly supplement or de-designate any expert or opinion after any stay is lifted in the Federal Court Lawsuit.

**State Court Lawsuit**

20. This Stipulation may also serve as a Rule 11 Agreement in the currently abated State Court Lawsuit.

**Enforcement of this Stipulation**

21. The Parties agree that this Court may enforce any and all terms of this Stipulation, even during the pendency of any Stay of the Federal Court Lawsuit.

**AGREED TO ON THIS _____ DAY OF FEBRUARY, 2004:**

**Jay W. Brown**

______________________________

Jay W. Brown
BEIRNE, MAYNARD & PARSONS, L.L.P.
State Bar No. 03138830
SDT No. 1314
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEY-IN-CHARGE FOR PLAINTIFF ROYAL SURPLUS LINES INSURANCE COMPANY**

**Baltazar Salazar**

______________________________

Baltazar Salazar
State Bar No. 00791590
SDT No. 18536
1612 Winbern
Houston, Texas 77004
T: (713) 655-1300
F: (281) 749-8104

Ramon Garcia
LAW OFFICE RAMON GARCIA, P.C.
State Bar No. 07641800
SDT No. 3936
222 W. University
Edinburg, Texas 78539
T: (956) 383-7441
F: (956) 381-0825

Craig S. Smith
LAW OFFICE OF CRAIG S. SMITH
State Bar No. 18553570
14493 S.P.I.D., Suite A, P.M.B. 240
Corpus Christi, Texas 78418
T: (361) 949-6906
F: (361) 949-0843

**ATTORNEYS FOR DEFENDANT BISD**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served upon the following counsel of record on the ____ day of ________________, 2004.

Baltazar Salazar
1612 Winbern
Houston, Texas 77004

*Via Certified Mail Return Receipt Requested*

Craig S. Smith
LAW OFFICE OF CRAIG S. SMITH
14493 S.P.I.D., Suite A, P.M.B. 240
Corpus Christi, Texas 78418

*Via Certified Mail/Return Receipt Requested*

Ramon Garcia
LAW OFFICE RAMON GARCIA, P.C.
222 W. University
Edinburgh, Texas 78539

*Via Certified Mail Return Receipt Requested*

*Attorneys for Defendant BISD*

______________________________
Jay W. Brown

## Confirmation Report – Memory Send

Date & Time: Feb-24-2004 09:32
Tel line : +7139601678
Machine ID : BEIRNE MAYNARD

| | | |
|---|---|---|
| Job number | : | 612 |
| Date & Time | : | Feb-24 09:29 |
| To | : | 873#030098#12#2817498104 |
| Number of pages | : | 010 |
| Start time | : | Feb-24 09:29 |
| End time | : | Feb-24 09:32 |
| Pages sent | : | 010 |
| Status | : | OK |

Job number : 612 *** SEND SUCCESSFUL ***

*BEIRNE, MAYNARD & PARSONS, L.L.P.*
*1300 Post Oak Boulevard, Suite 2300*
*Houston, Texas 77056*
*(713) 623-0887*
*(FAX) (713) 960-1527*

PAGE (1) OF ( 10 ) PAGES
INCLUDING COVER SHEET

**TELECOPY COVER SHEET**

| | | | |
|---|---|---|---|
| TO: | Mr. Baltazar Salazar | FAX:<br>PHONE: | 281-749-8104<br>713-256-7777 |
| FROM: | Jay W. Brown | | |
| DATE: | February 24, 2004 | | |
| FILE NUMBER: | 030098 | | |
| ADDITIONAL COMMENTS: | | | |

**CONFIDENTIALITY NOTICE**

This facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

NOTE: PLEASE CALL IMMEDIATELY
IF ALL PAGES ARE NOT RECEIVED

#496359.1

*BEIRNE, MAYNARD & PARSONS, L.L.P.*
*1300 Post Oak Boulevard, Suite 2300*
*Houston, Texas 77056*
*(713) 623-0887*
*(FAX) (713) 960-1527*

PAGE (1) OF ( 10 ) PAGES
INCLUDING COVER SHEET

## TELECOPY COVER SHEET

| | | | |
|---|---|---|---|
| **TO:** | **Mr. Baltazar Salazar** | **FAX:**<br>**PHONE:** | **281-749-8104**<br>**713-256-7777** |
| FROM: | Jay W. Brown | | |
| DATE: | February 24, 2004 | | |
| FILE NUMBER: | 030098 | | |
| ADDITIONAL COMMENTS: | | | |

**CONFIDENTIALITY NOTICE**

**This facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.**

**NOTE: PLEASE CALL IMMEDIATELY**
**IF ALL PAGES ARE NOT RECEIVED**

#496359.1

Job number : 189 *** SEND SUCCESSFUL *

*BEIRNE, MAYNARD & PARSONS, L.L.P.*
*1300 Post Oak Boulevard, Suite 2300*
*Houston, Texas 77056*
*(713) 623-0887*
*(FAX) (713) 960-1527*

PAGE (1) OF ( 10 ) PAGES
INCLUDING COVER SHEET

TELECOPY COVER SHEET

| | | |
|---|---|---|
| TO: | Hon. Ramon Garcia | FAX: 956-381-0825<br>PHONE: 956-383-7441 |
| | Mr. Craig Smith | FAX: 361-949-0843<br>PHONE: 361-949-6906 |
| FROM: | Steve Wedemeyer | |
| DATE: | February 24, 2004 | |
| FILE NUMBER: | 030098 | |
| ADDITIONAL COMMENTS: | | |

CONFIDENTIALITY NOTICE

This facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

NOTE: PLEASE CALL IMMEDIATELY
IF ALL PAGES ARE NOT RECEIVED

#496269

# Group Send Report

Date & Time: Feb-24-2004 09:33
Tel line : +7139600934
Machine ID : BEIRNE MAYNARD

Job number : 189

Date & Time : Feb-24 09:28

Number of pages : 010

Start time : Feb-24 09:28

End time : Feb-24 09:33

Successful numbers

Fax numbers

☎873#030098#12#19563810825
☎873#030098#12#13619490843

Unsuccessful numbers Pages sent

*BEIRNE, MAYNARD & PARSONS, L.L.P.*
*1300 Post Oak Boulevard, Suite 2300*
*Houston, Texas 77056*
*(713) 623-0887*
*(FAX) (713) 960-1527*

PAGE (1) OF ( 10 ) PAGES
INCLUDING COVER SHEET

# TELECOPY COVER SHEET

| | | |
|---|---|---|
| **TO:** | **Hon. Ramon Garcia** | **FAX: 956-381-0825**<br>**PHONE: 956-383-7441** |
| | **Mr. Craig Smith** | **FAX: 361-949-0843**<br>**PHONE: 361-949-6906** |
| FROM: | Steve Wedemeyer | |
| DATE: | February 24, 2004 | |
| FILE NUMBER: | 030098 | |
| ADDITIONAL COMMENTS: | | |

**CONFIDENTIALITY NOTICE**

**This facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.**

**NOTE: PLEASE CALL IMMEDIATELY**
**IF ALL PAGES ARE NOT RECEIVED**

#496269

# EXHIBIT "F"

BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 POST OAK BOULEVARD
SUITE 2500
HOUSTON, TEXAS 77056-3000
(713) 623-0887
FAX. (713) 960-1527

JAY W. BROWN
PARTNER

BOARD CERTIFIED
CIVIL TRIAL LAW
PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

DIRECT DIAL: (713) 960-7306
E-MAIL: jbrown@bmpllp.com

*SETTLEMENT LETTER*

June 9, 2003

Honorable Ramon Garcia
Law Office of Ramon Garcia, P.C.
222 W. University Drive
Edinburg, Texas 78539

***Via Facsimile 956-381-0825 and Certified Mail***

RE: Mold Claim

Dear Judge Garcia:

On behalf of Royal Surplus Lines, we have carefully considered the tens of thousands of pages of documentation BISD has recently provided as well as the other information, including the sworn statements from the BISD representatives. As you know, BISD has been wrestling with these mold issues for many years and various lawsuits have been filed as a result of the mold at BISD. While BISD has had the benefit of several years to reflect on and study this matter with its various engineering studies, we have had to get up to speed fairly quickly on behalf of Royal.

Your claim presents numerous technical issues and a multitude of facts, many of which occurred several years ago and some of which are more recent. In terms of coverage issues, your claim raises many coverage issues. It is quite possible that no portion of BISD's claim would qualify for coverage under any of the applicable Royal policies; it is also possible that BISD could find evidence that might qualify some portions of BISD's claim for coverage.

These coverage issues need to be answered before BISD's claim can be determined and resolved. The only way to obtain answers to legal questions which are coverage questions is to have a Court rule on them. Indeed, the Texas Supreme Court has encouraged insurers in Royal's position--*i.e.*, those faced with disputed coverage issues--to seek declaratory relief from a court. While litigation is certainly a lawful process and will result in these coverage questions being answered, Royal finds this process to be very expensive and time consuming, which is sometimes not in the best interest of either the insured or Royal.

Accordingly, we hereby offer $100,000 towards the complete settlement of all of BISD's claims under all policies of insurance issued by Royal Surplus that BISD is claiming. We would like to meet with you at a time of your convenience to exchange viewpoints on some of these coverage issues and thereby move this process forward. We look forward to working with you, and receiving your response.

Very truly yours,

Jay W. Brown

Jay W. Brown

JWB:st

cc: Mr. Baltazar Salazar
Attorney at Law
1612 Winbern
Houston, Texas 77004

***Via Facsimile 713-807-0930***
***and Certified Mail***

**BEIRNE, MAYNARD & PARSONS, L.L.P.**
**Wells Fargo Tower**
**24th Floor**
**1300 Post Oak Boulevard**
**Houston, Texas 77056**
**(713) 623-0887**
**(FAX) 960-1527**

**PAGE (1) OF (3) PAGES**
**INCLUDING COVER SHEET**

# TELECOPY COVER SHEET

| | | |
|---|---|---|
| **TO:** | **Hon. Ramon Garcia**<br>**Baltazar Salazar** | 956-381-0825<br>713-807-0930 |
| **FROM:** | Jay W. Brown | |
| **DATE:** | June 9, 2003 | |
| **FILE NO.:** | 030098 | |

**ADDITIONAL COMMENTS:**

**CONFIDENTIALITY NOTICE**

**This facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.**

**NOTE: PLEASE CALL IMMEDIATELY**
**IF ALL PAGES ARE NOT RECEIVED**
**(713) 623-0887**

## Group Send Report

Date & Time: Jun-09-2003 14:51
Tel line : 7139601527
Machine ID : BEIRNE MAYNARD

Job number : 450

Date & Time : Jun-09 14:44

Number of pages : 003

Start time : Jun-09 14:45

End time : Jun-09 14:51

Successful numbers

Fax numbers

☎873#030098#12#108#19563810825
☎873#030098#12#108#7138070930

Unsuccessful numbers | Pages sent

Job number : 450 *** SEND SUCCESSFUL ***

BEIRNE, MAYNARD & PARSONS, L.L.P.
Wells Fargo Tower
24th Floor
1300 Post Oak Boulevard
Houston, Texas 77056
(713) 623-0887
(FAX) 960-1527

PAGE (1) OF (3) PAGES
INCLUDING COVER SHEET

## TELECOPY COVER SHEET

| | | |
|---|---|---|
| TO: | Hon. Ramon Garcia<br>Baltazar Salazar | 956-381-0825<br>713-807-0930 |
| FROM: | Jay W. Brown | |
| DATE: | June 9, 2003 | |
| FILE NO.: | 030098 | |

ADDITIONAL COMMENTS:

CONFIDENTIALITY NOTICE

This facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

NOTE: PLEASE CALL IMMEDIATELY
IF ALL PAGES ARE NOT RECEIVED
(713) 623-0887