45

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 0 3 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ROYAL SURPLUS LINES<br>INSURANCE COMPANY,<br>    Plaintiff, | §<br>§<br>§<br>§ | |
| vs. | §<br>§ | CIVIL ACTION NO. B-03-109 |
| BROWNSVILLE INDEPENDENT<br>SCHOOL DISTRICT,<br>    Defendant | §<br>§<br>§<br>§ | |

**BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S**
**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BY: _Baltazar Salazar_

Baltazar Salazar
State Bar No. 00791590
Federal Bar No. 18536
1612 Winbern
Houston, Texas  77004
Tel: 713-655-1300
Fax: 713-807-1930

The Honorable Ramon Garcia
State Bar No. 07641800
Federal Bar No. 3936
Law Offices of Ramon Garcia, P.C.
222 W. University Drive
Edinburg, Texas  78539
Tel:  956-383-7441
Fax:  956-381-0825

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was served by certified mail, return receipt requested on the attorney in charge for Royal Surplus Lines Insurance Company on this the _3rd_ day of _June_, 2004, addressed as follows:

Jay Brown                          **CMRRR#  7001 0320 0001 1883 9157**
Beirne, Maynard & Parsons, L.L.P.
1300 Post Oak Blvd.
Suite 2500
Houston, Texas  77056-3000

Baltazar Salazar

# TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............................. 1

ISSUES TO BE RULED ON AND STANDARD OF REVIEW .................................................. 2

SUMMARY OF THE ARGUMENT ...................................................................................... 3

ARGUMENTS AND AUTHORITY...................................................................................... 3

I.    At A Minimum, Fact Issues Remain As To Whether BISD's Claims Are Covered By The Royal Policies. ................................................................................................................... 3

    A.    Exclusion d(1) For Wear And Tear Does Not Apply ..................................................... 6

    B.    Exclusion d(2) For Rust, Corrosion, Fungus, Decay, And Deterioration Does Not Apply.................................................................................................................................... 8

    C.    The Workmanship Exclusion 3(c) Does Not Apply .................................................... 11

    D.    Water Damage Is Clearly Covered Under The Policies ............................................... 12

    E.    The Limitation For Rain Damage Does Not Apply...................................................... 13

II.    The Doctrine Of Judicial Estoppel Does Not Apply Under The Facts Of This Case....... 14

III.    At A Minimum, Fact Issues Remain As To Whether BISD Knew Or Should Have Known Of An Ongoing Progressive Loss Before The Effective Date Of The Policies. .......... 16

IV.    BISD Complied With All Conditions Precedent In The Policies ................................. 18

    A.    BISD Provided Prompt Notice, Or In The Alternative A Fact Question Remains....... 18

    B.    BISD's Claims Are Not Barred By The Legal Action Against Us Clause Or A Two Year Limitations Period. .................................................................................................... 19

V.    Royal Does Not Even Address BISD'S Claims Under The Texas Insurance Code......... 21

CONCLUSION................................................................................................................ 22

# INDEX OF AUTHORITIES

## Cases

*Aetna Casualty and Surety Co. v. Yates*, 344 F.2d 939 (5th Cir. 1965)............................................ 9

*Burch v. Commonwealth Mut. Ins. Co.*, 450 S.W.2d 838, 840-841 (Tex. 1970).......................... 16

*Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ...........................

*Coury v. Allstate Texas Lloyd's*, 2004 WL 343946 (S.D.Tex. 2004)(Magistrate Opinion adopted
   by the District Court on March 31, 2004)..................................................................... 10, 11

*Crawford & Co. v. Garcia*, 817 S.W.2d 98 (Tex. App.—El Paso, 1991, writ denied) ............... 22

*Crescent Towing & Salvage Co., Inc. v. M/V Anaz*, 40 F.3d 741, 743 (5th Cir.1994) .................... 2

*Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Insurance Co.*, 852 S.W.2d 252 (Tex.
   App.—Dallas 1993, writ denied) ...................................................................................... 17

*Data General Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996) ...................................... 14

*DeLaurentis v. USAA*, 2004 WL 349922, *6 (Tex. App.—Houston [14[th] Dist] 2004)................. 8

*Flores v. Allstate Texas Lloyd's Ins. Co.*, 278 F.Supp.2d 810 (S.D. Tex 2003).......... 9, 10, 11, 18

*Hall v. GE Plastic Pacific*, 327 F.3d 391 (5th Cir. 2003)......................................................... 14

*McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir.), cert denied, 525 U.S. 981, 119
   (1998)............................................................................................................................ 14

*Salinas v. Allstate Texas Lloyds Ins. Co.*, 278 F.Supp.2d 820 (S.D. Tex 2003).................... 10, 11

*Summers v. Harris*, 573 F.2d 869, 872 (5th Cir. 1978) ............................................................ 16

*Thomas v. Barton Lodge*, 174 F.3d 636, 644 (5th Cir. 1999).......................................................... 3

*Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.—Houston [14[th] Dist] 1995 no
   writ).............................................................................................................................. 16

## Statutes

Tex. Civ. Prac. & Rem. Code §16.070 ........................................................................................ 21

Tex. Civ. Prac. & Rem. Code §16.061 ........................................................................................ 21

Tex. Civ. Prac. & Rem. Code §16.070 ........................................................................................ 20

Tex. Ins. Code art. 21.21 §16(a) ................................................................................................. 22

## Rules

Fed.R.Civ.P. 56(c)    2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROYAL SURPLUS LINES | § | |
| INSURANCE COMPANY, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-03-109 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
|     Defendant | § | |

## BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S RESPONSE TO PLAINTIFFS MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant, Brownsville Independent School District ("BISD"), files its response to Plaintiff Royal Surplus Lines Ins. Co.'s ("Royal") motion for summary judgment as follows:

### STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

1.      This is a suit involving coverage for losses to two schools owned and operated by BISD under four commercial property insurance policies issued by Royal for the period of September 1, 1996 until April 1, 2002. The policies are attached as exhibits 1-4 to Royal's motion. The two schools at issue are Aiken Elementary School ("Aiken") and Besterio Middle School ("Besterio"). On June 30, 2003, BISD filed an action is state court against Royal. That action is now abated. On June 9, 2003, Royal filed a declaratory judgment action seeking a coverage determination by this court. BISD filed a motion to dismiss based on the state action. Eventually, the parties agreed to abate the state action. On December 12, 2003, BISD filed a counterclaim against Royal alleging breach of contract and extra contractual claims, including claims for Insurance Code violations and breach of the duty of good faith and fair dealing.

1

2.      Discovery has been ongoing and BISD has produced in excess of one hundred thousand pages of documents to Royal.  Royal now seeks summary and a declaration that no coverage exists under any of the four property policies.  For the reasons set forth below, Royal is not entitled to summary judgment on its causes of action.  For purposes of this motion, BISD does not try to point out every single instance of covered claims or to set forth the full extent of covered claims.  Rather for purposes of responding to summary judgment, BISD shows that at a minimum, even when applying all the exclusions and limitations cited by Royal, at least some covered claims exist and therefore summary judgment is improper.  Moreover, Royal does not address BISD's claims for damages under the Texas Insurance Code for the misrepresentations and other wrongful and unlawful acts and omissions committed by Royal in the course of handling BISD's claim.  Thus, summary judgment is clearly improper as to the Texas Insurance Code claims.

## ISSUES TO BE RULED ON AND STANDARD OF REVIEW

3.      Royal filed a motion for summary judgment seeking a declaration that BISD is not entitled to coverage under any of the Royal policies for any damage or loss at the two schools.  A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The Court must first determine whether there are genuine and material issues of fact by reviewing applicable law. *Crescent Towing & Salvage Co., Inc. v. M/V Anaz*, 40 F.3d 741, 743 (5th Cir.1994).  The court then examines the evidence on those issues, viewing any contested facts in the light most favorable to the non-moving party. *Id.*  The movant

2

bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of genuine issues of material fact. *Celetox Corp.*, 477 U.S. at 323,106 S.Ct. 2548. The standard for review of a summary judgment ruling is de novo. *Thomas v. Barton Lodge*, 174 F.3d 636, 644 (5th Cir. 1999).

## SUMMARY OF THE ARGUMENT

I.      At a minimum, fact issues remain as to whether BISD's claims are covered under the Royal Policies.

II.      The doctrine of judicial estoppel does not apply under the facts of this case.

III.      At a minimum, fact issues remain as to whether BISD knew or should have known of an ongoing progressive loss before the effective date of the policies.

IV.      BISD complied with all conditions precedent in the policies

         A.      BISD provided prompt notice, or in the alternative, a fact question remains;

         B.      BISD's claims are not barred by the "Legal Action Against Us" clause or a two year limitations period.

V.      Royal does not even address BISD's Insurance Code claims

## ARGUMENTS AND AUTHORITY

**I. At A Minimum, Fact Issues Remain As To Whether BISD's Claims Are Covered By The Royal Policies.**

     4.      Royal issued four commercial property policies to the named insured, BISD, from September 1, 1996 through April 1, 2002. *See*, Exhibits 1-4 attached to Royal's motion.[1] Although the policies are not identical, each policy contains nearly identical pertinent provisions. The insuring clause of the policies provides as follows:

CAUSES OF LOSS-SPECIAL FORM

**A. COVERED CAUSES OF LOSS**

---

[1]   Rather than burden the court with additional copies of hundreds of pages of exhibits, wherever possible, BISD cites the summary judgment evidence filed by Royal and incorporates that evidence herein as indicated.

3

> When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>
> 1. Excluded in Section **B.**, Exclusions; or
> 2. Limited in Section **C.**, that follow.

    5.    "Special" is shown on the declarations in all four policies. Thus, there is coverage for all direct physical losses to the insured property unless otherwise limited or excluded by other policy provisions. There is no dispute that the two schools at issue, Besteiro and Aiken, are insured properties under all four policies. There is also no dispute that the damages claimed by BISD constitute direct physical loss. Thus, Royal relies on a series of exclusions and limitations for the basis for its argument that coverage does not exist. The exclusions and limitations cited by Royal are as follows:

> **B. EXCLUSIONS**
>
> ***
>
> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
> ***
>
> d. (1) Wear and tear;
>
>     (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>
> ***
>
> But if an excluded cause of loss that is listed in 2.d(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage by that "specified cause of loss" or building glass breakage.
>
> 3. We will not pay for loss of damage caused by or resulting from any of the following, **3.a** through **3.c**. But if an excluded cause of loss that is listed in **3.a** thorough **3.c** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
> ***

4

    b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    c.  Faulty, inadequate or defective:

        (1) Planning, zoning, development, surveying, siting;

        (2) Design, specifications workmanship, repair, construction, renovation, remodeling, grading, compaction;

        (3) Materials used in repair, construction, renovation or remodeling; or

        (4) Maintenance of part or all of any property on or off the described premises.

***

## C. LIMITATIONS

***

    c.  We will not pay for loss or damage to the interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls thorough which the rain, snow, sleet, ice, sand or dust enters; or

***

## F. DEFINITIONS

"Specified Causes of Loss" means the following:

Fire, lighting, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, sinkhole collapse, volcanic action, falling objects, weight of snow, ice or sleet, water damage.

"Water damage" means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1.  Excluded in Section **B.**, Exclusions; or

2.  Limited in Section **C.**, that follow.

5

A.    Exclusion d(1) For Wear And Tear Does Not Apply

6.    Royal asserts exclusion d(1) which provides that Royal will not pay for loss or damage caused by or resulting from "wear and tear." The claims made by BISD do not fall within the meaning of wear and tear. The claims, in part, involve the breaking apart or cracking of plumbing systems and roof drain pipes that led to water damage and subsequent mold growth in the schools. *See,* The Building Water Intrusion Evaluation Report of Findings dated December 20, 2002 prepared by Rimkus, attached in part to Royal's motion as Exhibit 31. The breaking apart or cracking of these systems is not normal wear and tear of the schools. Thus, exclusion d(1) does not apply.

7.    However, if the breaking apart or cracking of the systems could be considered the result of wear and tear, there is an exception to the exclusion. The exception provides that if the wear and tear results in a "specified cause of loss" then Royal will pay for loss or damage caused by the "specified cause of loss." A "specified cause of loss" is defined in relevant part as "water damage" which in turn is defined as the "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance . . . containing water or steam." Thus, if the wear and tear resulted in the accidental discharge or leakage of water from the breaking or cracking of any system containing water, then Royal must "pay for the loss or damage caused" by the water damage. At least some of the damages were caused by the accidental leakage of water from systems containing water including the plumbing system and the roof drain pipes.

8.    One of the expert reports cited by Royal, The Building Water Intrusion Evaluation Report of Findings Dated December 20, 2002, that was prepared by Rimkus provides evidence of a number of water leakage problems caused by pipes that have broken apart or

cracked. Royal relies on portions of the report in their motion, which is Exhibit 31 to their motion. A complete copy of the text of the report is attached hereto as Exhibit A.

9.      The December 20, 2002 report prepared by Rimkus and offered as summary judgment evidence by Royal lists the following plumbing system leaks:

      a.      **Aiken Elementary**

          i.      Classroom B111 leak from air handling unit pipe

          ii.     Classroom B111 leak from sanitary drain pipe

          iii.    Classroom B101 leak from pipe from 2nd floor restroom

          iv.

          iv.     Classroom B217 leak from chilled water line at air handling unit

      b.      **Besterio Middle School**

          i.      Classroom 110 leak from drainage pipe from 2nd floor restroom sink

          ii.     Classroom 111 leak from drainage pipe

          iii.    Classroom 112 leak from lab table water supply pipe in classroom 210

          iv.     Classroom 117 leak from custodian utility sink drain pipe

          v.      Counselor's office and Nurse station leak from lab table water pipe in classroom.

10.     Additionally, another expert relied upon by Royal, Engineering & Fire Investigations ("EFI"); in its site inspection report dated July 17, 2003 identified another plumbing system leak. EFI noted that Aiken Elementary classroom A107 was damaged by a broken PVC condensate drain pipe. This leak was not identified in any earlier reports.

11.     The December 20, 2002 Rimkus report also identifies a number of roof drain pipe leaks.

      a.      **Aiken Elementary**

          i.      Second Floor Hall leak from roof drain pipe

b.     **Besterio Middle School**

i.     Classroom 208 leak from roof drain pipe hub

ii.    Classroom 210 leak in joints of roof drain pipe or connection to hub at roof deck

iii.   Classroom 220 leak from roof drain pipe hub

iv.    Classroom 235 leak from roof drain pipe hub

v.     Cafeteria leak from roof drain pipe

vi.    Kitchen leak from roof drain pipe

12.     In sum, "water damage," which is defined as the "discharge or leakage of water ... as the direct result of the breaking apart or cracking of any part of a system or appliance . . . containing water . . .," that is a result of wear and tear is covered by the policy.  The expert reports that Royal rely upon and which have been submitted as summary judgment evidence clearly identify 17 separate instances of leakage of water from systems containing water, *i.e.* the plumbing system and roof drainage pipe system.  Royal admits to this fact in its motion.  Royal states that one of the causes of loss or damage as found by the experts is "[p]lumbing leaks at pipe joints and/or fittings caused by construction defects and wear and tear." *See*, Royal's motion at p.22.  Thus, exclusion d(1) does not apply to at least some of the damages claimed by BISD and the motion for summary judgment must be denied.

B.     Exclusion d(2) For Rust, Corrosion, Fungus, Decay, And Deterioration Does Not Apply

13.     Exclusion d(2) provides in relevant part that Royal will not pay for loss or damage "caused by or resulting" from "fungus."  BISD does not dispute that mold is a fungus.  Exclusion d(2) precludes coverage for loss or damage resulting from fungus.  The evidence shows that at least in part, water discharge/leakage problems from broken or cracked pipes resulted in the mold growth.  In other words, mold is the end result of the water damage, mold is not the cause of the damage.  The 14th Court of Appeals in Houston recently recognized this exact distinction.

8

See, *DeLaurentis v. USAA*, 2004 WL 349922, *6 (Tex. App.—Houston [14th Dist] 2004) ("[w]e do not share the insurer's narrow view, but find that mold may be either damage or a cause of loss, depending on the circumstances"). Thus, the exclusion does not apply because the damages are not "caused by or resulting from fungus." Rather, the mold was the result and the water damage is the cause. Thus, at a minimum some of the claims are not precluded by exclusion d(2) and summary judgment is improper.

14. Additionally, the exception discussed above also applies to exclusion d(2). This exception is often referred to as the "ensuing loss" provision. One recent Southern District of Texas case to address this issue is *Flores v. Allstate Texas Lloyd's Ins. Co.*, 278 F.Supp.2d. 810 (S.D. Tex 2003). That case involved similar policy language under a homeowner's policy. The policy at issue provided that "we do not cover loss caused by . . . mold or other fungi . . . [w]e do cover ensuing loss caused by . . . water damage if the loss would otherwise be covered under this policy." *Flores* at 814. The court held that "mold damage to the dwelling is covered as a distinct loss if it ensues from an otherwise covered loss under the policy. Plumbing and air conditioning leaks and overflows are presumably included under the all risk of physical loss language . . . because they are not otherwise specifically excluded in Section I Exclusions." *Id.* The *Flores* court cites to an earlier decision by the Fifth Circuit in *Aetna Casualty and Surety Co. v. Yates*, 344 F.2d 939 (5th Cir. 1965). In *Yates,* the insured sought coverage for wood rot that was caused by naturally occurring condensation accumulating in an inadequately vented crawl space. Under these facts, the Fifth Circuit rejected the insured's argument that the ensuing loss provision covered otherwise excluded rot. Rather the court noted that "a likely case for application of the [ensuing loss] clause would be if water . . . coming from a burst pipe flooded the house and, in turn, caused rust or rot; loss from rust or rot so caused would be a loss ensuing on water damage.

That is not this case, where the rot may have ensued from the presence of water but not from water damage." *Yates* at 941. Following the *Yates* case, the Southern District of Texas in *Flores* construed "the mold exclusion as precluding coverage for mold occurring naturally or resulting from a non-covered event, but not for mold 'ensuing' from a covered water damage event." *Flores* at FN 3. The *Flores* case was explicitly followed by another Southern District of Texas case in *Salinas v. Allstate Texas Lloyds Ins. Co.*, 278 F.Supp.2d 820 (S.D. Tex 2003). In *Salinas*, the court "holds, once again, that the Policy covers mold claims to the extent that the claimed mold damage ensues from an otherwise covered water damage event." *Salinas*, 278 F.Supp.2d. at 824.

15.    Another Southern District of Texas case to address the issue is *Coury v. Allstate Texas Lloyd's*, 2004 WL 343946 (S.D.Tex. 2004)(Magistrate Opinion adopted by the District Court on March 31, 2004).  In that case, a homeowner brought suit against her insurance company for the failure to pay a mold claim.  The homeowner alleged that the mold was the result of an accidental discharge or leakage from the plumbing system.  The insurer relied on the exclusion stating the policy does not cover loss caused by mold.  The court focused on the "ensuing loss" exception to the exclusion, which states that "we do cover ensuing loss caused by . . . water damage . . . if the loss would otherwise be covered under this policy."  The court notes that neither the Texas intermediate appellate courts nor the federal district courts agree on the proper interpretation of the clause.  However, the court adopts the reasoning of *Flores* and rejects the other line of cases.  The court held that "the Texas Supreme Court would interpret the policy to provide coverage for mold damage when the loss ensues from otherwise covered water damage."  The court further held that "the court makes no determination whether a plumbing leak c aused P laintiff's m old d amage o r w hether t he p olicy a ffords c overage i n t his p articular

case. Those issues are subject to the jury's factual conclusions and are not presently before the court." The Royal policy must be construed similarly; mold damage that ensues from covered water damage is likewise covered. BISD has offered summary judgment evidence of "water damage" caused in part by pipe leaks that fall within the exception to exclusion d(2). Just as in *Coury*, the determination of whether or to what extent water damage caused the mold or whether the policy affords coverage in this particular case is "subject to the jury's factual conclusions" and is not proper for summary judgment.

16.     The reasoning in *Flores, Yates, Salinas,* and *Coury* is persuasive.[2]   The Royal Policies may not cover losses from fungi occurring naturally or from a non-covered event but the policy does cover mold resulting from covered "water damage." The summary judgment evidence shows that covered water damage exists at the schools and that mold is the result of such water damage. Exclusion 2(d) for damage caused by fungi does not apply to preclude coverage for all claims. Thus, summary judgment is not proper.

17.     Additionally, the exclusion applies to rust corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself, in addition to fungus. Applying the exception discussed above, if rust, corrosion, deterioration, etc. led to water damage (the breaking apart or cracking of a system containing water) then Royal must pay for the loss caused by the water damage.

C.     The Workmanship Exclusion 3(c) Does Not Apply

18.     Exclusion 3(c) provides in relevant part that Royal will not pay for loss or damage caused by or resulting from faulty, inadequate or defective: design, specifications, workmanship, repair, construction, materials or maintenance. Royal points to the various expert reports that

---

[2]   The *Flores, Yates, Salinas, and Coury* cases interpreted very similar language in a homeowner's policy.

contain statements concerning defective construction and poor maintenance and alleges that all coverage is excluded. However, like exclusion 2, exclusion 3 also contains an exception. The policies provide that "if an excluded cause of loss listed in 3a through 3c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." The exception to Exclusion 3 uses the term "covered cause of loss" rather than "specified cause of loss" as used in exclusion 2. A "covered cause of loss" means direct physical loss unless excluded or limited by the policy. Under the facts of this case, to the extent there was faulty workmanship or maintenance, that faulty workmanship or maintenance resulted in water damage. There is no exclusion or limitation that precludes coverage for water damage as defined by the policies. Thus, water damage is a Covered Cause of Loss, and Royal must pay for all loss or damage resulting from the water. As set forth in detail above, the summary judgment evidence relied upon by Royal indicates at least 17 areas where there is a leak of water caused by the breaking apart or cracking of a system containing water.

D.    Water Damage Is Clearly Covered Under The Policies

19.    The fact that the policies include coverage for damages caused by water is made crystal clear by the fact that "water damage" is defined as a "specified cause of loss" and by the inclusion of the Additional Coverage Extension Endorsement. That endorsement provides:

**E. ADDITIONAL COVERAGE EXTENSIONS**

***

2.    Water Damage, other liquids, powder or molten material damage. If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

12

Thus, it is clear that water is a covered cause of loss. If damage or loss results from water, Royal must also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water escapes.

      E.       <u>The Limitation For Rain Damage Does Not Apply.</u>

      20.      Royal cites Limitation 1(c) which provides as follows:

> **C. LIMITATIONS**
>
> The following limitations apply to all policy forms and endorsements, unless otherwise stated.
>
> [1.]  We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.
>
> ***
>
> c..  We will not pay for loss of or damage to the interior of any building or structure cased by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>
> > (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters or . . .

Thus, there is no coverage for damage caused by rain, snow sleet, ice, sand, or dust to the interior of the schools unless the schools first sustain damage by a covered cause of loss to the roof or walls through which the rain, *etc.* enters. BISD's claims include water damage and subsequent mold growth to the interior of the school caused by the breaking apart or cracking of the roof drain pipes in various places. The water damage caused by the breaking apart or cracking of the roof drain pipes is a Covered Cause of Loss. Thus, because there was damage to the roof drain pipes by a Covered Cause of Loss, any subsequent rain that entered the school through the broken or cracked roof drain pipes and caused water damage is likewise covered. Therefore

13

Limitation 1(c) does not preclude coverage for all the claims and summary judgment is improper.

**II.    The Doctrine Of Judicial Estoppel Does Not Apply Under The Facts Of This Case.**

21.    Royal alleges that BISD is judicially estopped from submitting any controverting causation evidence. Royal argues that because BISD has also sued the architects and contractors involved in the schools' construction and design, it is judicially estopped to assert any other position besides construction defect as the cause of loss.

22.    The doctrine of judicial estoppel as applied in the Fifth Circuit has recently been analyzed in *Hall v. GE Plastic Pacific*, 327 F.3d 391 (5th Cir. 2003). The court in *Hall* states that "judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or earlier proceeding." *Hall*, 327 F.3d at 396. The court continued "in this Circuit, two bases for judicial estoppel must be satisfied before a party can be estopped. First it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and [second] that party must have convinced the court to accept that previous position." *Id.* (internal citations and quotations omitted). The doctrine of judicial estoppel is not identical in each of the circuits. The Fifth Circuit set out the doctrine to be followed in this circuit in *Hall*. Royal, however, relies on cases from the Federal Circuit and the Seventh Circuit. *See, e.g. Data General Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996)("the doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed."); *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir.), cert denied, 525 U.S. 981, 119 (1998)("Judicial estoppel requires …that the party

14

sought to be estopped has obtained a favorable judgment or settlement on the basis of the factual or legal contention that he wants to repudiate in the current litigation").

23.    As a threshold matter, the parties and claims in the suits are very different. The suit between Royal and BISD involves Royal's obligations under a contract with BISD. Royal's contractual obligations are not impacted by BISD's suits against the contractors. Royal may ultimately have a right of subrogation or credit but that has nothing to do with judicial estoppel.

24.    Under the law of the Fifth Circuit as the first requirement, Royal must show that that BISD's positions are "clearly inconsistent." The two lawsuits in which BISD sued the architects and contractors involved with the design and construction of the two schools are ongoing. BISD's arguments concerning defective construction in those two suits are not inconsistent with coverage. This is true, because although there is an exclusion for defective construction, to the extent the defective construction caused water damage, such damages are covered under the policies. Thus, Royal fails to show that the positions are "clearly inconsistent" and the doctrine of judicial estoppel does not apply.

25.    Moreover, Royal fails to show that the second requirement is met: that BISD convinced the court to accept its legal position. The suits at issue are still ongoing. Royal makes no argument and submits no evidence that the court has accepted BISD's position in those cases. Instead, Royal argues based on a Seventh Circuit case that BISD should be estopped because of a favorable settlement which can constitute success on a legal position. *See, McNamara.* Even if the Seventh Circuit standard is applied, BISD has not obtained a favorable judgment or settlement in either case. As noted by Royal, BISD has settled with one party, the mechanical engineer who designed the HVAC system, for $170,000. The claims made by BISD in the two state court suits are for approximately $28,000,000 and involve multiple defendants. Thus,

15

settlement with one defendant for $170,000 in no way constitutes a "favorable" settlement that would i nvoke t he d octrine o f j udicial e stoppel e ven i f t he p ositions w ere i nconsistent.  T hus, judicial estoppel is not proper grounds for a summary judgment.

**III.    At A Minimum, Fact Issues Remain As To Whether BISD Knew Or Should Have Known Of An Ongoing Progressive Loss Before The Effective Date Of The Policies.**

26.    Royal asserts the known loss or loss in progress doctrine as a basis for denial of coverage. Under the "loss in progress" or the "known loss" doctrines, an insured cannot insure against something that has already begun and that is known to have begun. *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.—Houston [14th Dist] 1995 no writ).  A "loss in progress" is an ongoing progressive loss that the insured is or should be aware of at the time the policy is purchased. *Two Pesos* at 501.  A "known loss" is a loss that has already occurred and that is known or should be known by the insured when the policy is purchased. *Burch v. Commonwealth Mut. Ins. Co.*, 450 S.W.2d 838, 840-841 (Tex. 1970) (emphasis added).  These doctrines preclude coverage "where the insured is, or should be, aware of an ongoing progressive loss or known loss at the time the policy is purchased." *Two Pesos, Inc., 901* S.W.2d at 501. Stated differently, "an insured cannot insure against something that has already begun and which is known to have begun." *Id. citing Summers v. Harris*, 573 F.2d 869, 872 (5th Cir. 1978).

27.    Royal alleges that "the indisputable voluminous evidence shows that the loss and damage at the schools was actually known to BISD before it entered into its first policy with Royal . . . which incepted on September 1, 1996."   Royal cites to examples of minor mold/mildew growth and water leaks that date prior to September 1, 1996.  However, on each such occasion, repairs were made.  Additionally, comprehensive repairs were made during the policy periods in 1999.  *See,* sworn statement of Oscar Tapia at p.80-83 attached as Exhibit 23 to Royal's motion.  The damages made the basis of this coverage suit did not manifest until August

16

2001.  *See,* sworn statement of R. Vasquez attached as Exhibit 24 to Royal's motion.  Thus, BISD did not, and could not, have known of the damages made the basis of this suit before that time.  The first policy period incepted on September 1, 1996, well before the damages at issue in this claim manifested and BISD became aware of the damages.  As such, the known loss doctrine does not apply or, at the very least, a fact issue exists as to when BISD knew or should have known of the damage.  Thus, the know loss doctrine does not supply grounds for a summary judgment.

28.     It is common sense that one cannot have knowledge of damage before it manifests.  Thus, the knowledge of the loss occurs when the damages manifest.  Moreover, the manifestation of one specific instance of damage is not manifestation of all damage.  For example, the manifestation of a pipe leak in one classroom is not manifestation of a different pipe leak in the cafeteria.  In other words, because BISD may know of one pipe leak or some mildew in one classroom that was repaired does not make a second non-manifested pipe leak in a different classroom automatically known to BISD.  Texas courts have recognized the concept of multiple manifestations in cases involving continuous or repeated exposure.  *See, Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Insurance Co.*, 852 S.W.2d 252 (Tex. App.—Dallas 1993, writ denied).  In that case, which involved the defense of construction defect claims under a liability policy, the court held that "in cases involving continuous or repeated exposure to a condition, there can be more than one manifestation of damage and, hence an occurrence under more than one policy . . . [w]e reject the argument that there can be only one occurrence when the facts allege continuous or repeated exposure causing continued or multiple property damages over an extended period of time"  *Cullen/Frost*, 852 S.W.2d at 257.  Thus, assuming for the sake of argument that some damage manifested before the policy period, there were manifestations of

17

other damages during the policy periods. Because those damages had not yet manifested, BISD did not know of the damages before the inception of the policy periods and the known loss doctrine simply does not apply.

29.     Royal has cited no evidence that BISD knew of the damages that manifested in August 2001 prior to the inception date of the policies. At a minimum, there is a fact issue as to whether BISD should have known of the ongoing or progressive loss for which it now claims before the inception of the policy period. Thus, the known loss doctrine does not provide grounds for summary judgment.

## IV.     BISD Complied With All Conditions Precedent In The Policies

### A.     BISD Provided Prompt Notice, Or In The Alternative A Fact Question Remains.

30.     The Royal Policies each contain a notice provision that provides that the insured must give "prompt notice of the loss or damage." Whether notice is prompt is a question of fact based on reasonableness. *Flores v. Allstate*, 278 F.Supp.2d 810 (S.D.Tex. 2003). BISD provided notice to Royal on November 29, 2001 and again on April 2, 2002. *See,* the November 29, 2001 notice letter and April 2, 2001 notice letters attached as Exhibits 35 and 44 to Royal's motion. The mold growth resulting from the water leakage problems which form the basis of this claim were first manifested and discovered in August 2001. *See*, sworn statement of R. Vasquez at p.24-28 cited as summary judgment evidence by Royal and attached as Exhibit 24 to its motion. The mold was discovered in the kitchen, computer room, and the library/media center at Besterio while the school was being prepared for the upcoming school year. *Id.* Therefore, only three months passed between the discovery of the mold and first notice to Royal. Royal's argument concerning prompt notice was just recently addressed by the Southern District of Texas in *Flores v. Allstate Texas Lloyd's Co.*, 278 F.Supp.2d 810 (S.D.Tex. 2003). In that case, the

18

homeowner's insurance policy provided that the insured "must give prompt written notice to us of the facts relating to the claim..." *See Flores*, 278 F.Supp.2d at 816. The court held that an insured may give "prompt notice of a claim for mold damage when such damage becomes manifest or apparent. In most cases, whether such notice is deemed reasonably prompt under the Policy will be a question of fact for the jury." Thus, at a minimum, a fact question remains as to whether reasonable prompt notice was given and summary judgment is not proper on that ground.

B.    BISD's Claims Are Not Barred By The Legal Action Against Us Clause Or A Two Year Limitations Period.

31.    Royal cites to the Legal Action Against Us Clause which provides as follows:

**F. Legal Action Against Us**

1.  The Legal Action Against Us Commercial Property Condition is replaced by the following . . .

**LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

a.  There has been full compliance with all of the terms of this Coverage Part; and

b.  The action is brought within 2 years and one day after the date of which the direct physical loss or damage occurred.

As the basis for alleging that the clause was violated, Royal asserts that BISD did not file a proper proof of loss or other requested information and that the two year limitation period bars all coverage. As a threshold matter, as admitted to by Royal, the Legal Action Against Us Clause does not even appear in the first policy issued to BISD.

32.    BISD did, in fact, file a sworn proof of loss on January 23, 2003. *See,* the sworn proof of loss attached as exhibit 48 to Royal's motion. Throughout the course of this claim and litigation, BISD has produced in excess of one hundred thousand pages of documents in an

attempt to comply with Royal's unreasonable requests. Royal admits that it was provided with information by BISD. Among the documents provided and admittedly received by Royal are the AIAQ report, the Ambiotec report, the EFI report, and a project breakdown cost report. *See,* Royal's motion at pp. 8 and 15. In addition to the document production, BISD presented its representatives for sworn statements taken by Royal. Again, Royal admits that between May 30, 2003 and June 2, 2003, Royal took statements from Oscar Tapia, Raul Vasquez and Tony Fuller. *Id.* Thus, because there is uncontroverted evidence that BISD provided a proof of loss, voluminous documents, and three representatives for sworn statements, at a minimum, fact issues remain as to whether BISD complied with the proof of loss and claim information requirements. Royal is not entitled to summary judgment on this ground.

33.    Lastly, Royal asserts that a two year limitation period bars all BISD's claims for damages. The relevant clause provides that an action must be brought within two years and one day after the date the direct physical loss or damage occurred. Again, as a threshold matter, that clause does not even appear in the first of the four policies issued to BISD. Secondly, BISD filed suit in state court on June 30, 2003. Royal filed suit in this court on June 9, 2003. BISD filed a motion to dismiss, and Royal responded. Eventually the parties agreed to abate the state court case. Then on December 12, 2003, BISD filed its counterclaim. The damages at issue in this lawsuit were not discovered until August 2001. *See,* sworn statement of R. Vasquez attached to Royal's motion as Exhibit 24. Thus, the two year limitation period would not have expired.

34.    Importantly, the two year limitation period is simply not valid as to BISD. Royal cites Tex. Civ. Prac. & Rem. Code §16.070 for the proposition that parties may contract for a limitation period of not less than two years. However, BISD is a school district and limitation

20

periods simply do not apply to it.  Tex. Civ. Prac. & Rem. Code §16.061 provides that "a right of action of this state or a political subdivision of the state, including . . . a school district . . . is not barred by any of the following sections: 16.001-16.004, 16.006, 16.007, 16.021-16.028, 16.030-16.032, 16.035-16.037, 16.051, 16.062, 16.063, 16.065-16.067, **16.070**, 16.071, 31.006 or 71.021" (emphasis added).  Thus, the Texas Legislature has exempted school districts such as BISD from the application of any statutory limitations period or contractual limitations period under §16.070.  Therefore, Royal's argument that BISD's claims are time barred has no merit.

**V.**      **Royal Does Not Even Address BISD'S Claims Under The Texas Insurance Code**

35.      In its First Amended Counter-Claim, BISD brings causes of action under the Texas Insurance Code as a result of Royal's wrongful acts and omissions in the handling of this claim.  Royal hired GAB Robbins to act as its adjuster for BISD's claim.  GAB Robbins recommended that EFI be hired to investigate the claims.  BISD was not aware that a corporate relationship existed between EFI and GAB Robbins.  GAB Robbins, acting on behalf of Royal, represented to BISD that if EFI were hired, Royal would pay the repair costs for the losses as found by EFI.  BISD, in reliance on that representation, did retain EFI to investigate and prepare a report. The January 20, 2003 EFI report is attached to Royal's motion as Exhibit 26.  Based on the representations concerning payment of the claim as calculated by EFI, BISD hired EFI as the construction supervisor and put the job out for bid.  The lowest bidder was more than double the low ball cost estimate generated by EFI.  Comprehensive repairs were made to the school and paid for by BISD based on the representations of EFI.  However, despite the representations of its representative, Royal has not paid any of the claim amounts to BISD and BISD has suffered damages as a result.

36.    Unlike liability for breach of the common law duty of good faith and fair dealing, liability for violations of the Texas Insurance Code art. 21.21 is not dependent on whether or not there actually is coverage for the claims.  Tex. Ins. Code art. 21.21 §16(a) provides that "any person who has sustained actual damages caused by another's engaging in an act or practice" defined by the statute to be unfair or deceptive may maintain an action against the person who engaged in the unlawful acts.  The courts have consistently held that neither reliance nor foreseeability is a necessary element for recovery for unfair and deceptive acts or practices under the Insurance Code.  *See, Crawford & Co. v. Garcia,* 817 S.W.2d 98 (Tex. App.—El Paso, 1991, writ denied).  The plaintiff must only establish that defendants conduct was a producing cause of damage. *Id.*    Thus, although BISD firmly believes that coverage exists for its claims under the Royal Policies as shown above, even in the absence of coverage, Royal may still be held liable for its conduct which constitutes a violation of the Texas Insurance Code and which was the producing cause of damage to BISD.

37.    Resolution of the coverage issues is not dispositive of the Texas Insurance Code claims.  Royal has not moved for summary judgment on any of the Texas Insurance Code claims brought by BISD.  Thus, Royal is not entitled to summary judgment on these claims.

## CONCLUSION

38.    In conclusion, for all the reasons set forth above, BISD requests that the court deny Plaintiffs motion for summary judgment in its entirety.

Respectfully submitted,

BY: _____

Baltazar Salazar
1612 Winbern
Houston, Texas  77004
Tel: 713-655-1300
Fax: 713-807-1930

22

The Honorable Ramon Garcia
Law Offices of Ramon Garcia, P.C.
222 W. University Drive
Edinburg, Texas 78539
Tel: 956-383-7441
Fax: 956-381-0825
**COUNSEL FOR BISD**

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was served by certified mail, return receipt requested on the attorney in charge for Royal Surplus Lines Insurance Company on this the 3rd day of _____June_____, 2004, addressed as follows:

Jay Brown
Beirne, Maynard & Parsons, L.L.P.
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056-3000

Baltazar Salazar

23



Rimkus Consulting Group, Inc.
1431 Greenway Drive, Suite 900
Irving, Texas 75038
(972) 518-0900 Telephone
(972) 518-0011 Facsimile
(877) 271-1168 Toll Free

# Report of Findings

## BUILDING WATER INTRUSION EVALUATION
## RCG, Inc. File No.: 220024

### Prepared For:

**ACE AMERICA LLOYDS INSURANCE COMPANY**
**Claim No.: 456P729886-3**
**Insured: Brownsville Independent School District**
**C/O GAB ROBINS NORTH AMERICA, INC.**
**8700 Commerce Park, Suite 235**
**Houston, Texas 77036**
**GAB File No.: 35054-00246**

### Attention:

**MR. ROGER SAWYER, EXECUTIVE GENERAL ADJUSTER**

Jerry E. Mercer, P.E.
*Vice President, District Manager*

Jeffrey H. Peters, P.E.
*Division Manager*

ACE 000003

EXHIBIT
A

December 20, 2002

RSL  001179

## TABLE OF CONTENTS

I. Introduction ................................................................................. 1

II. Conclusions ................................................................................ 2

III. Discussion ................................................................................. 4

IV. Recommendations For Additional Work ................................... 7

V. Basis of Report .......................................................................... 8

VI. Attachments............................................................................... 9

    A. Schematic Floor Plans

    B. Observation Logs

    C. BISD Work Order Reports

    D. Résumés (Jerry E. Mercer, Jeffrey H. Peters)

    E. Photographs

ACE 000004

December 20, 2002

RSL 001180

# Section I

# INTRODUCTION

Representatives of the Brownsville Independent School District have reported the presence of water damage and mold within the interior of Bruce Aiken Elementary School and Raul A. Besteiro, Jr. Middle School, located respectively at 6280 and 6290 Southmost Road in Brownsville, Texas.

Rimkus Consulting Group, Inc., was retained on June 7, 2002, by Mr. Roger Sawyer of GAB Robins North America, Inc., to determine when and what caused the reported water damage to develop. Our work to complete this assignment was conducted by Jerry E. Mercer, P.E., and Jeffrey H. Peters, P.E.

This report was prepared for the exclusive use of ACE America Lloyds Insurance Company, c/o GAB Robins North America, Inc., and is not intended for any other purpose. Our report is based on the information available to us at this time. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions, and to revise our opinions and conclusions if necessary and warranted by the discovery of additional information.

ACE 000005

RSL 001181

## Section II

## CONCLUSIONS

1. Stains associated with the presence of moisture in the schools fall into two broad categories:

   a. General development of stains (believed to be mold) on building finish materials and on the contents.

   b. Localized development of stains (often accompanied with what is believed to be mold) at "site" specific areas of water intrusion.

2. The development of the general stains is the result of improper functioning of the Heating Ventilation and Air-Conditioning (HVAC) systems. The improper functioning of the HVAC systems is a result of one or more of the following:

   a. HVAC systems design error(s).

   b. Improper operation of the HVAC systems.

   c. Improper maintenance of the HVAC systems.

3. The development of localized stains is the result of one or more of the following site specific causes of water intrusion:

   a. Roof leak(s), either at a membrane edge or penetration, roof drain hub, on the roof drain pipe (18 locations).

   b. Plumbing leaks, both domestic water supply system and drainage system leaks (eight locations).

   c. Dripping and/or leakage of condensate, and/or water from components of the HVAC systems (27 locations)

RSL 001182      ACE 000006

d.  Human saliva (two locations).

We are unable to determine an obvious source of moisture at 11 locations.

4.  We are, based on physical inspection of the stains, unable to determine the exact date the general stain development or the site specific staining began.  Dripping and/or leakage of condensate, and/or water from HVAC components appear to be a historic, reoccurring, and ongoing source of water intrusion.  We are unable to determine how quickly roof leaks and plumbing leaks were discovered and eliminated, or if some persist.  In general, the development of the site specific water damage and staining is not recent, i.e. we believe in the area of at least one year old.  Again, however, we are unable to date exactly when the water intrusion occurred based solely on our physical inspection of the stains.  Representatives provided some information with respect to dates water intrusion occurred at some locations.

ACE 000007

RSL 001183

## Section III

## DISCUSSION



Raul A. Besteiro, Jr. Middle School (Besteiro) was completed in approximately 1994, as was the Library located at the south end of Besteiro. The library is common to Bruce Aiken Elementary School (Aiken), which was completed in approximately 1996. The sixth grade addition at the north end of Besteiro was completed in 1996 (Attachment A, and Photograph 1). The front of the school faces east.

Mr. Raul N. Vasquez, Maintenance Administrator of the Brownsville Independent School District (BISD), reported that while he was Principal at Besteiro that some roof leaks had occurred. Specifically, he reported leaks at the sixth grade addition in the area where it interfaced with the existing stairway at the north end of the original Besteiro building. He also reported roof leaks at the entrance to the cafeteria and band room of Besteiro. Furthermore, Mr. Vasquez reported that groundwater intrusion occurred at the below-grade amphitheater located in the library.

Mr. Vasquez reported that he does not have specific knowledge, but is aware of reports of mold in Aiken in about 1997. He believes remediation of this mold occurred in the same year. Mr. Vasquez reported the first mold he was personally aware of was on the books in the library. Mold was also present in Room 122 of Besteiro at this same time. He reported he first became aware of this mold in July and August 2001. Mr. Vasquez reported the air-conditioning for the library was shut down in November 2001. Shortly thereafter, remediation of mold in the library and Room 122 began and this work is ongoing.

Both schools (and the library) were closed and vacated on December 26, 2001. Occupancy of the schools has not occurred since that time. Since the schools were vacated, Mr. Vasquez reports that the HVAC systems have been operated and maintained, as well as restroom toilets routinely flushed and water run at the sinks. Per

ACE 000008

RSL 001184

Mr. Vasquez, routine maintenance of the HVAC units included replacement of air filters. He reported the third set of filters are, since December 26, 2001, presently installed. Mr. Vasquez reported that high relative humidity readings have been recorded by Mr. J.P. Villarreal, Energy Manager of BISD, in the library and cafeteria of Aiken, and in general throughout Aiken. Mr. Villarreal stated he believes the highest mold levels are in Rooms 113 and 114 of Besteiro, which are in the area of the aforementioned roof leaks at the south end of the sixth grade addition. Mr. Vasquez reported he believes Aiken has the greater mold problem.

The building(s) are combination one and two-story structures. The exterior wall finishes are primarily brick veneer. The structural system for the buildings is load bearing concrete block, supporting steel bar joists for the upper floors and roofs. Two types of roofing systems are used: standard built-up roof system surfaced with gravel; and single-ply granule surfaced modified bitumen roll roofing (Photographs 2 through 11).

The interior air of Besteiro is conditioned by conventional packaged rooftop air-handling units (Photographs 12 through 16). The library, common kitchen, and Aiken Cafeteria are also conditioned by packaged rooftop air-handling units. The remainder of the Aiken interior air is conditioned by a chill water system. This system is controlled off-site.

During our initial inspection of the interior of the schools on June 13, 2002, it was noted that the indoor air quality was inferior. While the temperature of the air in some rooms of Besteiro was reasonably cool, i.e. in the neighborhood of 73 to 75 degrees, at the same time high relative humidity within most, if not all, of the rooms was obvious. The quality of the air in Aiken was better than Besteiro; the temperature seemed a little cooler, but the relative humidity seemed higher than expected for properly conditioned air. We concluded from this initial observation that the HVAC systems were probably not functioning properly.

Further inspection of the interior of the buildings and their HVAC systems on July 11, 2002, confirmed the overall general poor indoor air quality in the buildings is directly related to improper functioning of the HVAC systems. Improper functioning of the HVAC

RSL 001185        ACE 000009

systems is the result of either improper design, improper operation or improper maintenance of the systems, or a combination of any of these three.

Subsequent to the July 11, 2002, site inspection, Mr. David A. Weeks, P.E., of the Center For Toxicology and Environmental Health, L.L.C., provided information related to the presence of localized water damage and staining due to site specific water intrusion. Attachment B contains Observation Logs noting the type(s) of localized water damage observed by both the Center for Toxicology and Environmental Health, L.L.C., and Rimkus Consulting Group, Inc. The logs also reference photographs of the damage, which are attached to this report. Causes, when determinable, for the localized water damage and stains (i.e. water intrusion) are included in the logs and photograph captions. The causes for the site specific water intrusion fall into five general categories. The categories are defined and referenced in the logs.

When the water intrusion began has not been determined from inspection of the water damage and/or stains. Generally, most damage appears to be at least one year old. Review of a limited number of BISD Work Order Reports (Attachments C) indicates interviews of BISD personnel may provide dates when some of the damage initiated. Some information from these reports is included in the Observation Logs.

ACE 000010

## Section IV

## RECOMMENDATIONS FOR ADDITIONAL WORK

1.  Interview the following BISD employees to assist in the determination of the date(s) of occurrence of some or all of the localized water damage and mold:

    a.  Mr. J.P. Villarreal, Energy Manager

    b.  Mr. Kenny Robertson, Maintenance Foreman

    c.  Mr. Raul N. Vasquez, Maintenance Administrator

    d.  Mr. Oscar Tapia, Facility Administrator

2.  Review the HVAC systems design calculations, drawings, and specifications.

3.  Interview the BISD employees (listed above) to evaluate the operation and maintenance of the HVAC systems and obtain historic records of the operation and maintenance of the systems.

ACE 000011

RSL 001187

## Section V
## BASIS OF REPORT

1. Discussions with Mr. Raul N. Vasquez, Mr. J. P. Villarreal, and Mr. Kenny Robertson of the BISD regarding the history of the construction of the schools and the development of water damage and mold in the schools.

2. Inspection of the schools on June 13, 2002, July 11 and 17, 2002, and November 18 and 19, 2002.

3. Review of portions of the design/construction drawings for the schools.

4. Review of Work Order Reports received from BISD.

ACE 000012

RSL 001188

# Section VI

## ATTACHMENTS

ACE 000013

# Section VI

## ATTACHMENT A

**Schematic Floor Plans**

ACE 000014

December 20, 2002

RSL  001190