

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 0 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ROYAL SURPLUS LINES | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO. B-03-109** |
| | § | **JURY DEMANDED** |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF ROYAL SURPLUS LINES INSURANCE COMPANY'S
## <u>RULE 56(c) "NO-EVIDENCE" MOTION FOR SUMMARY JUDGMENT</u>

Beirne, Maynard & Parsons, L.L.P.
**Jay W. Brown**
State Bar No. 03138830
SDT No. 1314
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEY-IN-CHARGE FOR**
**PLAINTIFF ROYAL SURPLUS**
**LINES INSURANCE COMPANY**

OF COUNSEL:

BEIRNE, MAYNARD & PARSONS, L.L.P.
**Stephen R. Wedemeyer**
State Bar No. 00794832
S.D.T. No. 19797
**John V. Trevino, Jr.**
State Bar No. 24003082
S.D.T. No. 23860
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . iii

I.      SUMMARY OF MOTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    Royal Policies and the Long History of Problems at the Subject Schools . . . . . . . 4

        B.    BISD'S Insurance "Claim" with Royal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.    Status of This Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        D.    Reports on Causation from BISD's Experts, Engineers and Others Establish
              Damage from Uncovered Causes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.      ARGUMENT AND AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.    Summary Judgment Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.    Texas' Allocation Doctrine and the Burden of Proof on the Insured, BISD . . . . 12

        C.    No Evidence of Allocation/Segregation Offered by BISD  . . . . . . . . . . . . . . . . 13

        D.    Any "Sole Causation" Theory Offered by BISD is Untenable  . . . . . . . . . . . . . 17

        E.    BISD's Lack of Evidence of Allocation is Dispositive to Its Claims
              for Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.     CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF CITATIONS

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Celotex Corporation v. Catrett*, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 12

*Employers Cas. Co. v. Block*, 744 S.W.2d 940 (Tex. 1988),
    overruled on other grounds by *State Farm Fire & Cas. Co. v. Gandy*,
    925 S.W.2d 696 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

*General Star Indem. Co. v. Sherry Brooke Rev. Trust*,
    243 F.Supp.2d 605 (W.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 13, 17

*Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192 (5th Cir. 1998) . . . . . . . . . . . . . . . 3, 12

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991),
    cert. denied, 112 S.Ct. 936 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348 (1986) . . . . . . . . . . . . . . . 11

*Sentry Ins. v. R.J. Weber*, 2 F.3d 554 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

*Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506
    (Tex. App.—San Antonio 1994, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160 (Tex. 1971) . . . . . . . . . . . . . . . . . . . . . . . 3, 12

*U.E. Tex. One -- Barrington, Ltd. v. General Star Indem. Co.*, 243 F.Supp.2d 652
    (W.D. Tex. 2001), aff'd 332 F.3d 274 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 3, 12, 13

*Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300
    (Tex. App. – San Antonio 1999, pet denied) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 13, 18

**STATUTES**

Tex. Ins. Code Ann., Art 21.58(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is an insurance coverage dispute. Plaintiff Royal Surplus Lines Insurance Company ("Royal") has filed this suit seeking a determination as to whether policies of insurance it issued to Defendant Brownsville Independent School District ("BISD") provide coverage for BISD's claim for loss at two schools. The case has been pending for approximately one (1) year. Royal and BISD designated their experts in January 2004 and March 2004, respectively. The dispositive motion deadline is June 11, 2004, and the matter is set for trial on September 2, 2004.

Although Royal first served discovery on BISD many months ago, BISD has yet to provide complete answers and documentation. Nevertheless, because numerous engineers, consultants, health department employees, and others (many of whom were hired by BISD before this litigation), have investigated and inspected the schools, voluminous uncontroverted evidence has been generated, all of which shows that the damage at the schools was caused by excluded perils, such as defective design, construction, and maintenance at the schools. In fact, everyone who has investigated and inspected the schools has agreed that defective design, construction, and maintenance at the schools are causes of the damage at the schools.

Therefore, because (1) there is no fact issue that excluded perils caused the damage at the schools, (2) BISD, as the insured, has the burden to prove that its claims come within the coverage of the Royal policies, and (3) BISD has offered no evidence by which a factfinder can segregate the damage caused by the many excluded perils from any damage allegedly caused by a covered peril, Royal files this motion for summary judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROYAL SURPLUS LINES | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO. B-03-109** |
| | § | **JURY DEMANDED** |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF ROYAL SURPLUS LINES INSURANCE COMPANY'S
RULE 56(c) "NO-EVIDENCE"MOTION FOR SUMMARY JUDGMENT**

Plaintiff Royal Surplus Lines Insurance Company ("Royal") files its "No-Evidence" Motion for

Summary Judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully showing:

### I. SUMMARY OF MOTION

Royal is entitled to summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure

because Brownsville Independent School District ("BISD") cannot present evidence of all the essential

elements of its claims on which it bears the burden of proof at trial. *See Celotex Corporation v. Catrett*,

106 S.Ct. 2548, 2552 (1986) (approving "no evidence" summary judgments under Rule 56(c)). This

motion establishes Royal's right to summary judgment on each of BISD's contractual/coverage claims.

It is indisputable that the damage at the two subject schools was caused by perils excluded by the

Royal commercial property policies issued to BISD. Indeed, various engineers and other experts hired by

BISD have advised BISD that the mold and other damage at the schools are the result of causes excluded

from coverage: inadequate and defective design, construction and maintenance of HVAC, roofing and

other systems at the schools. Based on such allegations, BISD has successfully sued various architects and contractors involved in the design and construction of the schools.

BISD alleges in this lawsuit, however, that at least some of the damage at the schools is the result of a covered peril.[1] As a result, BISD – the insured – has the burden of segregating the damage allegedly attributable solely to the (unidentified) covered peril from the other damage. BISD, however, has produced absolutely no evidence of allocation – *i.e.*, evidence as to which damage was allegedly caused by a covered peril, and which damage was caused by the many excluded perils, such as inadequate and defective design, construction and maintenance. Because allocation is central to an insured's claim for coverage under Texas law, BISD's failure to carry its burden is fatal to its entire claim.

## II. STATEMENT OF ISSUES

This Motion sets forth one of the many bases for why BISD is not entitled to coverage for any of the damage made the subject of BISD's claim,[2] and why summary judgment can be granted in favor of Royal. Specifically, the issues to be ruled upon by the Court are as follows:

---

[1]  BISD's designated "coverage" expert, James Bettis, states in his March 1 report -- without reference to any causation evidence, policy provisions, or other explanation – that it is his opinion that "there is coverage for *some or all* of the damage to the schools." *See* Bettis' Report, attached to BISD's Expert Designation [Dkt. No. 29], at p. 2 (emphasis added). Further, he goes on to similarly state without explanation that "some or all of the damages come within these exceptions [to exclusions cited by Royal's coverage expert]." *Id.* Bettis, however, offers no opinion as to any allocation of damages among covered versus excluded perils, nor does he even identify a single covered peril to which BISD attributes any damage.

Similarly, in BISD's June 3, 2004 Response to Royal's MSJ I [Dkt. No. 45], BISD never alleges, much less offers any affidavits or other summary judgment evidence, that *all* of the damage at the schools is covered by the Royal policies. Indeed, BISD constantly suggests that merely "some" of the damage may be covered. *See* BISD's Response, Dkt. No. 45, at ¶ 2 ("at least some covered claims exist...") and ¶ 13 ("some of the claims are not precluded" by the fungus exclusion).

[2]  Additional bases are addressed at length in Royal's first Motion for Summary Judgment [Dkt. No. 42].

1.  **The insured, BISD, has the burden to prove that its claim comes within the coverage of the Royal policies.** *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996); *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998); *Sentry Ins. v. R.J. Weber*, 2 F.3d 554, 556 (5th Cir. 1993).

2.  **Under the doctrine of concurrent causes, when covered and excluded perils combine to create a loss, the insured is entitled to recover *only* that portion of the damage caused by the covered peril.** *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 162 (Tex. 1971); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App. – San Antonio 1999, pet denied); *U.E. Tex. One -- Barrington, Ltd. v. General Star Indem. Co.*, 243 F.Supp.2d 652, 668 (W.D. Tex. 2001), aff'd 332 F.3d 274 (5th Cir. 2003); *General Star Indem. Co. v. Sherry Brooke Rev. Trust*, 243 F.Supp.2d 605, 635 (W.D. Tex. 2001).

3.  **The burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof.** *Wallis*, 2 S.W.3d at 303.

4.  **Under Texas law, BISD's failure to produce any evidence upon which the factfinder can segregate the damage attributable to solely a covered cause of loss is fatal to BISD's claim.** *Wallis*, 2 S.W.3d at 303-304.

## III. SUMMARY OF ARGUMENT

The overwhelming and incontrovertible evidence from BISD's experts, as well as others who have studied the long history of problems at Aiken and Besteiro, is that the damage at the two schools is the result of the defective design, construction and maintenance of the schools. (Indeed, based on these allegations, BISD has successfully sued architects and contractors involved in the design and construction of the schools.) These causes of loss are expressly excluded from coverage by the Royal policies, as explained in detail in Royal's May 17, 2004 Motion for Summary Judgment [Dkt. No. 42].

Despite formidable evidence of the many excluded causes of loss at the schools, BISD has vaguely claimed in this lawsuit that at least *some* of damage at the schools resulted from causes of loss covered by

the Royal policies. (BISD has not, however, identified any particular "covered" cause of loss that it believes resulted in damage at the schools.) Importantly, Texas recognizes the doctrine of concurrent causation. Under this doctrine, when covered and excluded perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril.

As part of its burden to prove that its claims come within coverage, BISD has the burden to segregate the damage at the schools caused solely by covered causes of loss. Though provided many and ample opportunities, BISD has wholly failed to do so with its discovery responses and expert designations.[3] BISD's failure to produce *any* allocation evidence since first making a claim in November 2001 is fatal to its claims under Texas law. Accordingly, summary judgment for Royal is required under Rule 56(c) on all of BISD's claims for coverage and breach of the insurance contracts.

## IV. STATEMENT OF FACTS

### A. *Royal Policies and the Long History of Problems at the Subject Schools*

Defendant BISD was the named insured under a series of commercial property policies issued by Royal that insured the subject properties, Aiken Elementary School ("Aiken") and Besteiro Middle School ("Besterio"), continuously from September 1, 1996 through April 1, 2002.[4]

Besteiro and Aiken are conjoined schools that connect via a common cafeteria and library. The construction of Besteiro was completed before the 1994-1995 school year began, and the construction

---

[3] Royal's MSJ I detailed, *inter alia*, how the causes of the damage at the schools are excluded by the Royal policies. In its June 3, 2004, Response to Royal's MSJ I [Dkt. No. 45], BISD, as with its discovery responses and expert disclosures, does not offer any affidavit or other summary judgment evidence that even *attempts* to segregate the damage at the schools caused solely by (alleged) covered causes of loss.

[4] The four Royal polices are as follows: (1) No. KHT 307564 (effective dates 9/1/96 - 9/1/97, but cancelled effective 4/1/97; (2) No. KHT 308599 (effective 4/1/97 - 4/1/98); (3) No. KHT 310355 (effective 4/1/98 - 4/1/01); and (4) No. KHT 318271 (effective 4/1/01 - 4/1/02).

of Aiken was completed before the 1996-1997 school year began. As set forth in considerable detail in Royal's Motion for Summary Judgment filed on May 17, 2004 [Dkt. No. 42],[5] both Aiken and Besteiro have suffered from problems associated with high humidity, water intrusion and indoor air quality, including mold/mildew, since around the time each school opened. Around September 1995, mold/mildew was discovered on books in the Besteiro library. (*See* Exh. 6 to Royal's MSJ I). Mold problems in Aiken classrooms existed by no later than the Summer of 1997, according to an Aiken teacher. (*See* Exhs. 17 and 18 to MSJ I).

In 1998, an engineering firm hired by BISD attributed the chronic humidity and mold problems at Aiken to a defective HVAC system. (*See* Exhs. 19 and 20 to MSJ I). The Texas Department of Health ("TDH") visited Aiken in October and November 1998 due to persistent complaints of mold/mildew and excessive humidity problems. (*See* Exhs. 21 and 22 to MSJ I). The TDH found visible mold growth on ceiling tiles, desks, books, and other areas, as well as humidity levels as high as 68.5%. (*See* Exh. 22 to MSJ I). The TDH concluded that the humidity and mold problems at Aiken were most likely the result of a defectively designed HVAC system. (*Id.*).

## B.    *BISD'S Insurance "Claim" with Royal*

The problems persisted and, in January 2002, BISD closed the two schools and brought suit in Cameron County against various architects, engineers and contractors involved in the design, construction and maintenance of the two schools, including their HVAC systems.[6] (*See* Exh. 33 to MSJ I). BISD

---

[5] Because Royal will frequently refer to its prior (and still pending) Motion for Summary Judgment and numerous exhibits thereto, for the Court's convenience, in this Motion Royal will refer to its Motion for Summary Judgment filed on May 17, 2004 as "Royal's MSJ I" or "MSJ I."

[6] The 2002 Cameron County case was numbered and styled Cause No. 2002-01-000071-B, *BISD v. Stotler Construction Co., Carroll, Dusang & Rand, et al. See* Exh. 33 to MSJ I.

alleged in that lawsuit that design and construction defects had caused the property damage that existed at the two schools. (*Id.* at p.3). BISD made similar allegations in a related lawsuit in 2003 involving the same contractors.[7]

Shortly before the schools were closed, on or around November 29, 2001, BISD for the first time made a "claim" under Royal Policy No. KHT 318271 (policy term 4/1/01 - 4/1/02) for alleged damage and loss to Besteiro and Aiken. The Notice of Loss letter failed to provide Royal a date, suspected cause or a description of the claimed loss, but instead stated only that BISD had "suffered a loss covered by your policy of insurance...The insured has incurred damages at Besteiro Middle School and Aiken Elementary...as the result of occurrences covered under the policies." (*See* Exh. 35 to MSJ I). BISD provided Royal no further information about its claim at such time, such as the type or extent of damages, the cause of the claimed loss, or the timing of such loss.

On or around April 2, 2002, BISD for the first time provided Royal Notice of Loss for damage and loss to Aiken and Besteiro under three *additional* Royal policies that were effective from September 1, 1996 to April 1, 2001. Like the earlier notice, the April 2002 notice was deficient in that it failed to provide a date, cause or description of BISD's claimed loss. (*See* Exh. 44 to MSJ I).

## C.  *Status of This Lawsuit*

This declaratory judgment action was filed on June 9, 2003. Pursuant to the current scheduling order [Dkt. No. 34], the discovery cut-off is July 1 and the matter is set for trial on September 2, 2004. The parties have exchanged written discovery and both parties' expert deadlines have long since passed.

---

[7] The 2003 Cameron County case was numbered and styled Cause No. 2003-08-4078-E, *American Standard, et al. v. BISD.  See* BISD's Third Party Petition, Exh. 49 to Royal's MSJ I.

502238.2                                        6

BISD served its Designation of Expert Witnesses on March 1, 2004. (*See* BISD's Designation of Experts and attached report of James Bettis [Dkt. No. 29]).

Notably, BISD's expert designation includes Assured Indoor Air Quality, L.P. ("AIAQ"); Ambiotec Environmental Consultants, Inc. ("Ambiotec"); Engineering and Fire Investigations ("EFI"); Rimkus Consulting Group, Inc. ("Rimkus"); Center for Toxicology and Environmental Health ("CTEH"); and the Texas Department of Health ("TDH"). (*Id.*) In addition, BISD designated James Bettis as it "coverage" expert. (*Id.*) In his brief report, Mr. Bettis offers no opinions as to the cause of the damages at the schools and does not attempt to segregate the various damage at the schools by the many causes of loss, nor does he disclose any qualifications that might enable him to do so.

**D.**    ***Reports on Causation from BISD's Experts, Engineers and Others Establish Damage from Uncovered Causes***

Several engineering and consulting firms hired by BISD and others, including those listed above from BISD's Designation of Experts, have noted design, construction and maintenance deficiencies with the schools' HVAC, roofing and other systems between 1995 and 2003, and have attributed damage to building materials and indoor air quality problems, including mold/mildew, to such deficiencies.

**Assured Indoor Air Quality, L.P.** In August 2001, AIAQ, an expert hired by BISD, advised BISD that the HVAC system's design was defective and "the air conditioning system is the prime suspect of being the cause of the aggressive mold growth." (*See* Exh. 24A to MSJ I). Later, in its January 2, 2002 Report to BISD, AIAQ reported that "the building air conditioning system does not sufficiently condition and/or treat the outside air enough to reduce the increased moisture load in the building. . . ." (Exh. 27 to MSJ I, at p. 2). AIAQ recommended that BISD repair roof leaks by replacing the roof and replace the deficient HVAC system with an appropriate HVAC system in order to maintain an appropriate indoor dew

point. (*Id.*, at p. 5). AIAQ reiterated its concerns and recommendations in its January 25, 2002 Report to BISD. (*See* Exh. 28 to MSJ I).

**Ambiotec Environmental Consultants, Inc.**  In May 2002, Ambiotec advised its client, BISD, that *Stachybotrys* mold found in Aiken air samples "presented a serious concern" and was "likely the result of airborne spores from the visible mold on the chiller pipe insulation jacket located above the corridor ceiling." (Exh. 25 to MSJ I, at p. 1).  Ambiotec also advised that "one principal cause of the moisture intrusion in Aiken is from the chilled water HVAC system, and in Besteiro from plumbing and roof leaks." (*Id.* at pp. 2, 11).

**Engineering and Fire Investigations**.  In EFI's January 2003 report to BISD (Exh. 26 to MSJ I), EFI reported several potential sources of water infiltration and resulting mold manifestations, including problems with the roofs at both Aiken and Besteiro caused by inadequate maintenance, deterioration of roofing/sealant materials, improper/missing flashing, and improper design/construction of the roofs. (*Id.* at pp. 1-2, 2-17, 2-18, and 2-19).

EFI also reported out-of-calibration thermostats, poorly maintained HVAC system components, outside air ventilation rates and conditioned air quantities inconsistent with design quantities, and improperly sized roof-top units ("RTUs") at Besteiro. (*Id.* at pp. 1-2, 2-24, and 2-25).  In addition to design defects with the Besteiro HVAC system/equipment, EFI found that "the discharge air temperature, dry bulb and wet bulb, of several RTUs [at Besteiro were] providing less than the cooling and dehumidification requirements of the original design. . . .Elevated levels of relative humidity in the classrooms and the lack of adequate routine cleaning of the interiors of the RTUs have also led to performance problems with the RTUs and the development of molds on the cooling units of some RTUs.  The RTUs are not introducing

designed amounts of outside air. Field measurements indicate that outside air ventilation rates are approximately 10 percent of the design outside air intake amount." (*Id.* at pp. 2-25 and 2-28). EFI recommended removing and redesigning certain aspects of the HVAC system, as well as certain HVAC equipment, and properly cleaning and maintaining other equipment. (*Id.* at p. 1-2). Alternatively, EFI recommended to install all *new* RTUs at Besteiro. (*Id.* at p. 1-3).

EFI found relative humidity levels well above the 50% design condition and heavy accumulations of dust, debris and possible mold on Aiken's HVAC equipment resulting from improper maintenance. (*Id.* at p. 2-25). EFI also observed numerous instances of poor/inadequate maintenance and inadequate/deficient design and installation of the HVAC system and equipment at Aiken. (*Id.* at pp. 2-34 to 2-41).[8]

**Rimkus Consulting Group.** In its July 26, 1999 Report to BISD's retained engineer, Rimkus included the following observations, conclusions and recommendations:

➢    Elevated mold spore levels in the air at Aiken stem from sources of mold growth on surfaces inside the school and from **inadequate air conditioning**; (*See* Exh. 29 to MSJ I, at p. 3, ¶ 4)

➢    Humidity levels in the school are not being maintained below the 60% maximum threshold, allowing mold to grow on walls, doors, and other surfaces inside Aiken; (*Id.*)

➢    The school's climate control HVAC system needs to be modified to maintain humidity levels below 60%; (*Id.* at ¶ 5) and

---

[8]    Mr. Oscar Tapia, BISD's facilities administrator, provided a sworn statement on June 2, 2003, as permitted by the Royal policies. Mr. Tapia testified that BISD hired EFI to determine the cause of the problems at the schools, that BISD is pleased with EFI, BISD believes EFI's report is thorough and accurate, and ***BISD agrees with EFI's findings***. *See* Exh. 23 to Royal's MSJ I, O. Tapia Sworn Statement, p.107, ll.3-6 and 15-18. Mr. Tapia also testified that he thought **the HVAC system was the "main culprit" of possible moisture sources at the schools**, in part because Brownsville had had very little rain. *Id.* at p. 114, l.22 to p.115, l.7.

➢   The school building should be appropriately remediated for mold and clearance testing should be implemented to verify air and surfaces are acceptable, and to ensure acceptable relative humidity levels. (Exh. 29 to MSJ I, at p. 3-4, ¶ 5)

Then, in Rimkus' December 20, 2002 Report, Rimkus concluded:

➢   The development of general stains on Aiken and Besteiro building finishing materials that is believed to be mold is the result of improper functioning of HVAC systems, caused by **design errors and improper maintenance of the HVAC system.** (Exh. 31 to MSJ I, at p.2).

**Center for Toxicology and Environmental Health.**  In its January 10, 2003 Report, CTEH's observations, conclusions and recommendations included the following:

➢   The relative humidity in portions of Besteiro and Aiken exceeds the recommended relative humidity range of 60%;  (Exh. 32 to MSJ I, at pp. 1, 3)

➢   There is a strong correlation between rooms with higher relative humidity and extensive fungal growth on contents and surfaces;  (*Id.* at p. 1)

➢   Active chill water line leaks in several Aiken classrooms are damaging contents; (Exh. 32 to MSJ I, at ¶ 3.1)

➢   Chill water lines (routed through ceilings of the Aiken main hallway) exhibit mold growth on insulation;  (*Id.* at ¶ 3.1.2)

➢   **The HVAC system at Aiken is not adequately removing the moisture from the conditioned air**; (*Id.* at ¶ 3.1.2) and

➢   The average relative humidity was measured at 84 - 91% in complaint areas at Besteiro. (*Id.* at ¶ 4.3.1)

In sum, all of these experts including BISD's designated experts, are in agreement as to the causes

of the damage at the schools -- perils that are excluded from coverage under the Royal policies. This

voluminous, overwhelming evidence is not controverted by anyone.

## V. ARGUMENT AND AUTHORITY

### A.    *Summary Judgment Standard*

Under Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548 (1986).

If the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. This showing requires more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1355-56 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Id.* The non-movant may defeat the motion only by showing a genuine dispute of material fact. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 936 (1992).

The United States Supreme Court, in *Celotex Corp. v. Catrett*, 106 S.Ct. 2548 (1986) approved the use of the "no evidence" summary judgment motion to dispose of claims unsupported by any evidence. The *Celotex* Court held that:

> [T]he plain language of **Rule 56(c) mandates the entry of summary judgment,** after adequate time for discovery and upon motion, **against the party who fails to make a showing sufficient to establish the existence of a essential element to that party's case, and on which that party will bear the burden of proof at trial**. In such a

situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is entitled to summary judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of her case with the respect to which she has the burden of proof.

*Id.* at 2552 (internal quotations omitted) (emphasis added).

**B.    *Texas' Allocation Doctrine and the Burden of Proof on the Insured, BISD***

It is black letter Texas insurance law that the **burden is on an insured, such a BISD, to first prove facts that establish its claimed damages are covered by the applicable policy**. *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996); *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998)*; Sentry Ins. v. R.J. Weber*, 2 F.3d 554, 556 (5th Cir. 1993). Then, and only then, does the burden shift to an insurer, such as Royal, to prove that the claimed damages fall within a policy exclusion, and are, thus, not covered by the policy. *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. App.—San Antonio 1994, writ denied); *Guaranty Nat'l Ins. Co.*, 143 F.3d at 193; TEX. INS. CODE ANN., Art 21.58(b) (Vernon Supp. 2004).

Texas law recognizes the doctrine of concurrent causes. *Travelers Indem. Co. v. McKillip,* 469 S.W.2d 160, 162 (Tex. 1971); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App. – San Antonio 1999, pet denied); *General Star Indem. Co. v. Sherry Brooke Rev. Trust*, 243 F.Supp.2d 605, 635 (W.D. Tex. 2001) (Magistrate Judge's Report and Recommendation). Under the doctrine of concurrent causes, when covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by covered perils. *McKillip*, 469 S.W.2d at 162; *Wallis*, 2 S.W.3d at 303; *U.E. Tex. One -- Barrington, Ltd. v. General Star Indem. Co.*, 243

F.Supp.2d 652, 668 (W.D. Tex. 2001), *aff'd* 332 F.3d 274 (5th Cir. 2003); *Sherry Brooke*, 243 F.Supp.2d at 635.

The doctrine of concurrent causation is not an affirmative defense or an avoidance defense; rather it is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove their damage is covered by the policy. *Wallis*, 2 S.W.3d at 303. Thus, an **insured may only recover for the amount of damage caused solely by the covered peril.** *Id.* "Because an insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." *Wallis*, 2 S.W.3d at 303. "To this end, **the insured must present some evidence upon which the [fact-finder] can allocate the damage attributable to the covered peril**." *Id.* (emphasis added). Although the insured is not required to establish the amount of its damages with "mathematical precision," there must be some reasonable basis upon which the trier of fact can allocate the damage among covered and excluded perils. *Id.* at 304. Because allocation is central to the insured's claim for coverage, an insured's failure to carry the burden of proof on allocation is fatal to its claim. *Id.* at 303.

## C.    *No Evidence of Allocation/Segregation Offered by BISD*

As explained above, the evidence as to the cause of the damages at the schools is overwhelming and indisputable. BISD's engineers and experts, and others all agree that the damage at the schools was caused by excluded causes of loss, such as defective design, construction and maintenance. In light of this evidence, BISD claims that at least *some* damage at the schools was caused by perils covered by the Royal policies.[9] Such a claim, however, invokes the concurrent cause doctrine and triggers BISD's duty to

---

[9]    Just as Royal disagrees with any contention that *all* the damage at the schools resulted from covered perils, Royal also disagrees with this untenable position of "some damage."

segregate the damage it claims resulted solely from a covered peril. BISD, however, has offered no allocation evidence.

The parties' deadlines for designating experts and producing expert reports came and went long ago. BISD's deadline was March 1, 2004. BISD designated its experts and produced a single report -- a report from its "coverage" expert, James Bettis -- on such date. (*See* BISD's Expert Designation [Dkt. No. 29]). While BISD did not *produce* any report from a causation expert on March 1, 2004, BISD's Designation of Experts did *reference* the reports of several experts that had been previously produced in this litigation by BISD and/or Royal. These reports include EFI's January 20, 2003 report to BISD, Ambiotec's May 2002 report to BISD, Rimkus' July 26, 1999 Report to BISD's retained engineer, AIAQ's 2001-2002 reports to BISD, CTEH's January 10, 2003 report, and various reports from the Texas Department of Health. (*Id.* at p. 2). Many of these experts originally issued the reports to BISD, as BISD had hired them.

BISD's March 1 Designation of Experts does not include any opinion or explanation as to why any damage is covered by any Royal policy and, importantly, does not provide **any evidence of allocation of damage amongst excluded and allegedly covered perils.** The report of BISD's retained "coverage" expert, James Bettis, which is attached to BISD's Designation of Experts [Dkt. No. 29], and the engineers' reports referenced in BISD's Designation of Experts are likewise void of any evidence from which a factfinder could segregate the damage allegedly attributable solely to an alleged covered peril.[10]

---

[10]   While BISD's "coverage" expert does not offer any opinion on allocation, Bettis *does* concede that "some of the mold problems" may have been caused by "roof leaks, window leaks, and the HVAC system." *See* Bettis' Report, Dkt. No. 29.

Like BISD's Expert Designation, Mr. Bettis' report, and the reports referenced in BISD's Designation of Experts, **BISD's discovery responses to Royal in this lawsuit are also devoid of any allocation evidence**. By way of example only, Royal inquired as to the cause of the various damage at the two schools with the following discovery requests, among many others, but BISD could provide nothing of substance when it responded in January 2004:

**Interrogatory No. 3**

For each "occurrence" or "loss" made the basis of BISD's Subject Claim, please identify (i) the date the occurrence or loss "commenced"at Aiken or Besteiro, (ii) the date the occurrence or loss was reported to Royal, (iii) the date the occurrence or loss was discovered, (iv) **the cause(s) of the occurrence or loss**, (v) **the resulting damage** (including the particular area of the school alleged to have been damaged), and....

**Response:**

BISD objects to subparts (i), (iii), (iv) and (v) of this interrogatory because they, in whole or in part, **require the testimony of experts. Expert reports are not due at this time. BISD will produce its expert reports** in accordance with the Federal Rules of Civil Procedure and the Orders of the court in this case....

**Interrogatory No. 19**

Is it BISD's position that: ....

(iv)    "BISD's property has been **contaminated** with pollution, various molds..., which was caused by the **negligent construction**, supervision, design, selection, repair, inspection, and installation of the schools' condensate drain systems, equipment, **HVAC systems, roof systems**, building envelope systems, drain site systems, plumbing systems, equipment....." [¶ 5.2 of BISD's Original Third-Party Petition in Cause No. 2003-08-4078-E]....

If you disagree with any statement[(i) - (x)], please identify all facts and evidence (including documents and witnesses) that you claim controverts or refutes such statement.

**Response:**

BISD objects to subparts [(i)-(x)] of this interrogatory because they, in whole or in part, **require the testimony of experts. Expert reports are not due at this time.** BISD will produce its expert reports in accordance with the Federal Rules of Civil Procedure and the Orders of the court in this case....

**Second Request for Admission No. 7**

Admit that "BISD's property has been **contaminated** with pollution, various molds..., which was **caused by the negligent construction**, supervision, design, selection, repair, inspection, and installation of the schools' condensate drain systems, equipment, **HVAC systems, roof systems,** building envelope systems, drain site systems, plumbing systems, equipment and ...." [¶ 5.2 of BISD's Original Third-Party Petition in Cause No. 2003-08-4078-E]

**Response:**

Defendant can neither admit nor deny this request. . . . Defendant has **not made a final determination of the cause** or causes of the problems. However, based upon currently available information, **Defendant admits** that one or more of the specified systems **may have been the legal cause** of the problems and **may have caused some of the damages** at either of the schools.

*See* Royal's Motion to Compel, and Exhibits C, E and G thereto [Dkt. No. 28] (emphasis added).

BISD's discovery responses provide absolutely no basis for any factfinder to segregate the damage at the schools caused solely by a covered peril, even if one existed (which Royal denies). While BISD's discovery responses refer to BISD's expert reports (which were due March 1), as explained above, the reports eventually produced and referenced by BISD in its Expert Designation are also devoid of any allocation evidence.

BISD refused -- and continues to refuse -- to identify, to admit, or to deny the cause of <u>any</u> damage. Since receiving BISD's scant discovery responses in January 2004, Royal has repeatedly asked BISD to supplement its responses, but BISD has refused to do so. (*See* Royal's Motion to Compel Discovery, Dkt. No. 28.) Indeed, even since the passing of BISD's March 1 expert deadline, BISD has refused to supplement even those discovery requests to which it responded that the response "require[s] the testimony of experts" and that "Expert reports are not due at this time." In other words, BISD had no "allocation" evidence before the March 1 expert deadline, and still has none today.

More than adequate time has passed for BISD to produce factual and/or expert evidence on the issue made the subject of this motion – allocation. Despite BISD's deadlines for responding to discovery and producing expert reports having long since passed, BISD has failed to meet its burden of proof.

**D.    _Any "Sole Causation" Theory Offered by BISD is Untenable._**

Under Texas law, an insured cannot rely on a "sole causation" theory when there is evidence that multiple causes combined to create the loss. *Sherry Brooke*, 243 F.Supp.2d at 635 (granting summary judgment to property insurer where the insured's own experts agreed that excluded perils combined with a covered peril to cause the subject loss, but the experts failed to offer any evidence of allocation). As made clear by the reports of engineers and experts hired by BISD, it is undeniable that a sole covered peril did not cause all of BISD's damages at the schools. The evidence shows that damage to the subject schools was caused by excluded perils, including but not limited to defectively designed, constructed, and maintained HVAC and roofing systems. Not even BISD's retained expert has proffered a "sole causation" theory.

In sum, the indisputable and overwhelming evidence precludes BISD from relying on a "sole causation" theory that some (still unspecified) covered cause of loss was the sole cause of all the water, mold and other claimed damage at the subject schools. *Id*.

**E.    _BISD's Lack of Evidence of Allocation is Dispositive to Its Claims for Coverage_**

BISD has offered **no evidence** regarding which damage or how much damage (if any) was allegedly caused by a still unspecified covered peril. Similarly, BISD has presented no expert or other evidence segregating any damage caused by an alleged covered peril from the considerable damage caused by the excluded ones. Defendant BISD, therefore, has not provided any evidence of allocation, as

required under Texas law. Because allocation is central to BISD's claim for coverage, its failure to carry the burden of proof on this issue is fatal to its claim. *Wallis*, 2 S.W.3d at 303.

## VI. CONCLUSION

Royal is entitled to summary judgment on all contractual/coverage claims made by BISD because there is no evidence to support BISD's allocation of allegedly covered damages from uncovered damages. Accordingly, Royal requests that this Court (1) enter judgment in favor of Royal, (2) declare that BISD is not entitled to coverage under any of the Royal policies for any claimed damage or loss at or arising from the Aiken and Besteiro schools, (3) dismiss all BISD's counterclaims against Royal, and (4) grant Royal any and all other relief to which it is entitled.

Respectfully submitted,

**Jay W. Brown**
State Bar No. 03138830
SDT No. 1314
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEY-IN-CHARGE FOR PLAINTIFF,**
**ROYAL SURPLUS LINES INSURANCE COMPANY**

**OF COUNSEL:**
BEIRNE, MAYNARD & PARSONS, L.L.P.
**Stephen R. Wedemeyer**
State Bar No. 00794832
S.D.T. No. 19797
**John V. Trevino, Jr.**
State Bar No. 24003082
S.D.T. No. 23860
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Royal's Rule 56(c) "No-Evidence" Motion for Summary Judgment  was served on all counsel of record on June ___9___ , 2004.

Baltazar Salazar                           *Via Certified Mail Return Receipt Requested*
1612 Winbern
Houston, Texas 77004

Craig S. Smith                             *Via Certified Mail/Return Receipt Requested*
LAW OFFICE OF CRAIG S. SMITH
14493 S.P.I.D., Suite A, P.M.B. 240
Corpus Christi, Texas  78418

Ramon Garcia                              *Via Certified Mail Return Receipt Requested*
LAW OFFICE RAMON GARCIA, P.C.
222 W. University
Edinburg, Texas 78539

*Attorneys for Defendant BISD*


_____
Jay W. Brown