4⁹

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 0 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ROYAL SURPLUS LINES | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-03-109 |
| | § | JURY DEMANDED |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF ROYAL SURPLUS LINES INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S
EXTRA-CONTRACTUAL COUNTERCLAIMS**

**Beirne, Maynard & Parsons, L.L.P.**
**Jay W. Brown**
State Bar No. 03138830
SDT No. 1314
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEY-IN-CHARGE FOR
PLAINTIFF ROYAL SURPLUS
LINES INSURANCE COMPANY**

OF COUNSEL:

BEIRNE, MAYNARD & PARSONS, L.L.P.
**Stephen R. Wedemeyer**
State Bar No. 00794832
S.D.T. No. 19797
**John V. Trevino, Jr.**
State Bar No. 24003082
S.D.T. No. 23860
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . v

I.     SUMMARY OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       A.   The Royal Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       B.   BISD's Extra-Contractual Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
       C.   BISD's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . `. . . . . . 3
              i.    Costs of Investigating the Cause of Damage . . . . . . . . . . . . . . . . . . . 5
              ii.   BISD's allegation that Royal caused BISD to rely on Engineering
                    and Fire Investigations ("EFI") without disclosing the corporate
                    relationship between EFI and GAB Robins, N.A., Inc. is misguided . . . 7
              iii.  Royal's discovery and suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
       D.   BISD's Lack of Cooperation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.   STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
       A.   BISD's bad faith and Article 21.21 and DTPA claims
            are precluded as a matter of law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.     ARGUMENT AND AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
       A.   Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
       B.   Texas Law, in General, on Extra-Contractual Claims . . . . . . . . . . . . . . . . 19
       C.   BISD's Extra-Contractual Counterclaim for Breach of the
            Duty of Good Faith and Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . 22
       D.   BISD's Extra-Contractual Claim Based on Alleged
            Statutory Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
       E.   BISD's Claim based on Article 21.55 . . . . . . . . . . . . . . . . . . . . . . . . . . 28

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

APPENDIX OF SUMMARY JUDGMENT EVIDENCE

i

## TABLE OF CITATIONS

**CASES**

*Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289 (Tex. 2001), *modified on other grounds*,
2001 WL 1412951, at *1 (Tex. June 21, 2001)) ................................. 28

*Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505 (1986) .............................. 18

*Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex. 1987) ................. 22

*Bartlett v. American Republic Ins. Co.*, 845 S.W.2d 342
(Tex. App.—Dallas 1992, no writ) ........................................ 29

*Bates v. Jackson Nat'l Life Ins. Co.*, 927 F. Supp. 1015 (S.D. Tex. 1996) ............. 11, 26

*Celotex Corp. v. Catrett*, 106 S.Ct. 2548 (1986) ................................... 18, 19

*Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32
(Tex. App.—Tyler 1994, writ denied) ...................................... 27

*Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456
(5th Cir. 1997) .................................... 16, 17, 20, 22, 23, 26, 27, 29

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991),
cert. denied, 112 S.Ct. 936 (1992) ........................................ 19

*Koral Indus., Inc. v. Security-Connecticut Life Ins. Co.*, 788 S.W.2d 136
(Tex. App.—Dallas), writ denied, 802 S.W.2d 650 (Tex. 1990) .................. 27

*Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627 (Tex. 1996) .................. 16, 17, 20

*Love of God Holiness Temple Church v. Union Standard Ins. Co.*,
860 S.W.2d 179 (Tex. App. -- Texarkana 1993, writ denied) ................. 17, 20

*Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597 (Tex. 1993) ..................... 17, 20, 22

*MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85
(Tex. App.—San Antonio 2000, no pet.) ................................... 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348 (1986) . . . . . . . . . . . . . . . . 19

*National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373 (Tex. 1994) . . . . . . . . . . 18, 21, 23

*Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514 (5th Cir. 2002) . . . . . . . . . . . . 16, 18, 20, 23

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847
     (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189 (Tex. 1998) . . . . . . . . . . . . . . . . . . 22, 23

*Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160 (5th Cir. 1994) . . . . . . . . . . . . . . . 23, 27

*St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524
     (Tex. App.—Houston [14th Dist.] 1991, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Standard Fire Ins. Co. v. Rominger*, 827 F. Supp. 1277 (S.D. Tex. 1993) . . . . . . . . . . . . . . . . 28

*State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . 11

*State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42 (Tex. 1998) . . . . . . . . . . . . . . . . . . . 23

*State Farm Fire & Cas. Co. v. Woods*, 925 F. Supp. 1174 (E.D. Tex. 1996),
     *aff'd*, 129 F.3d 607 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*State Farm Lloyds v. Nicolau*, 951 S.W.2d 444 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Tapatio Springs Builders v. Maryland Cas. Ins. Co.*, 82 F. Supp.2d 633
     (W.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 20, 24, 25

*Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County*,
     52 S.W.3d 128 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tucker v. State Farm Fire & Cas. Co.*, 981 F. Supp. 461 (S.D. Tex. 1997) . . . . . . . . . . 23, 26, 28

*U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267 (Tex. 1997) . . . . . . . . . . . . . . . . 16, 18, 21, 23

*Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997) . . . . . . . . . . 16, 17, 19, 20, 22, 23, 27

*Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Walker v. Federal Kemper Life Assurance Co.*, 828 S.W.2d 442
       (Tex. App.—San Antonio 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Wellisch v. United Servs. Automobile Ass'n*, 75 S.W.3d 53
       (Tex. App.—San Antonio 2002, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## STATUTES

Tex. Ins. Code art. 3.62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Tex. Ins. Code art. 21.21 § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Tex. Ins. Code art. 21.21 § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Tex. Ins. Code art. 21.55 § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Tex. Ins. Code art. 21.55 § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 29, 30
Tex. Ins. Code art. 21.55 § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

iv

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is an insurance coverage dispute. Plaintiff Royal Surplus Lines Insurance Company ("Royal")

has filed this suit seeking a determination as to whether policies of insurance it issued to Defendant

Brownsville Independent School District ("BISD") provide coverage for BISD's claim for loss at two

schools. The case has been pending for approximately one (1) year. Royal and BISD designated their

experts in January 2004 and March 2004, respectively. The dispositive motion deadline is June 11, 2004,

and the matter is set for trial on September 2, 2004.

BISD answered Royal's suit and also asserted a counterclaim. BISD's live counterclaim (still

subject to Royal's Expedited Motion to Dismiss Original and Supplemental Counterclaims [Doc. # 35] and

Royal's Supplement to its Expedited Motion to Dismiss Original and Supplemental Counterclaims [Doc.

# 39] asserts breach of contract, as well as several extra-contractual claims, namely violations of the

Texas Deceptive Trade Practices Act and the Texas Insurance Code, and breach of the common law duty

of good faith and fair dealing.

Royal has already filed a motion for summary judgment addressing BISD's contract claim showing

that there is no coverage under the policies at issue. Royal files this motion for summary judgment showing

that BISD's extra-contractual claims are barred as a matter of law.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROYAL SURPLUS LINES<br>INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-03-109 |
| | § | JURY DEMANDED |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| **Defendant.** | § | |

PLAINTIFF ROYAL SURPLUS LINES INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT ON
DEFENDANT BROWNSVILLE INDEPENDENT SCHOOL DISTRICT'S
EXTRA-CONTRACTUAL COUNTERCLAIMS

Plaintiff Royal Surplus Lines Insurance Company ("Royal") files this Motion for Summary Judgment on Defendant Brownsville Independent School District's ("BISD") extra-contractual counterclaims and respectfully shows the Court the following:

## I. SUMMARY OF MOTION

This motion for summary judgment addresses BISD's extra-contractual counterclaims. BISD alleges in its First Amended Counterclaim [Doc. # 38] that Royal violated the Texas Deceptive Trade Practices Act ("DTPA") and Articles 21.21 and 21.55 of the Texas Insurance Code, and also breached the common law duty of good faith and fair dealing.

Royal shows herein that all of BISD's extra-contractual counterclaims are wholly without merit, and that Royal is entitled to summary judgment as to these claims as a matter of law. There is no evidence to support any extra-contractual claim against Royal and there is no legal basis for any extra-contractual

liability. Rather, because there is no coverage under the Royal policies for BISD's contract claim, BISD's extra-contractual claims fail as a matter of law. Alternatively, there is simply a bona fide dispute about whether the Royal policies provide coverage for BISD's insurance claim, and thus, as a matter of law, BISD's extra-contractual claims fail.

## II. BACKGROUND

### A.    The Royal Policies

BISD was the named insured under a series of commercial property policies issued by Royal that insured Aiken Elementary School ("Aiken") and Besteiro Middle School ("Besteiro") continuously from September 1, 1996 through April 1, 2002.[1] As set forth in considerable detail in Royal's Motion for Summary Judgment filed on May 17, 2004 [Doc. # 42],[2] both schools have suffered from problems associated with high humidity, water intrusion and indoor air quality, including mold/mildew, since around the time each school opened. (See Exhs. 5, 6, 7, 13, 14, and 15 to Royal's MSJ I). As also set forth in Royal's MSJ I, there are numerous reasons as to why there is no coverage under the policies for BISD's insurance claim, ranging from explicit policy exclusions to BISD's failure to comply with conditions precedent in the policies.

---

[1]    The four Royal polices are as follows: (1) No. KHT 307564 (effective dates 9/1/96 - 9/1/97, but cancelled effective 4/1/97; (2) No. KHT 308599 (effective 4/1/97 - 4/1/98); (3) No. KHT 310355 (effective 4/1/98 - 4/1/01); and (4) No. KHT 318271 (effective 4/1/01 - 4/1/02).

[2]    Because Royal will frequently refer to its prior (and still pending) Motion for Summary Judgment and numerous exhibits thereto, for the Court's convenience, in this Motion Royal will refer to its Motion for Summary Judgment filed on May 17, 2004 as "Royal's MSJ I" or "MSJ I."

**B.    BISD's Extra-Contractual Claims**

In addition to its breach of contract counterclaim against Royal, BISD has asserted extra-contractual claims contending that Royal breached its common law duty of good faith and fair dealing and violated Article 21.21 of the Texas Insurance Code and the DTPA based on in its handling of BISD's insurance claim. BISD also alleges that Royal violated Article 21.55 of the Texas Insurance Code by failing to promptly pay the claim. There is no evidence or law to support any of BISD's extra-contractual claims.

**C.    BISD's Allegations**

As the Court recalls, BISD originally filed a counterclaim that contained no factual support for any of its extra-contractual claims. Royal filed a Motion for More Definite Statement which the Court granted on March 5, 2004. [See Court's Order [Doc. #27]. BISD then supplemented, and later amended, its counterclaim. BISD eventually included in its First Amended Counterclaim what purport to be factual allegations in support of its extra-contractual claims.[3] BISD repeats, over and over, the same alleged conduct of Royal to support its claims. Significantly, none of the alleged conduct supports the extra-contractual claims. The allegations are as follows:

---

[3]  Royal has previously moved for dismissal of BISD's First Amended Counterclaim [Doc. # 38] as to BISD's allegations based on alleged misrepresentations. (*see* BISD's Supplement to its Expedited Motion to Dismiss Original and Supplemental Counterclaims [Doc. # 39] because even after amending, BISD still fails to provide specific factual allegations as to the specific person who allegedly made the misrepresentations, the person to whom the alleged misrepresentations were made, and how the alleged misrepresentations were made, as ordered by the Court. These and other details are set forth in Royal's Expedited Motion to Dismiss Original and Supplemental Counterclaims [Doc. # 35] and Royal's Supplement to its Expedited Motion to Dismiss Original and Supplemental Counterclaims [Doc. # 39], which are still pending before the Court.

> Plaintiff has (i) drawn out and extended its purported 'investigation' of BISD's claims to absurd lengths, (ii) subjected BISD to massive additional written and oral discovery, . . . (iii) has burdened BISD with the costs of investigating the cause of damage, (iv) has caused BISD to rely on Engineering and Fire Investigations ("EFI") without disclosing the corporate relationship between EFI and GAB Robins, N.A., Inc., this relationship would be the relationship between Royal's adjuster GAB and EFI, the company hired by BISD and approved by GAB to evaluate the cause of damage, (v) and now seeks a declaration as to "its coverage obligations . . . under the Policies relative to the first-party claim made thereunder by BISD . . . In other words, Plaintiff has burdened BISD with the costs of investigating the cause of damage with a very suspicious corporate affiliate of Royal's adjuster, further, Plaintiff has failed to disclose said corporate relationship and refuses to take a position as to coverage, and has simply thrown the matter into this Court's lap.

(*See* BISD's First Amended Counterclaim [Doc. #38], *passim.*)

BISD further alleges that it "was told by GAB Robins, N.A. that the cost estimates, investigation, findings, and costs produced by EFI would be honored," and that GAB Robins "led BISD to believe" this. (*See* BISD's First Amended Counterclaim [Doc. #38], *passim.*) BISD also asserts that it has "cooperated fully [with Royal] and paid for the costs of investigating the cause of loss," that it has "filed a proof of claim with all the information available at the time of filing," and that "Twenty Seven months after the claim was filed by BISD, Plaintiff has yet to accept or reject the claims." (*See* BISD's First Amended Counterclaim [Doc. #38], *passim.*)

The following is a brief discussion of each of these allegations to show the Court that each is factually groundless.

### i.     *Costs of Investigating the Cause of Damage*

BISD alleges that Royal committed common law bad faith and statutory violations in the handling of the claim by burdening BISD with the costs of investigating the cause of damage. It is rather surprising that BISD would make such an assertion considering that BISD was aware of problems at the schools from at least August 1994 for Besteiro, and August 1996 for Aiken (*see* Exhs. 5, 6, 7, 13, 14 and 15 to MSJ I), and began investigating them at that time. This, of course, was prior to the inception of the first Royal policy, and also many years prior to BISD ever putting Royal on notice of its claim on November 29, 2001.

Rather than rehash all of the background facts relating to this case, which are already set forth in Royal's MSJ I, Royal refers the Court to that motion and incorporates it (and the exhibits attached thereto) herein by reference. Nevertheless, Royal briefly sets forth some of the undisputed facts regarding the history of the problems at the schools and BISD's investigation that are particularly germane.

Because of persistent complaints of mold/mildew and excessive humidity problems at the schools, and the consensus among the architects, contractors, and subcontractors that there was a serious problem with the HVAC system, (*see* MSJ I), in 1998 BISD hired CRC Engineering, Inc. ("CRC") to investigate the problems. CRC also attributed the chronic humidity and mold problems to a defective HVAC system. (*See* Exhs. 19 and 20 to MSJ I). CRC personnel met with the BISD Board of Trustees in June 1999 to explain the cause of the mold problem, *i.e.*, the defective HVAC system, and what was to be done to correct it. (*See* Exh. 34 to MSJ I, p.6). Thereafter, BISD hired Coastal Engineering to perform the needed mechanical air conditioning upgrades. (*See id.*)

BISD hired Rimkus Consulting Group in 1999 to further investigate the schools. In its July 26, 1999 Report, Rimkus observed that there were elevated mold spore levels in the air at Aiken that stemmed from sources of mold growth on surfaces inside the school and from inadequate air conditioning, and that the HVAC system needed to be modified. (*See* Exh. 29 to MSJ I, at p. 3, ¶¶ 4, 5)

BISD also hired Assured Indoor Air Quality ("AIAQ") to do mold abatement. AIAQ sent a letter to BISD in August 2001 attributing the mold problems primarily to the air conditioning system. (*See* Exh. 24A to MSJ I). BISD commissioned AIAQ to conduct an Indoor Environmental Survey Study of Aiken in November 2001. (*See* Exh. 30 to MSJ I). On September 1, 2001, AIAQ recommended that BISD authorize it to investigate and test the *entire facility* to determine the root causes of the problems, and also recommended that no further mold clean-up be done until the investigation was completed and an action plan developed for the entire facility. (*See* AIAQ letter of 9/1/01, attached hereto as Exhibit "A"). On December 4, 2001, the BISD Board authorized the root cause, in-depth investigation suggested by AIAQ. (*See* AIAQ Timeline, dated 2-5-02, attached hereto as Exhibit "B"). In mid-December 2001, AIAQ performed on-site investigation and sampling. (*See id.*).

Thereafter, BISD hired additional companies to investigate the problems. Royal never "burdened" BISD with the costs of investigating the cause of damage. Rather, BISD undertook much of its investigation long before it ever provided notice to Royal. Furthermore, BISD had to investigate in light of its knowledge of the problems at the schools from the time they opened, the persistent complaints from

staff and students, the lawsuit brought by staff and students, and BISD's own lawsuits against the architects, contractors and subcontractors.

Accordingly, BISD's assertion that Royal committed common law bad faith and statutory violations by burdening BISD with the costs of investigation is wholly without factual merit.

ii.     *BISD's allegation that Royal caused BISD to rely on Engineering and Fire Investigations ("EFI") without disclosing the corporate relationship between EFI and GAB Robins, N.A., Inc. is misguided.*

After BISD put Royal on notice of its claim under a single policy on November 29, 2001 (*see* Exh. 35 to MSJ I), Royal hired GAB Robins North America, Inc. ("GAB") as its adjuster to investigate the claim. GAB sent a letter on December 5, 2001 to BISD's counsel informing him that GAB was retained by Royal to investigate the claim. (*See* Exh. 36 to MSJ I; *see also* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶ 3). Dennis Nickoloff of GAB was the actual adjuster assigned to BISD's claim. (*See id.* at ¶¶ 2 and 3) Mr. Nickoloff had numerous dealings with BISD about its claim. (*See* Exhs. 37-40 to MSJ I; *see also* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶¶ 4-12, 15-17).

In 2002, BISD hired EFI to investigate the problems at the schools. (*See* BISD's Designation of Experts in this case [Doc. # 29]; *also see* Exh. 26 to MSJ I). (Neither this case, nor BISD's state suit against Royal, were even filed at that time. Royal filed this suit on June 9, 2003, and BISD filed its state court action against Royal on June 30, 2003). BISD hired EFI at its attorney's suggestion, as stated in its Designation of Experts filed in this matter. (*See* BISD's Designation of Experts [Doc. #29], stating that "EFI was hired by counsel for BISD in 2002 to conduct an investigation of Aiken and Besteiro.")

BISD alleges in its First Amended Counterclaim, *passim*, that Royal failed to disclose to BISD that EFI and GAB are related companies, and that Royal caused BISD to rely on EFI without disclosing the corporate relationship between the companies. BISD also asserts that GAB "approved" EFI to evaluate the cause of damage. BISD further alleges that Royal "has burdened BISD with the costs of investigating the cause of damage with a very suspicious corporate affiliate of Royal's adjuster," ... and "failed to disclose said corporate relationship." (*See* BISD's First Amended Counterclaim [Doc. #38], *passim*.) BISD also asserts that it was told by GAB, acting as Royal's agent, that cost estimates, investigation, findings, and costs produced by EFI would be honored, and that GAB "led BISD to believe" this.

None of BISD's allegations have merit. First, there is no dispute that Royal hired GAB in late November/early December 2001 as its adjuster to investigate BISD's claim – this was <u>before</u> BISD hired EFI in 2002. (*See* BISD's Designation of Experts [Doc. #29]; *also see* Exh. 36 to MSJ I). Moreover, the only *evidence* submitted shows that GAB and Royal had nothing to do with BISD's retention of EFI. (*See* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶¶ 12-14). GAB and Royal did not recommend that EFI be hired by BISD, nor did they approve BISD's hiring of EFI. (*See* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶¶ 12-14). Rather, the evidence shows, and BISD has admitted, that it hired EFI at the direction of its counsel, Miguel Saldana. (*See* EFI Report, Exh. 26 to MSJ I; *also see* BISD's Designation of Experts [Doc. # 29]). Furthermore, EFI states in the cover letter attached to EFI's investigation report that "[w]e appreciate the opportunity to provide Remediation Evaluation Assessment services to the Law Office of Miguel A. Saldana." (*See* Exh. 26 to MSJ I). EFI's

report further acknowledges that the assessment was authorized by Mr. Saldana's law office. (*See id.*, at p. 1-1).

Moreover, GAB and Royal did not even learn of BISD's retention of EFI until November 4 and 8, 2002, when Miguel Saldana informed GAB by phone and letter that he would give GAB a copy of EFI's final report, which he expected to receive in December 2002. (*See* Letter from Saldana to Nickoloff of 11-8-02, attached hereto as Exhibit "D;" *see also* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶¶ 12 and 15). Accordingly, GAB and BISD had dealings with each other for almost a year (*see* Exhs. 36-40 to MSJ I; *see also* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶¶ 3-12) before GAB learned that BISD had retained EFI. In sum, GAB and Royal had no role in selecting, approving, or hiring EFI; GAB and Royal did not even know EFI had been hired by BISD until almost a year after GAB had been involved in the matter on behalf of Royal.

In addition, GAB never told BISD that cost estimates, investigation, findings, and costs produced by EFI would be honored, nor did GAB lead BISD to believe this. (*See* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶ 14). Moreover, GAB did not represent to BISD that if EFI were hired, Royal would pay the repair costs for the losses as found by EFI. (*See id.*) Rather, GAB and BISD never had any discussions about Royal paying for cost estimates, investigation, findings, and costs produced by EFI, nor did they have discussions that Royal would pay for the repair costs for the losses as found by EFI. (*See id.*)

Furthermore, BISD's allegation of a "suspicious" corporate relationship between GAB and EFI is ridiculous. All of the evidence from BISD is that it believes EFI has done a good job for it, and that it agrees with EFI's findings. Oscar Tapia, BISD's facilities administrator, provided a sworn statement on June 2, 2003. Mr. Tapia testified that BISD hired EFI to determine the cause of the problems at the schools, that BISD is pleased with EFI, BISD believes EFI's report is accurate, and ***BISD agrees with all of EFI's findings***. (*See* Exh. 23 to Royal's MSJ I [O. Tapia Sworn Statement, p. 107]).

Additionally, when BISD retained EFI, BISD knew GAB was acting as Royal's adjuster. If BISD had an issue with the corporate relationship between GAB and EFI, it should not have retained EFI.

In sum, all of BISD's allegations revolving around GAB and EFI are meritless. Additionally, BISD has asserted no legal basis that any such conduct, even if true, is actionable, or that it caused BISD damages.

### iii.    *Royal's discovery and suit*

BISD contends that Royal committed bad faith and Insurance Code violations by "subject[ing] BISD to massive additional written and oral discovery," and that Royal has "drawn out and extended its purported 'investigation' of BISD's claims to absurd lengths." (*See* BISD's First Amended Complaint [Doc. #38], *passim*.) BISD further asserts that because Royal requested documents from BISD and took Examinations Under Oath of BISD witnesses, this amounts to bad faith.

Contrary to BISD's assertions, this was not "massive additional written and oral discovery," but rather part of Royal's investigation of the claim, to which Royal was wholly entitled under the policies. The

policies specifically provide that "[w]e may examine any insured under oath, . . . at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. . . ." (*See* Exhs. 1-4 to MSJ I, at Building and Personal Property Coverage Form, E. Loss Conditions, 3. Duties in the Event of Loss or Damage, b.).

Accordingly, BISD's assertion that such conduct is evidence of bad faith claims-handling is completely unfounded. Further, BISD contends that Royal committed bad faith by filing a declaratory judgment action. Filing a lawsuit cannot be bad faith. In fact, the Texas Supreme Court has advised insurers to file declaratory judgment actions to seek prompt resolution of coverage disputes. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996); *Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128, 135 (Tex. 2000). Although *Gandy* and *Matagorda County* are cases involving third-party liability policies, the rationale for encouraging insurers to seek a court's assistance in resolving coverage disputes is equally applicable in the context of first party policies. Furthermore, "[w]hen there is a bona fide controversy, the insurer has a right to have its day in court on the underlying [first party] claim without subjecting itself to potential liability for bad faith practices. *Bates v. Jackson Nat'l Life Ins. Co.*, 927 F. Supp. 1015, 1024 (S.D. Tex. 1996).

BISD also overlooks the fact that it also filed a lawsuit against Royal in state court. Accordingly, seeking judicial assistance cannot be bad faith.

**D.    BISD's Lack of Cooperation**

In an attempt to support its extra-contractual claim that Royal mishandled the claim, BISD makes the conclusory allegation that it "cooperated fully" with Royal that it "filed a proof of claim with all the information available at the time of filing." BISD also contends that because twenty seven months have passed after it originally submitted its claim, and Royal has not accepted or rejected the claim, Royal has committed bad faith claims handling.

As pointed out in Royal's MSJ I, BISD is in breach of the policies by breaching several conditions precedent to coverage.[4]  Accordingly, BISD's argument that it has "cooperated fully" is misplaced. Furthermore, Royal has never been able to accept or reject BISD's claim because BISD has failed to provide, and continues to fail to provide, Royal with necessary documentation – which is in itself a breach of the policies. Even to this day, BISD has failed to provide even the most basic of information in response to Royal's interrogatories and requests for admission. For instance, BISD refuses to answer discovery requests as to the how, why, when and where of its alleged loss, such as the cause of the alleged loss, date of discovery, etc. BISD now, for the first time in its Response to Royal's Motion for Summary (filed by BISD on June 3, 2004 [Doc. # 45]) claims that there were broken or cracked pipes, yet still fails to provide any evidence of where these were. BISD has continued to fail to verify its interrogatory answers. It even refuses to produce maintenance records and work orders for the schools. All of this is, and has been for some time, the subject of Royal's pending Motion to Compel [Doc. # 28].

---

[4]  *See* Royal's MSJ I, at pp. 51-57.

Again, because Royal has already provided the Court with considerable detail in its MSJ I, Royal will not rehash all of that here. Rather, the following includes some highlights of BISD's utter lack of cooperation:

When BISD finally provided notice to Royal in November 2001, that notice stated only that BISD had suffered a loss covered by Royal Policy No. KHT 318271 (policy term 4/1/01 - 4/1/02). BISD's Notice of Loss letter failed to mention a date, suspected cause, description of the claimed loss, or the extent of the loss, but instead stated only that BISD had "suffered a loss covered by your policy of insurance...The insured has incurred damages at Besteiro Middle School and Aiken Elementary...as the result of occurrences covered under the policies." (*See* Exh. 35 to MSJ I). Despite the fact that BISD (1) had known of the problems at the schools for years, (2) had undertaken extensive investigation of the problems, (3) had paid companies to correct the problems, and (4) had knowledge of a pending personal injury lawsuit over the mold in the schools, BISD provided no details of its claim to Royal.

On or around April 2, 2002, BISD for the first time provided Royal a document entitled "Notice of Loss," which purported to provide notice of damage and loss to the schools under the three prior Royal policies that were effective from September 1, 1996 to April 1, 2001. (*See* Exh. 44 to MSJ I). Like the earlier notice, the April 2002 notice was deficient in that it failed to provide a date, cause or even a description of BISD's claimed loss. (*See id.*). Again, BISD failed to provide any details, despite the fact that by this time, BISD had closed the two schools in January 2002 and had brought suit in Cameron County against the various architects, engineers and contractors involved in the design, construction and

maintenance of the two schools, alleging that design and construction defects in the HVAC system had caused the property damage that existed at the two schools.[5]  (*See* Exh. 33 to MSJ I).

Further, some four months prior, on December 5, 2001, GAB had already begun requesting from BISD all materials regarding its claim. (*See* Exh. 36 to MSJ I).  As part of its investigation, GAB requested many specific items from BISD over the course of many months, including all engineering and mold studies, and other investigative studies related to the problems and claimed damage at the schools. (*See* Exhs. 36, 38, 39 and 40 to MSJ I; *see also* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶¶ 3-12, 15-17).

After numerous unfulfilled oral and written requests of BISD (*see* Exhs. 41, 42 to MSJ I; *also see* Affidavit of Dennis Nickoloff, attached as Exhibit "C" hereto, at ¶¶ 4-6), and several months, GAB finally gained access to the schools to do a walk-through on February 26, 2002. *(See* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶ 6).  In addition, it was not until over a year later – on January 22, 2003 – that BISD finally provided Royal for the first time with any reports. (*See* Exhs. 40 and 45 to MSJ I [Exh. 45 is mis-dated as 2002]; *see also* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶ 16).

Further, on January 23, 2003, BISD submitted a $10 million Sworn Statement in Proof of Loss ("Proof of Loss") to Royal. (*See* Exh. 48 to MSJ I).  The Proof of Loss indicated that BISD was making a claim only under Policy No. KHT 318271 (effective 4/1/01 - 4/1/02) for a "loss by covered causes of

---

[5]  The 2002 Cameron County case was styled and numbered Cause No. 2002-01-000071-B, *BISD v. Stotler Construction Co., Carroll, Dusang & Rand, et al.*  (*See* Exh. 33 to MSJ I).

loss," and that the property loss occurred "at an unknown date and time." (*See id.*). The Proof of Loss was signed by BISD's attorney, Baltazar Salazar, and indicated that BISD was making a claim for $10 million "actual cash value." (*See id.*) The Proof of Loss advised Royal only that the cause and origin of the claimed loss were "mold manifestations." (*See id.*) Although BISD had a duty under the policy to provide a complete Proof of Loss, it failed to do so. The Proof of Loss is a condition precedent under the policies, which provides in pertinent part that the insured will "send [Royal] a signed, sworn proof of loss containing the information we request to investigate the claim." (*See* Exh. 4 to MSJ I, at Building and Personal Property Coverage Form § E.3.a.(7)). Royal sent BISD the standard form which requested, *inter alia*, the date and time of the loss and the cause and origin of the loss. BISD failed to provide any information as to the date of the loss, despite the fact that BISD had first notified Royal of its claim more than one year earlier, in November 2001. Furthermore, BISD failed to identify the schools at issue and even identify the defects and problems that had been ongoing at the schools for many years. As presented, BISD's Proof of Loss failed to comply with the policy's condition precedent.

Because the January 23, 2003 Proof of Loss failed to provide Royal the required basic information about BISD's claimed loss, Royal advised BISD, on February 21, 2003, that it was rejecting the proof of loss, and requested that BISD resubmit a sworn proof of loss that included the basic information requested by the form (and required by the policies), including the date and time of the loss, and the cause and origin of the claimed "mold manifestations." (*See* Exh. 40 to MSJ I). Royal advised BISD at such time that "This information is necessary for Royal to fully understand and investigate the loss reported by BISD. *I have*

*enclosed another blank proof of loss form for your convenience." (See id.).* Despite Royal's request,

BISD has refused for over one (1) year, and continues to refuse, to provide another Proof of Loss to Royal

that complies with policy requirements. This, despite the condition precedent that BISD: "Send [Royal]

a signed, sworn proof of loss . . . within 91 days after [Royal's] request." (*See* Exh. 4 to MSJ I, at Building

and Personal Property Coverage Form § E.3.a.(7)).

In sum, BISD's assertions that it fully cooperated with Royal are meritless.

### III. STATEMENT OF ISSUES

This Motion sets forth why summary judgment can be granted in favor of Royal on BISD's extra-

contractual claims. Specifically, the issues to be ruled upon by the Court are as follows:

1.   **BISD's claims that Royal breached the duty of good faith and fair dealing
     and violated Article 21.21 and the DTPA are precluded as a matter of law.
     An insured may not prevail on an extra-contractual claim without first
     showing that the insurer breached the contract.** *See Tapatio Springs
     Builders v. Maryland Cas. Ins. Co.*, 82 F. Supp.2d 633, 647 (W.D. Tex. 1999);
     *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996).
     **Because there is no coverage for BISD's insurance claim, Royal did not
     breach the insurance contract, and thus BISD's extra-contractual claims
     based on bad faith and statutory violations are barred. Alternatively,
     BISD's extra-contractual claims are barred because Royal had a
     reasonable basis to deny or delay payment of the claim. An insured may
     not prevail on extra-contractual claims if the insurer had a reasonable
     basis to deny or delay payment of a claim.** *Universe Life Ins. Co. v. Giles*,
     950 S.W.2d 48, 50-51 (Tex. 1997); *Higginbotham v. State Farm Mut. Auto.
     Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997); *Parkans Int'l LLC v. Zurich Ins.
     Co.*, 299 F.3d 514, 519 (5th Cir. 2002). **If there is a bona fide dispute about
     coverage, as there is here, there can be no bad faith.** *U.S. Fire Ins. Co. v.
     Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *Parkans Int'l LLC*, 299 F.3d at
     519. **As long as the insurer has a reasonable basis to deny or delay
     payment of a claim, even if that basis is eventually determined to be**

erroneous, **the insurer is not liable for bad faith or statutory violations.**
*Higginbotham,* 103 F.3d at 459; *Lyons v. Millers Cas. Ins. Co.,* 866 S.W.2d
597, 600 (Tex. 1993).

2.   **BISD's claim that Royal violated Article 21.55 of the Texas Insurance
     Code is precluded as a matter of law.  An insured may not prevail on a
     claim under Article 21.55 without first showing that the insurer is liable on
     the claim.  Because there is no coverage under the Royal policies for
     BISD's claim, Royal is not liable for the statutory penalties under Article
     21.55.**   Tex. Ins. Code art. 21.55 § 3(g); *Higginbotham,* 103 F.3d at 461.
     **Furthermore, the provisions of Article 21.55 do not apply because BISD
     failed to provide Royal with all items reasonably requested and required.**

## IV.   SUMMARY OF ARGUMENT

*A.    BISD's bad faith and Article 21.21 and DTPA claims are precluded as a matter of law*

Under Texas law, an insured may not prevail on its extra-contractual claims (i.e., common law bad

faith and statutory unfair claim settlement practices) without first showing that the insurer breached the

contract.  *See Tapatio Springs Builders v. Maryland Cas. Ins. Co.,* 82 F. Supp.2d 633, 647 (W.D. Tex.

1999); *Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex. 1996).  As shown in Royal's

MSJ I, BISD's breach of contract claim fails because there is no coverage under the Royal policies.  Thus,

BISD's bad faith, Article 21.21 and DTPA claims fail as a matter of law.

Furthermore, an insurer does not commit an unfair claim settlement practice merely because it

denies a claim.  *Love of God Holiness Temple Church v. Union Standard Ins. Co.,* 860 S.W.2d 179,

182 (Tex. App. -- Texarkana 1993, writ denied).  As long as there exists a reasonable basis for the insurer

to deny the insured's claim, the insurer does not violate the insurance code or commit bad faith.  *Universe*

*Life Ins. Co. v. Giles,* 950 S.W.2d 48, 50-51 (Tex. 1997); *see also Higginbotham v. State Farm Mut.*

*Auto. Ins. Co.*, 103 F.3d 456, 459-60 (5th Cir. 1997); *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002).  Evidence that only shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith.  *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376-77 (Tex. 1994); *Parkans Int'l LLC*, 299 F.3d at 519.  Accordingly, as a matter of law, Royal could not be liable for extra-contractual damages because (1) it has no liability under the policies; or alternatively, (2) all of the evidence shows that Royal had a reasonable basis for not paying on the claim because there is a bona fide dispute about its liability under the policies.

## V.  ARGUMENT AND AUTHORITY

### A.    *Summary Judgment Standard*

Under Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986).  The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 106 S.Ct. 2548 (1986).

If the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact.  This showing requires more than "some

517576.1                                              18

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1355-56 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Id.* The non-movant may defeat the motion only by showing a genuine dispute of material fact. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 936 (1992).

The United States Supreme Court, in *Celotex Corp. v. Catrett*, 106 S.Ct. 2548 (1986), approved the use of the "no evidence" summary judgment motion to dispose of claims unsupported by any evidence. The *Celotex* Court held that:

> [T]he plain language of **Rule 56(c) mandates the entry of summary judgment**, after adequate time for discovery and upon motion, **against the party who fails to make a showing sufficient to establish the existence of a essential element to that party's case, and on which that party will bear the burden of proof at trial.** In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is entitled to summary judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of her case with the respect to which she has the burden of proof.

*Id.* at 2552 (internal quotations omitted) (emphasis added).

**B.    *Texas Law, in General, on Extra-Contractual Claims***

Although the viability of an insured's extra-contractual claims is usually a question of fact, a court is entitled to decide the issue as a matter of law when there is no conflict in the evidence. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). In this case, BISD has absolutely no evidence to

support its extra-contractual claims. Accordingly, BISD's extra-contractual claims must fail as a matter of law because there is no evidence to support them, and there never will be.

Furthermore, under Texas law, an insured may not prevail on its extra-contractual claims (i.e., common law bad faith and statutory unfair claim settlement practices) without first showing that the insurer breached the contract. *See Tapatio Springs Builders v. Maryland Cas. Ins. Co.*, 82 F. Supp.2d 633, 647 (W.D. Tex. 1999); *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). Accordingly, without a valid contract claim, all of BISD's extra-contractual claims must fail. As shown in Royal's MSJ I, BISD's breach of contract claim fails because there is no coverage under the Royal policies.

Moreover, an insurer does not commit an unfair claim settlement practice merely because it denies a claim. *Love of God Holiness Temple Church*, 860 S.W.2d at 182. **As long as there exists a reasonable basis for the insurer to deny the insured's claim, the insurer does not violate the insurance code or commit bad faith**. *Giles*, 950 S.W.2d at 50-51; *Higginbotham*, 103 F.3d at 459; *Parkans Int'l LLC*, 299 F.3d at 519.

An insurer can only breach the duty of good faith and fair dealing when the "insurer has no reasonable basis for denying or delaying payment of a claim, and the insurer knew or should have known that fact." *Giles*, 950 S.W.2d at 50-51; *Higginbotham*, 103 F.3d at 459. The issue of bad faith focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim. *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993). **Evidence that only shows**

**a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith.** *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376-77 (Tex. 1994). Accordingly, as a matter of law, Royal could not be liable for extra-contractual damages because (1) it has no liability under the policies; or alternatively, (2) all of the evidence shows that Royal had a reasonable basis for not paying on the claim because there is a bona fide dispute about its liability under the policies.

As discussed in detail in Royal's MSJ I, it is indisputable that the numerous engineers and other experts who have investigated the schools have determined that mold and other damage are the result of inadequate and defective design, construction and maintenance of HVAC, roofing and other systems at the schools. These causes of loss are causes specifically excluded by the Royal policies. Accordingly, Royal obviously had a reasonable basis to contest coverage for (or even deny) BISD's claim.

BISD's designated insurance expert's report even shows that there is a bona fide dispute in this case. Although BISD has claimed that there is coverage for all its claims and that it is entitled to $10 million, its expert concedes in his report that some of the claimed damage might not be covered. He states that it is his "opinion that there is coverage for some or all of the damage to the schools." (See BISD's Designation of Experts [Doc. #29], at p. 2). Accordingly, BISD's own expert has acknowledged that BISD may not be entitled to coverage for all of its claims.

In sum, because there is substantial evidence that BISD's alleged claim is not covered by the Royal policies, it is impossible for Royal to have committed bad faith or an unfair claim settlement practice under

Texas law.  For these reasons, Royal is entitled to summary judgment that BISD's extra-contractual claims are precluded as a matter of law.

### C.    BISD's Extra-Contractual Counterclaim for Breach of the Duty of Good Faith and Fair Dealing

"Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham*, 103 F.3d at 459; *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). "A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Higginbotham*, 103 F.3d at 459; *Arnold*, 725 S.W.2d at 167; *Giles*, 950 S.W.2d at 50-51. The key inquiry in a bad faith claim is the reasonableness of the insurer's conduct. *See Giles*, 950 S.W.2d at 49; *Lyons*, 866 S.W.2d at 601.

An insurer's liability under an insurance contract is separate and distinct from its liability for breach of the duty of good faith dealing. *See Lyons*, 866 S.W.2d at 600; *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990). **"A *bona fide* controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim."** *Higginbotham*, 103 F.3d. at 459 (emphasis added); *see also Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 195-96 (Tex. 1998). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham*, 103 F.3d at 459; *see also Lyons*, 866 S.W.2d at 600; *Castaneda*, 988 S.W.2d at 196.

To succeed on a claim of breach of the duty of good faith and fair dealing, the insured must prove (1) that the insurer either denied or delayed payment of the claim and (2) that the insurer "knew or should have known that it was reasonably clear that the claim was covered." *Giles*, 950 S.W.2d at 55; *see Castaneda*, 988 S.W.2d at 195-196; *Williams*, 955 S.W.2d at 268; *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). "[A]n insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear.'" *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); *see also Williams*, 955 S.W.2d at 268. An insurer does not breach its duty, however, merely by erroneously denying a claim. *See Tucker v. State Farm Fire & Cas. Co.*, 981 F. Supp. 461, 465 (S.D. Tex. 1997); *Williams*, 955 S.W.2d at 268. The courts of Texas have repeatedly held that bad faith does not arise simply because the insurer's construction of the policy was subsequently found to be legally incorrect. *See Williams*, 955 S.W.2d at 268; *Giles*, 950 S.W.2d at 48. Similarly, evidence that shows only a *bona fide* coverage dispute does not rise to the level of bad faith. *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994); *Simmons*, 963 S.W.2d at 44; *Williams*, 955 S.W.2d at 268; *National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376-77 (Tex. 1994); *see also Parkans Int'l LLC*, 299 F.3d at 519. "Insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial for the claim." *Higginbotham*, 103 F.3d at 459; *St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524, 526 (Tex. App.—Houston [14th Dist.] 1991, writ denied)); *see Robinson*, 13 F.3d at 162.

In this instance, based on the long history of problems at the schools and the overwhelming evidence that the cause of the problems is attributable to inadequate and defective design, construction and maintenance of HVAC, roofing and other systems at the schools – all causes of loss specifically excluded by the Royal policies – Royal's liability has never been reasonably clear. Indeed, Royal's liability is still not reasonably clear. In fact, all of the evidence shows that there is no coverage for BISD's insurance claim; thus, Royal's non-liability is clear. Furthermore, BISD has never even determined the cause/s of the problems at the schools. In its responses to Royal's Second Requests for Admission, BISD states that it "has not made a final determination of the cause or causes of the problems." (See BISD's Responses to Royal's Second Requests for Admission, RFA No. 7, served on Royal on 1-20-04, and attached as Exh. G to Royal's Motion to Compel [Doc. # 28]). Moreover, BISD's counsel even conceded to GAB that they did not believe all of BISD's claimed damage at the schools was covered by the Royal policies. (*See* Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶ 16.)

Therefore, BISD will never be able to adduce any evidence from which it could be inferred that Royal acted in bad faith. At most, there is a *bona fide* coverage dispute between the parties, precluding a finding of bad faith on the part of Royal.

In any event, the general rule, as discussed above, is that there can be no claim for bad faith when the claim is in fact not covered. *Tapatio Springs Builders,* 82 F. Supp.2d at 647. However, the absence of policy coverage, by itself, may not foreclose recovery for the breach of the duty of good faith and fair dealing if, in denying the claim, the insurer committed an act, so extreme, that caused injury independent

of the policy claim. *See id.* Here, however, there is no evidence of extreme conduct on the part of Royal.

Furthermore, BISD has not alleged extreme conduct by Royal. Accordingly, BISD's extra-contractual

claim for breach of the duty of good faith and fair dealing is foreclosed.

**D.    *BISD's Extra-Contractual Claim Based on Alleged Statutory Violations***

BISD alleges that Royal "violated art. 21.21, § 4(10) of the Insurance Code by engaging in unfair

settlement and handling practices in the following respects:

    a.    misrepresenting to claimant, BISD, a material fact or policy provision relating to coverage at issue;

    b.    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

    c.    failing to attempt, in good faith, to effectuate a prompt, fair, and equitable settlement under one portion of a policy of a claim with respect to which the insurer's liability has become reasonably clear in order to influence the claimant to settle an additional claim under another portion of the coverage, provided that this prohibition does not apply if payment under one portion of the coverage constitutes evidence of liability under another portion of the policy;

    d.    failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim;

    e.    failing within a reasonable time to:
        1)  affirm or deny coverage of a claim to a policyholder, or
        2)  submit a reservation of rights to a policyholder;

    f.    refusing, failing, or unreasonably delaying an offer of settlement under applicable first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as may be specifically provided in the policy;

    g.    undertaking to enforce a full and final release of a claim from a policyholder when only a partial payment has been made, provided that this prohibition does not apply to a compromise settlement of a doubtful or disputed claim; or

    h.    refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

(*See* BISD's First Amended Counterclaim [Doc. #38], at ¶ 13).

BISD further claims that Royal "violated art. 21.21, § 4(11) of the Insurance Code by making

misrepresentations and failing to disclose facts as follows:

Misrepresenting an insurance policy by:

a.    making an untrue statement of material fact;

b.    failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

c.    making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact.

(*See* BISD's First Amended Counterclaim [Doc. #38], at ¶ 14).

BISD further alleges that Royal violated the DTPA by:

a.    Representing that the insurance policies have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities [sic] which they do not have;

b.    Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; or

c.    failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

(*See* BISD's First Amended Counterclaim [Doc. #38], at ¶ 10).

In Texas, an individual who has been damaged by "unfair methods of competition or unfair or deceptive acts or practices in the business of insurance" may bring a statutory cause of action under the Texas Insurance Code against the "person or persons engaging in such acts or practices." TEX. INS. CODE ANN. art. 21.21, § 16; *Higginbotham*, 103 F.3d at 460. A violation of the duty of good faith and fair dealing also constitutes an unfair insurance practice in violation of Article 21.21 of the Insurance Code. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 860-61 (5th Cir. 2003); *Tucker*, 981 F. Supp. at 465; *Bates v. Jackson Nat'l Life Ins. Co.*, 927 F. Supp. 1015, 1024 (S.D. Tex. 1996). "The prohibited conduct includes 'failing to attempt in good faith to effectuate a prompt, fair and

equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.'"

*Performance Autoplex II Ltd.*, 322 F.3d at 860-61.

"The Texas Insurance Code and the Deceptive Trade Practices Act are in large measure statutory fleshings-out of the already existing common law requirements." *Robinson*, 13 F.3d at 162. Hence, the breach of an insurance contract does not automatically give rise to liability under the Insurance Code or the DTPA. *See Walker v. Federal Kemper Life Assurance Co.*, 828 S.W.2d 442, 454 (Tex. App.—San Antonio 1992, writ denied). Rather, the "reasonableness" requirements of common law good faith apply equally in the statutory context. *See Giles*, 950 S.W.2d at 55. Under Texas law, "extra-contractual tort claims" pursuant to the Texas Insurance Code and the DTPA "require the same predicate for recovery as bad faith causes of action.'" *Higginbotham*, 103 F.3d at 460; *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied). Thus, in order to establish a statutory violation under the Insurance Code or the DTPA, the elements necessary to demonstrate an insurer's breach of the common law duty of good faith and fair dealing must be proven. *See Higginbotham*, 103 F.3d at 460; *Koral Indus., Inc. v. Security-Connecticut Life Ins. Co.*, 788 S.W.2d 136, 147 (Tex. App.—Dallas), *writ denied*, 802 S.W.2d 650 (Tex. 1990)); *MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 92 (Tex. App.—San Antonio 2000, no pet.).

Therefore, when an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim asserting a wrongful denial or delay in the payment of policy benefits, if there is no merit to the bad faith claim, there can be no liability on the statutory claims. *See Higginbotham*, 103 F.3d at 460;

*Tucker*, 981 F. Supp. at 465; *State Farm Fire & Cas. Co. v. Woods*, 925 F. Supp. 1174, 1180 (E.D. Tex. 1996), *aff'd*, 129 F.3d 607 (5th Cir. 1997); *Standard Fire Ins. Co. v. Rominger*, 827 F. Supp. 1277, 1279 (S.D. Tex. 1993). Concerning the interrelationship between bad faith and statutory claims, the court in *Tucker* commented, "Plaintiff's extra-contractual claims live or die depending on whether Plaintiff's bad-faith claim has any viability." 981 F. Supp. at 465. Consequently, because the common law bad faith claim asserted by BISD in the instant case is without merit, summary judgment is also proper as to BISD's statutory claims under Article 21.21 of the Texas Insurance Code and the DTPA.

**E.    *BISD's Claim based on Article 21.55***

BISD alleges that it is entitled to statutory damages under Article 21.55 because Royal violated Article 21.55 §§ 3 and 6 of the Texas Insurance Code "by wrongfully denying BISD's claim as Royal failed to promptly pay the claim within sixty days of receipt of all items necessary to make coverage determinations." (See BISD's First Amended Counterclaim [Doc. #38], ¶¶ 11 and 12).

To prevail under Article 21.55, the insured must establish: "(1) a claim under an insurance policy (2) for which the insurer is liable and (3) that the insurer has not followed one or more sections of Article 21.55 with respect to the claim." *Wellisch v. United Servs. Automobile Ass'n*, 75 S.W.3d 53, 57 n.2 (Tex. App.—San Antonio 2002, pet. denied); *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001), *modified on other grounds*, 2001 WL 1412951, at *1 (Tex. June 21, 2001)). Accordingly, the insurer must be liable on the claim before the claimant can recover damages for violating Article 21.55. *See* Tex. Ins. Code art. 21.55 § 6.

517576.1                              28

If the insurer is not liable on the claim, the claimant is not entitled to damages even though the insurer did not comply with the Article 21.55 requirements. *See Bartlett v. American Republic Ins. Co.,* 845 S.W.2d 342, 348 (Tex. App.—Dallas 1992, no writ) (in suit for unreasonable failure to pay claim brought under Tex. Ins. Code art. 3.62, predecessor to art. 21.55, insurer established as a matter of law that the claimant's claims under policy fell within policy exclusion, and therefore insurer established insured was not entitled to recover penalty for failure to pay the claim on time). Furthermore, pursuant to Article 21.55 § 3(g), there is no liability for statutory damages under Article 21.55 if it is determined, by litigation, that the claim in question is invalid and not payable. TEX. INS. CODE art. 21.55 § 3(g); *Higginbotham,* 103 F.3d at 461.

Here, BISD cannot establish that Royal is liable for BISD's insurance claim because there is no coverage under the policies. Therefore, Royal cannot be liable for statutory damages under Article 21.55. In addition, BISD cannot establish that Royal has not followed one or more sections of Article 21.55 with respect to the claim. Although BISD specifically alleges that Royal wrongfully denied BISD's claim by failing to promptly pay the claim within sixty days of receipt of all items necessary to make coverage determinations, there is no evidence to support the allegation.

BISD's allegation invokes Article 21.55 § 3(f), which states that:

> Except as otherwise provided, if an insurer delays payment of a claim following its receipt of **all** items, statements, and forms reasonably requested and required, as provided under Section 2 of this article, for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than 60 days, the insurer

shall pay damages and other items as provided for in Section 6 of this article.

TEX. INS. CODE art. 21.55 § 3(f) (emphasis added).

In this case, despite the fact that Royal complied with all of the requirements of Section 2[6], BISD has failed to provide all items reasonably requested and required, as set forth above and in Royal's MSJ I. Accordingly, the provisions of Article 21.55 do not apply.

## VI.  CONCLUSION

Royal is entitled to summary judgment on all of BISD's extra-contractual counter-claims because there is no evidence or law to support BISD's claims.  Accordingly, Royal has shown that these claims can be decided as a matter of law in Royal's favor.  Therefore, Royal requests that this Court (1) enter judgment in favor of Royal, (2) declare that BISD's extra-contractual counter-claims are barred as a matter

---

[6] Pursuant to Section 2 of Article 21.55, not later than the 15th day after receipt of notice of a claim or the 30th business day if the insurer is an eligible surplus lines carrier, the insurer must (1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant. TEX. INS. CODE art. 21.55 § 2(a). Section 2 also provides that "[a]dditional requests may be made if during the investigation of the claim such additional requests are necessary." See id.

Here, BISD provided Royal with notice of its claim on November 29, 2001. (See Exh. 35 to MSJ I). GAB, on behalf of Royal, acknowledged receipt of the claim, in writing, on December 5, 2001. (See Exh. 36 to MSJ I; see also Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶ 3 ). Also at that time, GAB, on behalf of Royal, commenced the investigation and requested from BISD all items, statements, and forms reasonably believed, at that time, were required. (See Exh. 36 to MSJ I; see also Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶ 3). GAB, on behalf of Royal, continued to make additional requests verbally and in writing to BISD during the investigation, most of which were to reiterate the original requests because BISD was not forthcoming with documents. (See Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶¶ 4-11, 15-17 ; and also see Exhs. 38-40, 42 to MSJ I). GAB also had to reiterate its requests for dates on which it could inspect the schools. (See id.; see also Affidavit of Dennis Nickoloff, attached hereto as Exhibit "C," at ¶¶ 4 and 5.) To date, BISD still refuses to provide documents which are necessary to Royal's investigation.

517576.1                                    30

of law; (3) dismiss all of BISD's extra-contractual counterclaims against Royal with prejudice, and (4)

grant Royal any and all other relief to which it is entitled.

Respectfully submitted,

Jay W. Brown
State Bar No. 03138830
SDT No. 1314
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile:  (713) 960-1527

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**
**ROYAL SURPLUS LINES INSURANCE COMPANY**

**OF COUNSEL:**
BEIRNE, MAYNARD & PARSONS, L.L.P.
Stephen R. Wedemeyer
State Bar No. 00794832
SDT No. 19797
John V. Trevino, Jr.
State Bar No. 24003082
SDT No. 23860
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile:  (713) 960-1527

517576.1                                31

## CERTIFICATE OF SERVICE

I hereby certify that, on this ___ day of June, 2004, a true and correct copy of Plaintiff Royal Surplus Lines Insurance Company's Motion for Summary Judgment on Defendant Brownsville Independent School District's Extra-Contractual Counterclaims is being served, via certified mail, with return receipt requested, on all known counsel of record at their respective addresses as set forth below.

Mr. Baltazar Salazar
1612 Winbern
Houston, Texas 77004

Mr. Craig S. Smith
LAW OFFICE OF CRAIG S. SMITH
14493 S.P.I.D., Suite A, P.M.B. 240
Corpus Christi, Texas 78418

Mr. Ramon Garcia
LAW OFFICE OF RAMON GARCIA, P.C.
222 W. University
Edinburg, Texas 78539

Jay W. Brown

**APPENDIX OF PLAINTIFF ROYAL'S SUMMARY JUDGMENT EVIDENCE**

| EXHIBIT | DOCUMENT |
|---|---|
| A. | AIAQ letter to BISD, dated 9/1/01. |
| B. | AIAQ Timeline for Aiken Elementary School and Besteiro Middle School, dated 02/05/02. |
| C. | Affidavit of Dennis Nickoloff. |
| D. | Letter from Miguel Saldana to Dennis Nickoloff, dated 11-8-02. |
| E. | Affidavit of Jay W. Brown, proving up Exhibits "A" and "B". |
| F. | *Allstate Ins. Co. v. Bonner*, No. 00-0282, 2001 WL 1412951 (Tex. Jun. 21, 2001). |

**EXHIBIT "A"**

**ASSURED**
INDOOR AIR QUALITY

September 1, 2001

Brownsville Independent School District
1900 Price Road
Brownsville, Texas 78521

Re:   Bruce Aiken Elementary School and Besteiro Middle School

Attn:   Oscar Tapia, Facilities/Maintenance Administrator

Dear Sir:

At the request of the Brownsville Independent School District, Assured Indoor Air Quality, LP (Assured) visited the subject facility to investigate the extent of the mold contamination in the Kitchen and Library. Assured also looked at a computer classroom at the request of the District.

National Abatement Services cleaned the kitchen on August 18th and 19th. The following week TPV sent a representative to look at the library and computer room to review the scope of work required to develop a budget for cleaning contents. Please find TPV correspondence enclosed concerning their findings.

As mentioned in previous correspondence, since the building has had reoccurring conditions that provide opportunities for wetting of materials, microbial contamination can occur in any location and on virtually any nutrient substrate that is wetted. Acoustical ceiling tile, sheetrock construction, carpet, furniture, contents, and the air conditioning system all represent large potential areas that can harbor contamination.

It is apparent to Assured that the cause of the mold problems at the facility was a result of conditions that are primarily related to the environmental conditioning system and moisture events.

Cleaning the space and contents is required to remove the contaminates. However, cleaning alone will not fix the problem. Unless the root causes are identified and resolved, the mold will return when conditions allow. Therefore, an action plan that includes resolving the causes, cleaning the facility and contents to achieve successful results, and properly managing and sequencing the work will be required.

Assured Indoor Air Quality, LP • 750 N. St. Paul, #888 • Dallas, Texas 75201 • (214) 855-0222
www.assuredindoorair.com
1



MSJ EXHIBIT
tabbies
"A"

EXHIBIT
# 3

P.007    TX/RX NO.7370    17:59    09/16/01

To develop that action plan, it is our recommendation that the Brownsville ISD formally commission Assured to investigate and test the entire facility to determine the root cause(s) in order to understand the subsequent steps that are appropriate. Assured also will need the approval of the Brownsville ISD to employ the services of a test and balance firm (PEBSCO) and the appropriate mechanical engineer (Tom Green & Company Engineers, Inc.) to work with Assured to define specific criteria and develop construction documents that will be required.

Assured has extensive work experience in the above duties and can also manage the work program to completion, providing single source responsibility. Due to the fact that the District has hired attorneys with specific mention of this facility, I encourage you to seek their advice concerning what role District employees should assume in any subsequent activities.

It is Assured's recommendation that no further mold clean-up work in the facility should be done until an investigation is completed and an action plan has been developed. In other words, the Library and the computer classroom should remain closed for now.

Assured's specific concerns for proceeding with cleaning the computer classroom before investigating the whole facility is centered around the fact that the computer classroom is served by an air conditioning unit that also serves other classrooms. The probability of cross contamination is high and disturbing the mold may subject other students and staff to greater exposure.

The Library contents will ultimately have to be removed from the facility and cleaned appropriately off-site. That process could actually start immediately provided the appropriate control measures are in place during the pack-out to assure cross contamination will not occur.

Assured stands ready to assist the Brownsville ISD with the subject facility. At this time, we need approval to proceed with the above and a clear understanding of the lines of responsibility, authority, and accountability.

Sincerely,

H.W. (Bill) Holder
Vice President

Assured Indoor Air Quality, LP • 750 N. St. Paul, #988 • Dallas, Texas 75201 • (214) 855-0222
www.assuredindoorair.com

1

Sep. 16 2001 07:03PM P7    PHONE NO. : 956 585 8212    L

EXHIBIT "B"

**Aiken Elementary School & Besteiro Middle School**

**Time Line:**

| | |
|---|---|
| 08/16/01 | Initial observation of Library, computer room and Kitchen |
| 08/17/01 | BISD authorization to abate mold in Kitchen |
| 08/18/01 | Started abatement of mold in Kitchen |
| 08/19/01 | Completed abatement of mold in Kitchen |
| 08/20/01 | Abatement clearance issued by TTUHSC |
| 09/12/01 | Started and completed cleaning filing cabinets from computer room 122 |
| 10/08/01 | Delivered proposal for Library and computer room 122 projects to BISD |
| 10/16/01 | BISD board approval for Library and computer room 122 projects |
| 10/18/01 | Start Library and computer room 122 projects |
| 10/18/01 | Staff meeting at Aiken and Besteiro |
| 10/24/01 | Parent meeting at Besteiro |
| 10/25/01 | Parent meeting at Aiken |
| 11/05/01 | Texas Department of Health and City of Brownsville Health visit |
| 11/06/01 | Administered survey at both schools |
| 11/12/01 | Delivered survey reports to BISD |
| 11/28/01 | Delivered proposal letter for investigation to BISD |
| 12/04/01 | BISD board authorizes investigation |
| 12/10/01 | Started on-site investigative activities |
| 12/15/01 | Completed on-site investigative activities |
| 01/02/02 | Delivered Report (Executive Summary) to BISD |
| 01/03/02 | Delivered Remediation Proposal (scope, budget, schedule, etc.) to BISD |
| 01/03/02 | Meeting with BISD administration and attorney |
| 01/04/02 | Started cleaning computers and filing cabinets for relocation |
| 01/09/02 | Completed cleaning computers and filing cabinets for relocation |
| 01/07/02 | Received BISD letter directing communication protocol |
| 01/24/02 | Meeting with BISD administration |
| 01/26/02 | Emailed Status Report (abbreviated Executive Summary) to BISD |
| 01/28/02 | Received Subpoena Duces Tecum dated 01/22/02 for Aiken/Besteiro records issued by Cameron County on behalf of plaintiff attorney Peter M. Zavaletta for Case No. 2001-11-4959-C in the 197th District Court |
| 01/31/02 | Texas Department of Health requested the current Assured report on behalf of the Cameron County Health Department |
| 02/05/02 | Meeting with BISD board to walk-thru Aiken/Besteiro |

**Questions:**
1. Can Assured deliver the current reports to TDH and City of Brownsville Health Department?
2. Should Assured complete the Library project without integrating the work plan for Aiken/Besteiro?
3. Does the BISD want Assured to issue a final report with the limited information presently available?
4. Does the BISD want Assured to remediate the schools?



MSJ EXHIBIT

tabbies®

"B"

Aiken/Besteiro                    02/05/02                    Assured I

EXHIBIT



#2

**EXHIBIT "C"**

JUN-10-04 THU 12:51 PM  GAB ROBINS N. A. INC.        FAX NO. 9564232407              P. 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROYAL SURPLUS LINES | § | |
| INSURANCE COMPANY, | § | |
| | § | CIVIL ACTION NO. B-03-109 |
| v. | § | |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |

### AFFIDAVIT OF DENNIS NICKOLOFF

THE STATE OF TEXAS      §
                        §
COUNTY OF CAMERON       §

BEFORE ME, the undersigned authority, on this day personally appeared DENNIS NICKOLOFF, who, being by me first duly sworn, upon his oath according to law, did depose and state the following:

1.  My name is Dennis Nickoloff.  I am over 21 years of age and am competent to make this affidavit.  I have never been convicted of a felony or any other crime involving moral turpitude.  I have personal knowledge of the material facts set forth in this affidavit and those facts are true and correct.

2.  I am employed as an insurance adjuster with GAB Robins North America, Inc. ("GAB").  I have been employed by GAB as an insurance adjuster for 27 years.  I am the adjuster at GAB who was assigned to investigate the claim made by Defendant Brownsville Independent School District ("BISD") for damage to Aiken Elementary School and Besteiro Middle School on or about November 21, 2001.  As the adjuster on this alleged loss, I have the authority and knowledge to make this affidavit.

3.  After Royal was notified of BISD's claim on November 29, 2001, it appointed GAB to act as the adjuster on the claim.  This occurred on December 3, 2001.  GAB sent a letter to counsel for BISD on December 5, 2001 informing them that GAB was hired by Royal to adjust the claim.  The letter also informed them that I would be the adjuster on the claim.  The letter further requested documents in support of the claim.  (GAB's letter is attached to Royal's MSJ I as Exhibit 36).



MSJ EXHIBIT
"C"

4.      On December 11, 2001, I spoke with BISD's counsel about contacting the appropriate person at BISD to schedule an inspection of the schools for me.

5.      On January 21, 2002, I sent a letter to BISD's counsel following up on my request that they contact the appropriate person at BISD to schedule an inspection of the schools for me. I reiterated my request to inspect the schools. I also reiterated to them that we still had no information from them about the claim. (This letter is attached to Royal's MSJ I as Exhibit 42).

6.      On February 26, 2002 I finally was allowed access to the schools. BISD, however, only allowed me to do a walk through and not a full inspection because there was a TRO in place.

7.      On March 20, 2002 I spoke with BISD's counsel who informed me that they would be sending me copies of all the engineering, mold and other studies that had been done at the schools.

9.      On August 22, 2002, I sent a letter to BISD's counsel reminding him that his office informed me on March 20, 2002 that they were going to send me copies of all the engineering, mold and other studies that had been done at the schools but that I had received nothing to date. I asked that the documents be sent at their earliest convenience. (This letter is attached to Royal's MSJ I as Exhibit 37).

10.     On September 26, 2002 I sent another letter to BISD's counsel reiterating GAB's previous requests that they provide us with copies of engineering, mold and other studies that were done on the schools. (This letter is attached to Royal's MSJ I as Exhibit 38).

11.     On October 25, 2002 I sent another letter to BISD's counsel again reiterating GAB's previous requests that they provide us with copies of all engineering, mold and other studies that were done on the schools. (This letter is attached to Royal's MSJ I as Exhibit 39).

12.     On November 4, 2002, a lawyer by the name of Miguel Saldana called to inform me that he was "general counsel" for BISD. He also informed me at that time that BISD had hired EFI, Inc. to investigate the schools on BISD's behalf and that he would provide me with a copy of EFI's final report. That was the first knowledge I had that BISD had hired EFI and that EFI had any connection to the two schools.

13.     I have never recommended to BISD or its counsel that it hire EFI. I have never approved BISD's hiring of EFI. Further, I was never asked by BISD or its counsel to recommend or approve any companies, much less

EFI. I was never asked by BISD or its counsel to approve their hiring of EFI.

14.   I never told BISD or its counsel at any time that cost estimates, investigation, findings, and costs produced by EFI would be honored by Royal. Therefore, I never led BISD to believe same. Further, I never represented to BISD or its counsel that if EFI were hired, Royal would pay their costs for the losses as found by EFI. Nor could I, as I do not have, and never said I have, authority to accept or deny coverage on Royal's behalf. In fact, I never had any discussions with BISD or its counsel about Royal paying for cost estimates, investigation, findings, and costs produced by EFI. In addition, I never had any discussions with BISD or its counsel about Royal paying for the repair costs for the losses as found by EFI.

15.   On November 8, 2002, I received a letter from BISD's counsel, Miguel Saldana, informing me that he would forward a copy of EFI, Inc.'s final report as soon as he received it, which he anticipated to be in early or mid December 2002. (A true and correct copy of that letter is attached as Exhibit "D" to Royal's Motion for Summary Judgment on BISD's Extra-Contractual Counterclaims).

16.   On January 22, 2003, counsel for BISD (Ramon Garcia and Baltazar Salazar) finally provided some documentation regarding the schools. This was almost a year after we had originally requested documents. I personally went to Ramon Garcia's office to pick up the documents, which were four reports, two of which, based on their dates of creation, BISD had in its possession for a long time. I met with Ramon Garcia and Baltazar Salazar for about an hour. At that time, they conceded that they did not believe that all of the damage at the schools was covered by the Royal policies. They further advised that they felt an extremely conservative figure for the claim was $10 million. Mr. Garcia also provided me with a letter stating this as well. (This letter is attached to Royal's MSJ I as Exhibit 45).

17.   On February 21, 2003, I sent a letter to BISD's counsel asking for additional documentation. I reminded them that we had been requesting and patiently waiting for the information for a year. In that letter I also requested that BISD make those persons with the most knowledge of the problems at the schools available for Examinations Under Oath as provided for in the policy. I also acknowledged that I was in receipt of BISD's January 23, 2003 sworn Proof of Loss, but that it was being rejected because it lacked the required information. I enclosed another proof of loss form and asked them to resubmit it with the necessary information. To date, BISD has failed to do so. I further informed BISD's counsel in that letter that Royal had retained counsel. I also asked

# 518633                          3

for information as to when additional materials would be available and for
specifics on the status of repairs, remediation, etc. (This letter is attached
to Royal's MSJ I as Exhibit 40).

FURTHER AFFIANT SAYETH NOT.

_____
DENNIS NICKOLOFF

SWORN TO AND SUBSCRIBED this *10th* day of June 2004.



_____
Notary Public in and for
the State of Texas

# 518633                                    4

EXHIBIT "D"

11/08/2002  13:31    9565423651                      JACK G CARINHAS JR

LAW OFFICE OF
# MIGUEL A. SALDAÑA
302 Kings Highway, Suite 109
Brownsville, Texas  78521

Tel:    (956)641-8555                                    Fax:    (956)-542-3651

November 8, 2002

<u>Via Fax (956)423-2407</u>
Mr. Dennis Nickoloff
GAB Robins N.A., Inc.
632 Ed Carey Drive Suite 700
Harlingen, TX.  78550

                              Re:    Brownsville Independent School District-
                                     Mold Claim- Aiken Besteiro

Dear Mr. Nickoloff,

        This letter serves to document our conversation of November 7, 2002.  As you are aware
by now that I represent Brownsville Independent School District (BISD) as general counsel.  I
will be taking over the representation of the district in regards to this claim.

        Additionally, as we discussed you agreed to accept and I agreed to make available the final
report of EFI, Inc.  I will forward a copy of said report as soon as it becomes available to me,
which will probably occur in early or mid December 2002.

        If you have any questions or comments please contact my office.

        Thank you for your courtesies in this matter.

                              Very truly yours,

                              Miguel A. Saldaña

                              Miguel A. Saldaña

MAS/lr

```
MSJ EXHIBIT
  "D"
```

11/08/2002  13:31   9565423651                  JACK G CARINHAS JR                        PAGE  01

Law Office of
# MIGUEL A. SALDAÑA
302 Kings Highway, Suite 109
Brownsville, Texas 78521

Tel: 956/541-6555                                        Fax: 956/542-3651

## FAX TRANSMISSION COVER SHEET

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INTENDED
RECIPIENT.  BOTH THE INDIVIDUAL OR AGENT RESPONSIBLE TO DELIVER IT TO THE
INTENDED RECIPIENT AND THE INTENDED RECIPIENT ARE HEREBY NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION OR COPYING OF THIS TRANSMISSION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO THIS
OFFICE AT THE ABOVE LISTED ADDRESS VIA THE U.S. POSTAL SERVICE.

**Please deliver the following pages to:**

Name: _Mr. Dennis Nickoloff_

Company: _GAB Robins N.A. Inc_

Fax Number(s): _423-2402_

From:   **Miguel A. Saldaña**

Sender:   Lupita Rocha          Time Sent _____.m.

Re: _BISD  Mold Claim - Aikens - Bestens_

Total Number of Pages (including cover page): _2_

Date: _11-8-02_

**— MESSAGE —**

COMMENTS:

_____
_____
_____
_____

If you experience difficulty receiving this transmission or do not receive all the
pages, please call Lupita Rocha at 956-541-6555.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROYAL SURPLUS LINES<br>INSURANCE COMPANY | §<br>§<br>§ | |
| vs. | §<br>§ | CIVIL ACTION NO. B-03-109 |
| BROWNSVILLE INDEPENDENT<br>SCHOOL DISTRICT | §<br>§ | |

## AFFIDAVIT OF JAY W. BROWN

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day, personally appeared JAY W. BROWN, who, being by me first duly sworn, upon his oath according to law, did depose and state the following:

"My name is Jay W. Brown. I reside in the State of Texas. I am over the age of twenty-one (21) years and am competent to make this affidavit. I have never been convicted of a felony or any other crime involving moral turpitude. I have personal knowledge of the facts set forth in this affidavit, and those facts are true and correct.

I am an attorney licensed to practice in the State of Texas. I am the attorney of record for Royal Surplus Lines Insurance Company in the above-styled and numbered cause. Attached hereto as Exhibits "A" and "B" are copies of documents that were produced by Brownsville Independent School District and were attached as exhibits to the Examinations Under Oath of Raul N. Vasquez, Fred Fuller, and Oscar Tapia, taken on May 30, 2003 and June 2, 2003. The documents attached hereto are true and correct copies of the originals."

FURTHER AFFIANT SAYETH NOT.

_____
Jay W. Brown

SWORN TO AND SUBSCRIBED this 10th day of June, 2004.

_____
Notary Public in and for the State of Texas

S KAYE JONES
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
AUG. 9, 2004

#519200.1



MSJ EXHIBIT

"E"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROYAL SURPLUS LINES | § | |
| INSURANCE COMPANY | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-03-109 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |

### AFFIDAVIT OF JAY W. BROWN

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day, personally appeared JAY W. BROWN, who, being by me first duly sworn, upon his oath according to law, did depose and state the following:

"My name is Jay W. Brown. I reside in the State of Texas. I am over the age of twenty-one (21) years and am competent to make this affidavit. I have never been convicted of a felony or any other crime involving moral turpitude. I have personal knowledge of the facts set forth in this affidavit, and those facts are true and correct.

I am an attorney licensed to practice in the State of Texas. I am the attorney of record for Royal Surplus Lines Insurance Company in the above-styled and numbered cause. Attached hereto as Exhibits "A" and "B" are copies of documents that were produced by Brownsville Independent School District and were attached as exhibits to the Examinations Under Oath of Raul N. Vasquez, Fred Fuller, and Oscar Tapia, taken on May 30, 2003 and June 2, 2003. The documents attached hereto are true and correct copies of the originals."

FURTHER AFFIANT SAYETH NOT.

Jay W. Brown

SWORN TO AND SUBSCRIBED this 10th day of June, 2004.

S KAYE JONES
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
AUG. 9, 2004

Notary Public in and for the State of Texas

#519200.1



MSJ EXHIBIT
"E"

# EXHIBIT "F"

Not Reported in S.W.3d
(Cite as: 2001 WL 1412951 (Tex.))

**Page 1**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Supreme Court of Texas.

ALLSTATE INSURANCE COMPANY, Petitioner
v.
Rhonda BONNER, Respondent

No. 00-0282.

June 21, 2001.

On Petition for Review from the Court of Appeals
for the Third District of Texas.

JUDGMENT

ABBOTT.

*1 THE SUPREME COURT OF TEXAS, having
considered petitioner's motion for rehearing, is of the
opinion that the motion should be granted. The Court
withdraws its judgment of May 10, 2001, and
substitutes the judgment issued today.

The Court, having heard this cause on petition for
review from the Court of Appeals for the Third
District, and having considered the appellate record
and the argument of counsel, is of the opinion that the
judgment of the court of appeals should be reversed
in part.

IT IS THEREFORE ORDERED, in accordance with
the Court's opinion, that:
    1) The court of appeals' judgment awarding
    Rhonda Bonner attorney's fees and costs is
    reversed;
    2) Judgment is rendered that Rhonda Bonner take
    nothing;
    3) Allstate Insurance Company shall recover, and
    Rhonda Bonner shall pay, the costs incurred in
    this Court, the court of appeals and the trial court.
    4) The court of appeals' opinion is ordered

published pursuant to TEX. R. APP. P. 47.3(d).

A copy of this judgment and of the Court's opinion is
certified to the Court of Appeals for the Third District
and to the County Court at Law No. 2, of Travis
County Texas, for observance.

2001 WL 1412951 (Tex.)

Briefs and Other Related Documents (Back to top)

. 2000 WL 34235003T2 (Appellate Brief) Allstate
Insurance Company's Reply Brief (Sep. 01,
2000)Original Image of this Document (PDF)

. 2000 WL 34235004T2 (Appellate Brief)
Respondent, Rhonda Bonner's Brief (Aug. 17,
2000)Original Image of this Document (PDF)

. 2000 WL 34235006T2 (Appellate Brief) Allstate
Insurance Company's Brief (Jul. 31, 2000)Original
Image of this Document (PDF)

. 2000 WL 34235079T2 (Appellate Filing) Brief of
Amicus Curiae Southern Farm Bureau Casualty
Insurance Company and Texas Farm Bureau Mutual
Insurance Company in Support of Petition for Review
(Jul. 18, 2000)Original Image of this Document with
Appendix (PDF)

. 2000 WL 34235081T2 (Appellate Filing) Allstate
Insurance Company's Reply to Respondent Rhonda
Bonner's Response (Jun. 19, 2000)Original Image of
this Document (PDF)

. 2000 WL 34235082T2 (Appellate Filing)
Respondent, Rhonda Bonner's Response to the
Petition for Review (Jun. 09, 2000)Original Image of
this Document (PDF)

. 2000 WL 34235080T2 (Appellate Filing) Allstate
Insurance Company's Petition for Review (Mar. 21,
2000)Original Image of this Document (PDF)

. 2000 WL 34235005T2 (Appellate Brief) Amicus
Curiae Brief (2000)Original Image of this Document
(PDF)

END OF DOCUMENT



Copr. © West 2004 No Claim to Orig. U.S. Govt. Works