# EXHIBIT "A"

**BEIRNE, MAYNARD & PARSONS, L.L.P.**

1300 POST OAK BOULEVARD
SUITE 2500
HOUSTON, TEXAS 77056-3000

(713) 623-0887
FAX. (713) 960-1527

STEPHEN R. WEDEMEYER
PARTNER

Direct Dial (713) 960-7349
E-mail: swedemeyer@bmpllp.com

October 5, 2004

**VIA FAX (281) 749-8104**
Mr. Baltazar Salazar
1612 Winbern
Houston, Texas 77004

RE: Civil Action No. B-03-109; *Royal Surplus Lines Insurance v. Brownsville Independent School District*; In the United States District Court for the Southern District of Texas, Brownsville Division.

Dear Mr. Salazar:

I write to you about several outstanding issues. Your prompt response is necessary in light of the October 15 and 29 discovery deadlines looming. With all of our busy schedules, it is important that we plan now. If I do not hear from you by the end of the business day on October 7, 2004, Royal will simply notice up the depositions and file (or simply re-urge) its discovery motions at our convenience.

## BISD CORPORATE REPRESENTATIVE DEPOSITIONS

BISD failed to comply with the Federal Rules in response to Royal's FRCP 30(b)(6) deposition notice that was served on BISD on July 14, 2004. There were numerous topics in the second amended deposition notice for which BISD wholly failed to designate and produce a witness. Royal was ready and willing to proceed on July 21-23 with any and all corporate representatives offered by BISD for deposition in response to the deposition notice. BISD never made any objection to or filed any motion for protection in relation to the deposition notice. Nevertheless, the five witnesses offered by BISD were unable to testify on all the topics requested by Royal's notice, and were unprepared for even the topics on which they were designated.

The 30(b)(6) topics in Royal's notice on which *no-one was designated or presented by BISD* include the following (Nos. 4, 5, 6, 8, 9, 11, 12, and 21):



EXHIBIT A

Mr. Baltazar Salazar
October 5, 2004
Page 2

4. The nature, type, location and scope of property damage made the subject of BISD's insurance claim against Royal and this lawsuit;

5. The number of occurrences made the basis of BISD's subject claim;

6. For each "occurrence" or "loss" made the basis of BISD's subject claim, (i) the date the occurrence or loss "commenced" at Aiken or Besteiro, (ii) the date the occurrence or loss was reported to Royal, (iii) the date the occurrence or loss was discovered, (iv) the cause(s) of the occurrence or loss, and (v) the resulting damage (including the particular area of the school alleged to have been damaged);

8. Whether BISD agrees with conclusions and recommendations in the Assured Indoor Air Quality, L.P. Status Report to BISD dated January 25, 2002, and if not, why not;

9. Whether BISD agrees with the conclusions and recommendations in the Ambiotec Environmental Consultants, Inc. Report to BISD dated May 2002 (entitled "Preliminary Mold Investigation"), and if not, why not;

11. Whether BISD agrees with the allegations it made in BISD's Original Third-Party Petition in Cause No. 2003-08-4078-E, *American Standard, et al. vs. BISD and Al Cardenas Masonry, Inc., et al.*, In the 357th District Court of Cameron County, Texas, and if not, why not;

21. The factual basis for BISD's contention in ¶12(b) of BISD's Second Amended Counterclaim that "Royal's liability is reasonably clear," including the date on which BISD alleges that Royal's liability became reasonably clear.

In addition, with regard to several additional topics, BISD failed to designate a corporate representative as to the entire topic, the witness claimed during the deposition that he was unable to testify on the entire topic, the witnesses claimed that he would need to consult documents or others (which was not done in preparation for the deposition), or BISD's counsel prevented the witness from testifying on all issues included in the topic. These corporate representative deposition topics are numbered 1, 2, 10, 13, 14, 16, 20, and 22:

Mr. Baltazar Salazar
October 5, 2004
Page 3

A. **Deposition Topic No. 1**

1. BISD's damages, including the amount of and basis for the categories of damages sought by BISD, including without limitation those categories listed by BISD in their January 16, 2004 interrogatory responses, to wit:

    - past repair and reconstruction costs,
    - present repair and reconstruction costs,
    - future repair and reconstruction costs,
    - past remedial costs to clean up moisture build-up and contamination,
    - present remedial costs to clean up moisture build-up and contamination,
    - future remedial costs to clean up moisture build-up and contamination,
    - past costs to repair construction defects and compliance with ADA building codes,
    - present costs to repair construction defects and compliance with ADA building codes,
    - future costs to repair construction defects and compliance with ADA building codes,
    - costs to retain professional architects,
    - costs to retain professional engineers,
    - costs to retain independent contractors,
    - costs for past inspections for mold and humidity testing in the buildings,
    - costs for present inspections for mold and humidity testing in the buildings,
    - costs for future inspections for mold and humidity testing in the buildings,
    - costs of labor to properly remediate contaminated schools,
    - equipment replacement costs,
    - relocation costs for temporary facilities for both schools,
    - costs associated with busing students to temporary facilities,
    - loss of funding from the State of Texas based on loss of average daily attendance, and
    - attorney's fees;

    BISD failed to produce one or more witnesses that could address all the matters included in Topic No. 1. BISD's witnesses could not could identify all the damages categories, amounts or bases for the various damage categories, including details of

Mr. Baltazar Salazar
October 5, 2004
Page 4

claimed repair and remediation expenses, claimed relocation expenses, "future" costs claimed by BISD, the claimed cost of bussing students, and the alleged loss of funding from the State of Texas based on the alleged loss of average daily attendance at the schools.

Furthermore, BISD was unable to offer testimony or identify any document that identifies the number of square feet of ceiling tiles and sheetrock that was replaced at the schools in the various rooms, despite these damage items being part of BISD's claim. (*See* Oscar Tapia Deposition, pp. 96-105, and 195; Hector Gonzalez Deposition, pp. 49-50, and 59-60). One witness explained that, based on EFI's drawings, he *could* tell which rooms had sheetrock or ceiling tiles scheduled to be replaced, but could *not* identify the quantities or locations in each room. (Oscar Tapia Deposition, pp. 174-176) BISD's witnesses could not identify any documents that would identify the locations and quantities, and no such documents have been produced to date by BISD. Since this information and these documents are responsive to discovery, and were within the scope of the deposition notice, Royal will object to any such evidence later offered by BISD. **If you have some document or witness that you have held out on, please identify the evidence immediately so that Royal can examine the document and depose any such witnesses.**

Many witnesses indicated that a 7th AIA Payment Application form (and perhaps other subsequent ones) has been submitted to the district in connection with the repairs to the schools in 2003-2004. To date, BISD has only produced AIA Applications Nos. 1-6 (produced in February/March 2004). I wrote to you about these missing documents long before the July 21-23 depositions. In my June 10, 2004 letter, I wrote:

> Included in BISD's supplemental production from February/March 2004 were AIA Applications and Certifications for Payment Forms Nos. 1-6, which includes the period up to and including January 31, 2004. Based upon my previous conversation with you and BISD's production documents, my understanding is that Satterfield & Pontikes' work at the schools continued at least into February 2004. So, I suspect there is an AIA application No. 7, and perhaps others as well.
>
> In light of the corporate representative depositions scheduled for next week in Brownsville, which will focus on BISD's claimed damages, **I would ask that BISD immediately produce all additional AIA forms and "back-up" documents for the period beginning February 1, 2004.** Further, if BISD intends to rely on any other or additional documents to attempt to prove the amount

Mr. Baltazar Salazar
October 5, 2004
Page 5

or type of its damages, they should be produced immediately to Royal. I do not want to proceed on Wednesday with the corporate representative's deposition unless Royal has complete information.

I again mentioned the matter of the missing AIA forms during the July 2004 depositions. (*See* Oscar Tapia Deposition, pp. 118-120; Lorenzo Sanchez Deposition, pp. 12-13; Hector Gonzalez Deposition, pp. 32-34; and Tony Fuller Deposition, pp. 21-22, 50-51). Nevertheless, BISD has refused to supplement its production with the AIA form(s) that follow No. 6. Please be advised that Royal will object to any evidence offered of any repair cost that is not included in the AIA payment application forms produced to date -- *i.e.*, Nos.1-6.

Similarly, BISD has not produced any EFI invoices that follow the December 23, 2003 EFI Invoice to BISD. Such invoices would apparently encompass work by EFI on the project since December 18, 2003. The EFI invoices are responsive to discovery requests served long ago. BISD's witnesses testified that the invoices exist and the amounts invoiced by EFI could be determined by simply accessing the BISD computer system, but without such information, they could not provide the dates or amounts. (*See* Oscar Tapia Deposition, pp. 139-140; Hector Gonzalez Deposition, pp. 43-44; and Tony Fuller Deposition, p. 50). Due to BISD's failure to produce all the EFI invoices for which payment is sought by BISD, be advised that Royal will object to any evidence offered by BISD as to amounts paid to EFI that are not reflected in EFI invoices up to and including the December 23, 2003 invoice.

With regard to BISD's alleged damages set forth in its ledger entries produced to date (including tens of thousands of dollars of unexplained invoices, vendors' charges, equipment and supplies), Royal needs the detailed back-up materials (purchase orders, invoices, checks, memos, etc.) for the various expenses listed in the ledger entries. These materials are responsive to discovery served ten months ago inquiring as to BISD's claimed damages. Expenses on the ledgers produced by BISD include expenses from vendors such as Academy Sports & Outdoors, the Public Utilities Board, Delta Education, and Sam's Club. Royal needs the detailed back-up materials in order to see determine precisely what items were purchased, when they were purchased, and specifically why they were purchased (*i.e.*, how they allegedly relate to conditions at Aiken and Besteiro). BISD's witnesses were unable to explain the ledger entries. (*See* Hector Gonzalez Deposition, pp. 61-64; and Tony Fuller Deposition, pp. 82-83, 90-94., 101-103, 105-107, and 110). Mr. Fuller repeatedly testified that he could not explain the items listed in the dozens of pages of ledger entries without looking at the detailed "back-up" information that is maintained in BISD's accounting files.

Mr. Baltazar Salazar
October 5, 2004
Page 6

Tony Fuller testified that he did not know for sure whether vendors other than EFI, AIAQ and Satterfield & Pontikes had been used and paid for work at the schools included in BISD's claim. He said that any such vendors, and the amounts paid to them, could easily be identified by BISD printing a "general ledger expenditure report" from BISD's computerized accounting system. (Tony Fuller Deposition, pp. 25-29). Mr. Fuller also explained that he could similarly print a report that captures all the costs associated with the evaluation, repair and reconstruction at the two school. (Tony Fuller Deposition, pp. 40-42). Although such reports are responsive to long-outstanding discovery requests, and would have facilitated the deposition of BISD's corporate representative on damages issues, BISD has failed to produce such reports. Accordingly, Royal will object to any evidence offered by BISD to suggest that BISD paid any contractors other than EFI, Satterfield & Pontikes and AIAQ, or any items not otherwise listed in the scant damages documents produced to date by BISD.

Since December 2003, Royal has demanded that BISD produce all the documents to support its damages claim, including campus relocation costs. Before the depositions in July 2004, BISD had never produced any evidence of what it actually cost BISD to move back to the repaired schools in March 2004 from the temporary campuses. BISD had simply estimated the amounts as totaling $1.9 million. The amount and basis for relocation costs were included as topic numbers 1 and 2 in Royal's second amended deposition notice. BISD failed to produce a witness that could testify as to the relocation amounts.

Mr. Fuller did, however, testify that (i) the amount of $1.9 million was simply an estimate of what it typically costs BISD to set up and furnish two new schools, (ii) the actual amount for moving back to the Aiken and Besteiro campuses was less than $1.9 million (per Mr. Fuller, "it's *not* in the neighborhood of $1.9" million), and (iii) BISD could easily generate a report to document the *actual* costs, as opposed to the inflated estimated amount previously provided to Royal. (*See* Tony Fuller Deposition, pp. 32-33, and 37-39). BISD has continued to avoid its discovery obligations and has never produced such a report documenting its actual costs. As a result, Royal will seek to bar any evidence of any alleged damages related to BISD relocating back to the repaired campuses in or around March 2004.

B. **Deposition Topic No. 2**

2.   The total amount of damages claimed by BISD, and the calculation of such amount, including but not limited to a description of what each dollar of damages claimed by BISD was spent on by BISD, and the cause of such damage;

Mr. Baltazar Salazar
October 5, 2004
Page 7

BISD's witnesses could not even identify all of BISD's alleged "out-of-pocket" damages, much less any other damages that may be claimed. Further, the witness designated on topic No. 2, Mr. Fuller, expressly stated that he could not address the causation element included in the topic. (*See* Tony Fuller Deposition, pp. 6, and 14-15).

### C. Deposition Topic No. 10

10. Whether BISD agrees with the findings, observations, and conclusions in the Engineering & Fire Investigations Report to BISD dated January 20, 2003 (entitled "Remediation Evaluation Assessment"), and if not, why not.

Although BISD's designated witnesses on Topic No. 10, BISD's counsel refused to allow BISD's witnesses to testify as to whether BISD agrees or disagrees with the findings, observations and conclusions in the EFI January 20, 2003 report to BISD. This was remarkable in light of the fact that BISD hired EFI in the Fall of 2002 to *determine the cause* of the humidity, mold and other problems at the school, and later hired EFI to oversee the repair and remediation work at the school in 2003-2004.

### D. Deposition Topic No. 13

13. Any alleged accidental discharges or leakages of water as the direct result of the breaking apart or cracking of any part of a system or appliance at Aiken or Besteiro containing water or steam that allegedly caused any damage made the subject of BISD's insurance claim against Royal or this lawsuit, including the location of such alleged breaks/cracks, the cause and timing of same, the allegedly resulting damage, the date of discovery of the resulting damage, and the dollars spent to repair the damage resulting from each alleged "breaking apart" or "cracking" incident;

BISD's witnesses were unable to identify any specific accidental discharge or leakage of water as the direct result of the breaking apart or cracking of any part of a system or appliance at Aiken or Besteiro containing water or steam that allegedly caused any damage made the subject of BISD's insurance claim. This was remarkable in light of the fact that, based on upon BISD's Response to Royal's First Motion for Summary Judgment, according to BISD, "water damage" is the covered cause of loss it has identified under the Royal Policies.

Mr. Baltazar Salazar
October 5, 2004
Page 8

Despite BISD's claim that "water damage" results in coverage for some or all of its alleged losses, BISD witnesses could not identify any location of a broken or cracked pipe containing water, the cause and timing of same, any damage caused by such a crack or break, or any amount spent to fix the allegedly resulting damage near the break or crack. As a result, Royal will object to any evidence of "water damage" later offered by BISD.

### E.  Deposition Topic No. 16

16. Any alleged misrepresentation to BISD allegedly made by or on behalf of Royal, any alleged reliance thereon, and any allegedly resulting damage;

BISD's witness, Mr. Saldana, was unable to identify any particular damage that BISD alleges was caused by an alleged misrepresentation. (*See* Miguel Saldana Deposition, pp. 88-98). Thus, Royal will object to any alleged damage evidence later offered by BISD.

### F.  Deposition Topic No. 20

20. The factual basis for BISD's contention that Royal has never submitted a reservation of rights letter (see ¶12 d.2 of BISD's Second Amended Counterclaim);

BISD's witness on this topic, Mr. Saldana, was unprepared on this topic and thus, was unable to articulate the basis for BISD's contention that Royal never submitted a reservation of rights letter to BISD. Indeed, Mr. Saldana admitted he had not even reviewed the entire file to determine whether any such letter had been received from Royal by BISD.

### G.  Deposition Topic No. 22

22. BISD's retention of and relationship with EFI with regard to the Aiken and Besteiro schools, including but not limited to the timing and reason(s) for BISD hiring EFI, the identity of who at BISD decided to hire EFI, any related contract/agreement between BISD and EFI, the amounts paid to EFI by BISD, whether BISD agrees or disagrees with BISD's findings, the scope and date of services provided to BISD by EFI, BISD's knowledge of any relationship between GAB Robins and EFI, when and how BISD

Mr. Baltazar Salazar
October 5, 2004
Page 9

>learned of an alleged relationship between GAB Robins and EFI, and any alleged communications between BISD and (i) Royal and/or (ii) GAB Robins concerning EFI.

As addressed above with regard to Topic No. 10, BISD's counsel refused to allow BISD's witnesses to testify as to whether BISD agrees or disagrees with EFI's findings, observations and conclusions concerning the schools. Plus, the witnesses claimed ignorance concerning the topic. (*See* Oscar Tapia Deposition, pp. 126-130; Hector Gonzalez Deposition, pp. 22-26; and Miguel Saldana Deposition, p. 52). Hence, please be advised that Royal will object to any evidence offered by BISD that BISD claims contradicts, refutes or disagrees with the any findings, observations and conclusions in EFI's January 20, 2003 Report to BISD's counsel.

Furthermore, BISD could not identify (and has not produced documentation of) how much has been paid to EFI to date. BISD admitted that the EFI invoices produced to date to Royal are incomplete, but the witnesses could not identify the dollar amounts of the missing invoices. BISD also could not (or, at least would not) testify as to specifically when and how BISD learned of EFI's relationship with GAB. These issues were specifically included in Topic No. 22 because BISD has made the GAB-EFI relationship the lynchpin of its nebulous misrepresentation/bad faith claims against Royal.

## BISD'S NUMEROUS DEFICIENT DISCOVERY "RESPONSES"

BISD has continued to refuse to appropriately or completely respond to Royal's written discovery. Many requests have simply been ignored by BISD, while BISD, in response to other requests, has vaguely referenced its entire document production, regardless of whether the production contains any documents responsive to the request. BISD has also failed to comply with the Federal Rules by either producing the documents as maintained by BISD in the ordinary course of its business, or by labeling the documents according to the particular discovery request to which they allegedly correspond.[1]

---

[1] BISD's position that Royal should simply look to "Defendant's business records" pursuant to Rule 33(d) is faulty. Rule 33(d) is not applicable when a party is asked to identify its contentions. Rule 33(d) only applies when the "burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." With many of its interrogatories, Royal seeks to discovery BISD's contentions. When reviewing BISD's 20,000-30,000 business records (comprised of documents created by dozens of entities over the course of more than ten years), how is Royal supposed to ascertain what BISD contends about BISD's insurance

Mr. Baltazar Salazar
October 5, 2004
Page 10

Further, in response to other discovery requests, BISD simply referenced the expert deadline, which has now long since passed, despite the fact that the expert "reports" BISD later produced were not responsive to the discovery requests.

For other requests, BISD has simply provided incomplete responses and refuses to supplement, despite promises to counsel and to the Court that supplemental responses would be forthcoming.

The many deficiencies in BISD's discovery responses are detailed in Royal's prior (March 8, 2004) Motion to Compel and numerous letters to counsel. A few of the more glaring deficiencies, which were brought to BISD attention before March 2004, are summarized below and require BISD's immediate attention:

### A. Number and Cause of Occurrences, and Resulting Damage

**Interrogatory No. 3**: For each "occurrence" or "loss" made the basis of BISD's Subject Claim, please identify (i) the **date** the occurrence or loss **"commenced"** at Aiken or Besteiro, (ii) the date the occurrence or loss was **reported** to Royal, (iii) the date the occurrence or loss was **discovered**, (iv) the **cause(s)** of the occurrence or loss, (v) the **resulting damage** (including the particular area of the school alleged to have been damaged), and (vi) what, if anything, has been done to date to **repair**, remediate, minimize, remove or mitigate the claimed damage.

BISD continues to refuse to provide any substantive response to this interrogatory, including the date(s) of the occurrence(s) or loss(es) that BISD contends form the basis for its "multi-million dollar" insurance claim made almost 3 years ago. BISD has also refused to identify when the resulting property damage manifested.

---

claim? The suggestion that Royal is supposed to somehow identify BISD's contentions by studying BISD's entire document production is absurd.

Furthermore, even if Rule 33(d) was applicable to contention interrogatories such as Interrogatory No. 3, BISD has not complied with the Rule's requirement that the responding party's "specification of the records from which the answer may be derived or ascertained" be "in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." BISD has not, of course, directed Royal to a letter, memorandum, expert report, or other document that identifies when each claimed loss occurred, when the resulting damage was discovered, what caused the damage, or other basic information about BISD's claim for more than $10 million. Royal is not required to guess what BISD contends, and then simply wait until trial to find out it if it guessed correctly. If BISD's true position is that it does not know the answer to the questions posed by Royal's interrogatories, BISD should so state in its discovery responses. If BISD so swears in response to Royal's discovery, Royal will seek to preclude BISD from adducing any evidence that contradicts BISD's position that it "does not know."

Mr. Baltazar Salazar
October 5, 2004
Page 11

Furthermore, BISD has failed to identify the particular damage that BISD claims resulted from the various causes, as is its burden under Texas law. This allocation issue, of course, was made the subject of Royal's *Celotex* "No-Evidence" Motion for Summary Judgment filed on June 10, 2004. Further, the issue of allocation was included in Topic No. 6 of Royal's July 14, 2004 deposition notice to BISD. Nevertheless, BISD has offered no evidence of any allocation of its alleged damages among the many causes of loss. BISD's corporate representatives admitted that they could provide no allocation evidence. (*See* Oscar Tapia Deposition, p. 164; Lorenzo Sanchez Deposition, p. 11; and Hector Gonzalez Deposition, p. 45).

Instead of complying with its obligations under the Federal Rules of Civil Procedure, in response to Interrogatory No. 3, BISD simply refers to BISD's "business records" and objects that the response requires expert testimony. BISD's deadline to designate experts and produce comprehensive reports passed on March 1, 2004. BISD's expert designations and reports, however, do not answer, or even address the subject matter of, this interrogatory. In light of the Court's repeated admonitions that BISD will not be permitted to offer any previously undisclosed evidence, Royal again implores BISD to provide a complete response to this interrogatory and fulfill its duties under the Royal Policies and Texas law. If BISD claims to have fact or expert evidence it claims is responsive to this discovery request, BISD should produce it now. Royal will object to any "evidence" offered by BISD that has not been produced in this lawsuit.

### B.   "Water Damage"

**Interrogatory No. 4**: Identify any and all any **accidental discharges or leakages of water** as the direct result of the **breaking apart or cracking** of any part of a system or appliance at Aiken or Besteiro containing water or steam that caused any damage made the subject of the Subject Claim or claimed in this lawsuit. (For each occurrence identified, your response should include: date; precise location of the event; identity of system containing water or steam; how, when and by whom the event was discovered; and any resulting water and/or mold damage).

The Royal Policies define the term "water damage" very precisely. Royal has asked that BISD identify any claimed "water damage" so that Royal may investigate and assess potential coverage under the policies for any such "water damage." BISD has refused to respond to this interrogatory and identify any such accidental discharges or

Mr. Baltazar Salazar
October 5, 2004
Page 12

leakages of water at Aiken or Besteiro that allegedly caused any damage claimed in this lawsuit. If BISD, like Royal, is aware of none, BISD should so state in its response. Otherwise, BISD should identify the responsive leaks and discharges in an amended response. After all, it is BISD's burden under Texas law to prove that its claim comes within the coverage of any Royal policy.

While Mr. Oscar Tapia, BISD's corporate representative, vaguely referenced an unspecified alleged problem with one or more roof drain hubs at the schools that was discovered in 2003 or 2004, he was unable to identify the locations or even the number of drains that were problematic. (Oscar Tapia Deposition, pp. 145-148). Mr. Tapia admitted that he had not seen any documents identifying the location of any cracked pipe or fixture, had never seen the allegedly cracked or loose drain hubs, did not know what had caused the alleged failures, did not know when the problem began, could not identify any interior damage to the schools caused by the drain hubs, and did not know what amounts were spent to fix any damage surrounding the drain hubs. (Oscar Tapia Deposition, pp. 148-152).

Further, BISD has produced no documentary evidence of any crack or break in a pipe or fixture containing water, or any damage caused by same. (Further, no fact or expert witness has been identified as having such knowledge, despite Judge Hanen ordering BISD to do so on June 29, 2004.) In its June 3, 2004 Response to Royal's Motion for Summary Judgment, BISD cited an EFI "site inspection report dated July 17, 2003" allegedly identifying a "broken PVC condensate drain pipe" that damaged Aiken classroom A107. The report, however, was not attached to BISD's summary judgment response, has not been produced by BISD before or during this lawsuit, and was not produced by EFI on October 1, 2004 in response to Royal's subpoena for all of EFI's documents concerning the schools. If such a report exists, it should have been produced long ago by BISD. In light of BISD's failure to produce the report (if it even exists), Royal will object to its admission (or any other alleged "evidence" of "water damage" at the schools) if BISD later seeks to offer it into evidence.

As I mentioned to you and to Mr. Oscar Tapia during Mr. Tapia's July 22, 2004 deposition, BISD *has* produced EFI Field Reports Nos. 1, 3, 4 and 5. (*See* Oscar Tapia Deposition, pp. 201-202) Field Report No. 2, however, if it even exists, was not produced by BISD. Because BISD has refused to supplement its production with the second field report of EFI, Royal will object if BISD later attempts to introduce any Field Report, other than the four Field Reports produced by BISD – *i.e.*, Nos. 1, 3, 4 and 5.

Mr. Baltazar Salazar
October 5, 2004
Page 13

### C.  BISD's Settlement Agreements

**Interrogatory No. 5:** Please identify the terms of any and all oral or written Mary Carter agreements, **settlement agreements**, compromises, covenants not to sue, hold harmless agreements, indemnity agreements, procedural agreements, "understandings", releases or any similar agreement between BISD and any other person or entity that relates to (1) **water damage or mold** or other fungal contamination at or construction or maintenance of the **Subject Schools**, or (2) the events and issues giving rise to this lawsuit and/or the Subject Claim.

**First Request for Production No. 71:** Any and all Mary Carter agreements, settlement agreements, compromises, covenants not to sue, hold harmless agreements, indemnity agreements, procedural agreements, "understandings," releases or any similar agreement between BISD and any other person or entity that relates to (1) water damage, mold or other fungal contamination at, or the construction or maintenance of one or more of the subject schools since 1994, or (2) the events and issues giving rise to this lawsuit, and/or the subject claim.

**Second Request for Production No. 18:** Any and all documents reflecting any payments made to BISD by or on behalf of any contractor involved in the design or construction of the Subject Schools as a result of any claim asserted by BISD (during or outside of litigation) relating to water leaks, water intrusion, water damage, plumbing or HVAC problems, excessive humidity, mold, mildew, or fungal contamination at Aiken and/or Besteiro.

Royal, of course, is entitled to know the amount of dollars paid to BISD for essentially the same damage claimed against Royal. BISD's corporate representative, Miguel Saldana, confirmed during his deposition on July 23, 2004, that BISD has settled with RBM Engineering, the Mijares Mora Group and CRC Engineering for a total of approximately $500,000, and that **BISD has copies of written settlement agreements** with each entity. (*See* Miguel Saldana Deposition, pp. 73-74). Further, BISD's counsel confirmed these settlements in open court on June 29, 2004 (*See* Hearing Transcript, pp. 42-43).

Despite comprehensive discovery requests outstanding for many months, and many inquiries from Royal's counsel, BISD has never produced these settlement agreements.[2] The Court ordered BISD to produce them on June 29, 2004 (Transcript, p. 43), and BISD's counsel agreed to produce them, as ordered (Transcript, p. 43). Nevertheless, BISD continues to ignore its discovery obligations to produce the

---

[2] Indeed, in BISD's January 16, 2004 discovery responses, BISD erroneously claimed that none existed.

Mr. Baltazar Salazar
October 5, 2004
Page 14


Settlement Agreements. Royal will move for appropriate sanctions.

> **D.   Reports of Mold and Mildew at the Schools.**
>
> <u>Interrogatory No. 7</u>: Please identify each occasion on which any person **reported** the presence of mold, **mildew or possible fungal growth** at Aiken or Besteiro since January 1, 1994. (Your response should include the classroom or particular area of the school(s) where the substance was reported; the name and address of the person who reported the substance; the date the substance was reported; to whom the substance was reported; whether any written report was made; and BISD's response to the report -- *e.g.*, cleaning, maintenance, remediation, etc.)

BISD refuses to answer this interrogatory and identify incidents where mold was discovered at the schools. BISD also, as explained above, refuses to produce work orders and computerized logs of same that would likely reflect leaks and reports of mold at the schools. As this is the damage at the very heart of BISD's insurance claim and this lawsuit, BISD should have long ago produced these documents and responded to this interrogatory.

> **E.   Any Repairs to Electronic Data Systems, Equipment and Media.**
>
> <u>Interrogatory No. 14</u>: Identify what **repairs** or other efforts BISD has made, if any, to repair, replace or remediate any **electronic data processing systems**, electronic communications equipment, electronic media, and/or converted data at Aiken or Besteiro that BISD claims as part of the Subject Claim or this lawsuit. (Your response should identify any repairs/remediation/replacements completed and include the date the work was performed, who did the work, and the specific dollar amount spent on any such work).

In response to this very specific interrogatory, in which Royal asks BISD to identify any repairs to electronic data equipment, BISD again simply directed Royal to documents available for inspection. Royal has reviewed all documents made available to it, but no responsive documents have been produced. If BISD has incurred no expenses for these specific items made the subject of Interrogatory No. 14, BISD should provide Royal a clear, unequivocal response that so states. Royal is entitled to know what BISD is making a claim for, and the burden is on BISD to prove its claim. Due to BISD's failure to date to identify or produce <u>any</u> responsive documents in response to this

Mr. Baltazar Salazar
October 5, 2004
Page 15

interrogatory pending for almost 10 months, BISD will object to the admission of any such documents that BISD might later attempt to offer into evidence.

F.   **BISD's Continuing Refusal to Verify Its Interrogatory Responses.**

BISD has never provided a verification for any of its "responses" to the 19 interrogatories served on BISD by Royal. Royal has asked many, many times for a verification so that Royal may determine whether the witness should be deposed, but remarkably, BISD refuses to provide one. **BISD was ordered by the Court to verify its responses on June 29, 2004, and BISD's counsel agreed to do so.** (See Hearing Transcript, pp. 42-43). Nevertheless, BISD has blatantly ignored the Federal Rules and Judge Hanen's June 29, 2004 Order to provide a verification. Royal will seek appropriate sanctions from the Court, which may include the exclusion of evidence offered by BISD at any trial.

G.   **Work Orders for Complaints and Repairs at Aiken and Besteiro.**

Royal learned that, as part of BISD's discovery responses in the *American Standard/Trane* case in Cameron County, BISD produced a computer print-out dated June 4, 2003 entitled "Besteiro Middle School Work Order Report." The date range for the listing of work orders related to the air-conditioning system was May 14, 1999 through April 30, 2003. A similar report dated June 4, 2003 for Aiken appeared to relate to certain work orders from September 22, 1999 through March 9, 2000. BISD also apparently produced a few work orders to an engineering firm, Rimkus, during the course of its work at the schools for another one of BISD's insurers, Cigna. The September 12, 2002 work order report generated by BISD's computer was for the date range August 2001 through December 2001, and appeared to relate only to the HVAC system and water leaks.

These reports and work order reports have never been produced by BISD to Royal. BISD obviously has the capability to generate reports listing all (or select types) of work orders for a school for a selected date range. In response to long outstanding discovery to BISD, BISD should have generated from its computer and produced a report listing all work orders relating to HVAC issues, mold, mildew, condensation, leaks (plumbing, roof, windows, HVAC, etc.) or other water intrusion events since January 1994 at Besteiro and since August 1996 at Aiken. The work orders themselves should have also be produced to Royal.

Mr. Baltazar Salazar
October 5, 2004
Page 16

### H. Requests for Admission Concerning the Cause of BISD's Alleged Loss.

In response to very specific Request for Admissions aimed at discovering whether the parties' differ with respect to the cause and timing of the mold and other claimed damage (*e.g.*, Requests 1, 2, 5, 11, 25 and 33), BISD refused to take any positions or make any unequivocal admissions. It is not sufficient for BISD to simply and equivocally answer that "Defendant can neither admit or deny this request. . . .Defendant has not made a final determination of the cause or causes of the problems. . . .one or more of the specified systems may have cause one or more of the problems and may have caused some or all of the damages at either of the schools."

This is especially true now since BISD's expert designation deadline passed more than 7 months ago. Royal is entitled to know what BISD contends in this lawsuit as to, among other things, the cause and timing of the alleged mold and water damage. Due to BISD's blatant disregard for its obligations under the Federal Rules, Royal will request appropriate sanctions from the Court, which may include deeming certain admissions and excluding evidence that contradicts the admissions.

### I. Documentation of Conditions Inside the School.

Contract documents and BISD witnesses indicate that the contractor, before beginning repairs to the schools in 2003, was required to document the then existing conditions inside the school. Although the conditions were documented before the repairs began around September 2003, BISD has refused to produce the documentation. According to BISD's witnesses, this documentation includes pictures, handwritten notes and videotape. (*See* Oscar Tapia Deposition, pp. 106-109 and 202-204). These items are responsive to prior discovery to BISD, but have never been produced. Royal will object if BISD attempts to offer any such items into evidence, and may also seek appropriate sanctions.

### COURT-ORDERED IDENTIFICATION OF TRIAL (FACT AND EXPERT) WITNESSES

In compliance with the Court's June 29, 2004 mandate to BISD, Royal requests that BISD immediately identify in writing:

(1) **any witnesses that claim to have knowledge or evidence of "water damage"** (as defined by the Royal Policy to mean "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance . . . containing water or

Mr. Baltazar Salazar
October 5, 2004
Page 17

>steam") **at either Aiken or Besteiro** [*See* Hearing Transcript, pp. 41-42], **and**
>
>(2)   **those experts that BISD intends to have testify at trial.** [Hearing Transcript, pp. 50-52].

*This will ensure that Royal has the opportunity to depose any person that BISD claims supports its (1) contention/claim that BISD is entitled to insurance coverage under one or more of the Royal Policies for the alleged damages and losses at Aiken and Besteiro, and/or (2) BISD's alleged damages.*

### DEPOSITIONS OF MR. MARK SCHWARTZ AND MR. DENNIS NICKOLOFF

In light of the Court, on August 30, 2004, denying BISD's Motion to Compel that sought rulings on Royal's various objections and privileges asserted with regard to the claim files of Royal and GAB, we assume you plan to proceed with the depositions of Royal and GAB employees. I again ask that you **please advise me when BISD would like to try to schedule the depositions of Mr. Schwartz (Royal) and Mr. Nickoloff (GAB)**, and we will check on the witnesses' availability.

### DEPOSITION OF GAB CORPORATE REPRESENTATIVE

As I mentioned to you in my August 5th letter, with regard to a deposition of a corporate representative of GAB N.A., Inc. ("GAB") on the limited subject matter of the precise relationship between GAB and EFI, GAB's counsel has indicated that it has located a witness to testify on this issue. **Please advise if and when you would like to proceed with scheduling the GAB representative's deposition.** The GAB witness apparently travels quite a bit and needs some lead time to schedule the deposition. For planning and travel purposes, please be advised that the witness will likely be presented for deposition in Parsippany, New Jersey or Brea, California.

Mr. Baltazar Salazar
October 5, 2004
Page 18

  Pease call me so that we may discuss any questions that you may have about Royal's position on these matter. I look forward to your prompt response to these matters, and hope that further intervention by the Court is not required.

             Very truly yours,

             Stephen R. Wedemeyer

SRW/ccc
#536863.1

cc: Ms. Catherine Smith - *Via Facsimile 956-381-0825*