United States District Court
Southern District of Texas
FILED

OCT 29 2004

Michael N. Milby, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **ROYAL SURPLUS LINES** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff** | § | **CIVIL ACTION NO. B-03-109** |
| | § | |
| **vs.** | § | **JURY DEMANDED** |
| | § | |
| **BROWNSVILLE INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| | § | |
| **Defendant** | § | |

**SUPPLEMENT TO PLAINTIFF ROYAL SURPLUS LINES INSURANCE COMPANY'S**
**RULE 56(c) "NO-EVIDENCE" MOTION FOR SUMMARY JUDGMENT**

Plaintiff Royal Surplus Lines Insurance Company ("Royal") files this Supplement to its "No-Evidence" Motion for Summary Judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully showing:

### I. SUMMARY OF SUPPLEMENT TO RULE 56(c) MOTION

1.    On June 10, 2004, Royal filed its Rule 56(c) Motion for Summary Judgment (Dkt. #47) demonstrating its entitlement to summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure because Brownsville Independent School District ("BISD") cannot present evidence of all the essential elements of its claims on which it bears the burden of proof at trial. The motion establishes Royal's right to summary judgment on each of BISD's contractual/coverage claims.

2.      On June 29, 2004, the Court ordered that, after additional discovery, Royal could supplement its various motions for summary judgment. The Court ordered that Royal file any such supplements by October 29, 2004. (Dkt. #58). In compliance with the Court's June 29, 2004 ruling, Royal hereby files this supplement.

3.      It is indisputable that the damage at the two subject schools was caused by perils excluded by the Royal commercial property policies issued to BISD. BISD alleges in this lawsuit, however, that at least some of the damage at the schools is the result of a covered peril. BISD has the burden of segregating the damage allegedly attributable solely to a covered peril from the other damage. BISD, however, has never -- before or after the filing of Royal's Rule 56(c) Motion -- produced any evidence of allocation -- *i.e.*, evidence as to which damage was allegedly caused by a covered peril, and which damage was caused by the many excluded perils, such as inadequate and defective design, construction and maintenance.

4.      Royal deposed five FED. R. CIV. P. 30(b)(6) representatives of BISD in July 2004. Royal also deposed two witnesses from Engineering and Fire Investigations ("EFI").[1] None of the witnesses offered any opinion or evidence of allocation, and the EFI Report to BISD detailing the causes of damage provides no allocation evidence. Further, BISD's discovery responses contain no evidence of allocation. BISD's failure to carry its burden and offer allocation evidence is fatal to its entire claim.

---

[1] EFI is the engineering firm hired by BISD in the Fall of 2002 to determine the cause and scope of the problems at the two schools. EFI was also hired by BISD to prepare the specifications for the repairs to the schools, and to oversee the repair/remediation work that was performed in 2003-2004. BISD has designated EFI as experts on the cause of the damages. (Dkt. #29).

## II. SUPPLEMENTAL EVIDENCE AND ARGUMENT

### A. *Depositions of BISD 30(b)(6) Representatives Provide No Allocation Evidence*

5. Royal served BISD with a Second Amended 30(b)(6)Notice of Deposition on July 21, 2004. BISD raised no objection to the 30(b)(6) deposition notice, including the 22 listed topics on which Royal sought testimony from BISD. One deposition topic -- No. 6 -- addressed allocation -- *i.e.*, what particular damage at the schools was caused by the various causes of loss, as follows:

> 6. **For each "occurrence" or "loss"** made the basis of BISD's subject claim, (i) the date the occurrence or loss "commenced" at Aiken or Besteiro, (ii) the date the occurrence or loss was reported to Royal, (iii) the date the occurrence or loss was discovered, (iv) the **cause(s)** of the occurrence or loss, and (v) the **resulting damage** (including the **particular area of the school** alleged to have been damaged);

*See* **Exh. 1**, FRCP 30(b)(6) Deposition Notice, p. 5.

6. On July 21-23, 2004, BISD presented five representatives of the district in response to the 30(b)(6) deposition notice. At the beginning of each witness' deposition, Royal asked that the witness identify the topics on which he would provide testimony on behalf of BISD by initialling the topic(s) on the deposition notice. **No BISD representative agreed to provide testimony on several topics in the deposition notice, including topic No. 6**, as is evident by examining the deposition notice. *See id.*

7. Nevertheless, Royal proceeded to ask the BISD witnesses whether they could offer any evidence of allocation, as BISD is required to do under Texas law. No witness could do so. *See* **Exh. 2**, O. Tapia Depo., pp. 163-164; **Exh. 3**, H. Gonzalez Depo., p. 45; and **Exh. 4**, L. Sanchez Depo., p. 11. Specifically, Mr. Sanchez testified that he did not know of anyone who

3

had tried to segregate various repair costs according to the various causes of loss, such as leaking

roofs:

> Q.    Do you know if anybody has sat down and tried to decide
>        which repair costs for repairing items out at Aiken and
>        Besteiro are attributable to one cause versus another?  In
>        other words how many dollars were due to a leaking roof
>        and how many were due to a leaking window and how
>        many were due to a mechanical equipment?
>
>                         * * *
>
> A.    No.
>
> Q.    Okay, you don't know of anybody who has done that?
>
> A.    No.

*See* **Exh. 4**, L. Sanchez Depo., p. 11 (objection omitted).

　　　8.　　Two other BISD representatives, Mr. Hector Gonzalez and Mr. Oscar Tapia,

suggested that EFI may have performed such an allocation analysis.  Mr. Tapia suggested that

EFI may have done so in its January 20, 2003 report.  An examination of the EFI report,

however, quickly reveals that Mr. Tapia was simply mistaken.  EFI made no such analysis, and

EFI did not include any such analysis in its report to BISD.  *See* EFI's 1/20/03 Report, Dkt. #1,

Exh. C.  Mr. Gonzalez admitted that he knew of no document created by EFI that provides any

allocation evidence, and that he knew of no-one, other than possibly EFI, who may have

attempted to allocate the damage among various causes:

> Q.    Do you know anybody whose sat down and tried to
>        segregate that $8.6 million [repair costs] according to what
>        caused the particular damage that had to be repaired?
>
> A.    No, we don't do that, that's EFI.
>
> Q.    Have you ever seen any document from EFI that does that?
>
> A.    No.

*See* **Exh. 3**, H. Gonzales Depo., p. 45.

9.      Similarly, Mr. Tapia testified that no-one, other than possibly EFI, had done any

allocation analysis:

> Q.      Do you know of anyone at BISD who has sat down and
>          sorted out what damage at the school they thought was
>          caused by the HVAC system and what was caused by a
>          roof leak and what was caused by, you know, toilet
>          overflow or some other cause?
>
>                              * * *
>
> A.      EFI really did that for us, if – that's the way I understand
>          the question.
>
> Q.      Yeah.  Other than – you're talking about the EFI report
>          dated January 20[th], 2003?
>
> A.      Right.
>
> Q.      Are you aware of anything other than this report that you
>          think might answer that question?
>
> A.      I'm not – I am not aware of any such reports.
>
>                              * * *
>
> Q.      Do you know if anybody has sat down and tried to allocate
>          those $8 million [repair costs] to – well, this damage was
>          caused by an HVAC system, this damage was caused by a
>          roof leak, this damage was caused by something else?
>
> A.      **No one else has done that type of analysis.**

*See* **Exh. 2**, O. Tapia Depo., pp. 163-164 (emphasis added).

10.     BISD has offered no report from EFI other than the January 2003 report, nor has

it pointed to a single page in the January 2003 EFI report that attempts to segregate BISD's

alleged damaged by causes of loss.  The absence of any report or other document detailing any

allocation of damages among various causes is fatal to BISD's claims.

5

**B.**      **BISD Has Failed to Even Segregate Those Damages Allegedly Caused by the Single Covered Cause of Loss Allegedly Identified by BISD – "Water Damage"**

11.      BISD has suggested that "water damage" (defined by the Royal Policy to mean "accidental discharge or leakage of water... as the direct result of the breaking apart or cracking of any part of a system or appliance...containing water") is a covered cause of loss that provides BISD a basis for coverage for some damage under the Royal Policy.  (*See* Dkt. #45, BISD's Response to Royal's first Motion for Summary Judgment, at ¶¶ 6-8, 10, 12-13, 15-20).  No other alleged covered cause of loss has even been suggested by BISD.  Royal denies that BISD has offered any summary judgment evidence of any "water damage" at Aiken or Besteiro. Regardless, **even for alleged "water damage", BISD is unable to identify any particular location of "water damage," the particular harm to BISD that allegedly resulted, or the amount spent to repair any such damage.**

12.      Mr. Tapia was designated as the BISD representative to testify on the following deposition topic that Royal aimed at discovering any alleged evidence of "water damage":

> 13.      Any alleged **accidental discharges or leakages of water as the direct result of the breaking apart or cracking of any part of a system or appliance at Aiken or Besteiro containing water** or steam that allegedly caused any damage made the subject of BISD's insurance claim against Royal or this lawsuit, including the **location** of such alleged **breaks/cracks**, the **cause** and **timing** of same, the allegedly resulting damage, the date of discovery of the **resulting damage**, and the **dollars spent to repair** the damage resulting from each alleged "breaking apart" or "cracking" incident;

*See* **Exh. 1**, FRCP 30(b)(6) Deposition Notice, p. 13 (emphasis added).

13.      During Mr. Tapia's deposition, in order to *try* to provide some evidence of "water damage," Mr. Tapia vaguely referenced an unspecified alleged problem with one or more roof

6

drain hubs at the schools that he suggested might have been discovered in 2003 or 2004 (notably, outside the effective dates of the Royal Policies claimed under).[2]  Mr. Tapia, however, was unable to identify the locations or even the number of drains that were allegedly problematic. *See* **Exh. 2**, O. Tapia Depo., pp. 145-148.  When pressed, Mr. Tapia admitted that he had not seen any documents identifying the location of any cracked pipe or fixture, had never seen any allegedly cracked or loose drain hubs, did not know what had caused the alleged failures, did not know when the problem began, could not identify any interior damage to the schools caused by the allegedly leaking roof drain hubs, and did not know what amounts were spent to fix any damage surrounding the allegedly leaking drain hubs. *Id.* at 148-152.  In other words, **BISD could not even offer any evidence of what particular damage claimed by BISD in this lawsuit was the result of BISD's single alleged covered cause of loss – "water damage."**

### C.    *BISD's Lack of Evidence of Allocation is Dispositive of Its Claims for Coverage*

14.    As explained in Royal's Motion, under the doctrine of concurrent causation, an insured can recover only for covered events, and the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof.  The insured must present some evidence upon which the fact-finder can allocate the damage attributable to the covered peril.  BISD's discovery responses, expert reports, and deposition testimony provide absolutely no basis for any factfinder to segregate the damage at the schools caused solely by a covered peril, even if one existed (which Royal denies).

---

[2]  The Royal Policies only provide coverage for loss or damage commencing during the policy periods claimed under: September 1, 1996 until April 1, 2002. *See* Royal Policies, Dkt. #42, Exhs. 1-4; BISD's claim notices, Dkt. #42, Exhs. 35 and 44.  Thus, the alleged losses vaguely referenced by Mr. Tapia do not qualify for coverage.

Defendant BISD, therefore, has not provided any evidence of allocation, as required under Texas law.

## III. CONCLUSION

15.    Because allocation is central to an insured's claim for coverage, BISD's failure to carry the burden of proof on this issue is fatal to its claims. Royal is entitled to summary judgment on all contractual/coverage claims made by BISD because there is no evidence to support BISD's allocation of allegedly covered damages from uncovered damages. Accordingly, Royal requests that this Court (1) enter judgment in favor of Royal, (2) declare that BISD is not entitled to coverage under any of the Royal policies for any claimed damage or loss at or arising from the Aiken and Besteiro schools, (3) dismiss all BISD's counterclaims against Royal, and (4) grant Royal any and all other relief to which it is entitled.

Respectfully submitted,

**Jay W. Brown**
State Bar No. 03138830
Fed. ID No. 1314
1300 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Telephone: (713) 623-0887
Facsimile: (713) 960-1527

**ATTORNEY-IN-CHARGE FOR PLAINTIFF,
ROYAL SURPLUS LINES INSURANCE COMPANY**

8

**OF COUNSEL:**
BEIRNE, MAYNARD & PARSONS, L.L.P.
**Stephen R. Wedemeyer**
State Bar No. 00794832
Fed. ID No. 19797
**John V. Trevino, Jr.**
State Bar No. 24003082
Fed. ID No. 23860
1300 Post Oak Blvd., Suite 2400
Houston, Texas  77056
Telephone:  (713) 623-0887
Facsimile:  (713) 960-1527

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Supplement to Royal's Rule 56(c) "No-Evidence" Motion for Summary Judgment  was served on all counsel of record on October 29, 2004, as follows:

Baltazar Salazar                   *Via Certified Mail Return Receipt Requested*
1612 Winbern
Houston, Texas  77004

Craig S. Smith                     *Via Certified Mail/Return Receipt Requested*
LAW OFFICE OF CRAIG S. SMITH
14493 S.P.I.D., Suite A, P.M.B. 240
Corpus Christi, Texas  78418

Ramon Garcia                       *Via Certified Mail Return Receipt Requested*
LAW OFFICE RAMON GARCIA, P.C.
222 W. University
Edinburg, Texas  78539

*Attorneys for Defendant BISD*

Jay W. Brown

9