James Bettis                                                    November 4, 2004

```
                                                              Page 1
 1    04-M-70790 mkh
 2
 3              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
 4                    BROWNSVILLE DIVISION
 5
      ROYAL SURPLUS LINES         *
 6    INSURANCE COMPANY,          *
              Plaintiff,          *
 7                                *
      VS.                         * CIVIL ACTION NO. B-03-109
 8                                *
      BROWNSVILLE INDEPENDENT     *
 9    SCHOOL DISTRICT,            *
              Defendant.          *
10
11
12
13
14
      ***************************************************
15                    ORAL DEPOSITION OF
                         JAMES BETTIS
16                    NOVEMBER 4, 2004
      ***************************************************
17
18
19
20    ORAL AND VIDEOTAPED DEPOSITION of JAMES BETTIS, produced
      as a witness at the instance of the Plaintiff, and duly
21    sworn, was taken in the above-styled and numbered cause on
      the 3rd of November, 2004, from 1:38 p.m. to 5:36 p.m.,
22    before Mary Kay Hendricks, CSR in and for the State of
      Texas, reported by machine shorthand, at the offices of
23    Harrison, Bettis, Staff, McFarland & Weems, LLP, 500
      Dallas, Suite 1650, Houston, Texas, pursuant to the
24    Federal Rules of Civil Procedure and the provisions stated
      in the record or attached hereto.
25
```

Exh. C

James Bettis                                                                November 4, 2004

Page 5

1   under a particular policy.  The second area relates to the
2   handling of claims by insurance carriers and their
3   adjusters.
4       Q.   Policy interpretation and claims handling.  Is
5   that correct?
6       A.   Basically, yes.
7       Q.   I'd like to visit with you a little bit about
8   your background.  First of all, you've obviously taken
9   many depositions, I assume.
10      A.   That's correct.
11      Q.   You've sat in the same seat that I'm sitting in,
12  metaphorically speaking, many times.
13      A.   Many times.
14      Q.   All right.  And how many times have you
15  testified in a case?
16      A.   Other than on attorneys' fees, I don't believe
17  I've testified in any cases.
18      Q.   You've testified in cases before on the issue of
19  what attorneys' fees were appropriate for that particular
20  case?
21      A.   Yes, I have.
22      Q.   Let me ask you about your -- your background,
23  and let's -- let's start from when you graduated from law
24  school and sort of work backwards from there.  Where did
25  you go to law school, and when did you graduate?

James Bettis November 4, 2004

1   advise it.
2       A.   Oh, no.
3       Q.   It happens all the time.
4       A.   Correct.
5       Q.   Now, have you ever worked as an employee of an
6   insurance company?
7       A.   No.
8       Q.   Have you ever worked as a claims adjustor for an
9   insurance company?
10      A.   I have done adjusting work as part of my legal
11  practice.  Some of the legal issues I'm hired for also
12  involve adjusting-type issues, but it is, you know, as all
13  part of providing legal services.
14      Q.   When you did that work, you worked as a lawyer,
15  correct?
16      A.   Yes.
17      Q.   You charged lawyer rates?
18      A.   Yes.
19      Q.   You didn't charge adjustor rates.
20      A.   No.
21      Q.   Are you licensed as an insurance adjustor?
22      A.   No.
23      Q.   Are you licensed as a lawyer?
24      A.   Yes.
25      Q.   Do you're have you worked as a traditional

James Bettis                                                                 November 4, 2004

Page 10

```
 1   insurance adjustor adjusting a claim the way other
 2   insurance adjustors do.
 3        A.   I can't really answer that "yes" or "no."
 4        Q.   And why is that?
 5        A.   Because as part of some of the cases and files
 6   I've been hired, I have assisted with and worked in the
 7   adjusting process.
 8        Q.   Well, is that the way that a traditional
 9   insurance adjustor works, with a law license and $200 an
10   hour, or do they usually -- the traditional insurance
11   adjustor usually approaches things differently.
12        A.   They shouldn't approach it differently if
13   they're doing the adjusting part of it.
14        Q.   In any event, you're not licensed as an
15   adjustor.
16        A.   Correct.
17        Q.   You've provided your resume or curriculum vitae
18   in this matter, correct?
19        A.   Yes.
20        Q.   Does it state that you are an insurance
21   adjustor?
22        A.   No.
23        Q.   Does your website state that you're an insurance
24   adjustor?
25        A.   No.
```

James Bettis                                                                November 4, 2004

Page 30

1   claim and to form my opinions.
2       Q.   I take it you've spent some time on that
3   assignment.
4       A.   Yes.
5       Q.   And I take it you've -- the work that you did
6   led up to the issuance of your report.
7       A.   The work I had done up until that time, up to
8   the time of the report.
9       Q.   Right.  And the report is dated March 1, 2004.
10      A.   Correct.
11      Q.   And have you done some other work since that
12  time?
13      A.   Yes, I have.
14      Q.   And what, in general, work has that been?
15      A.   Well, just updating the case -- you know,
16  reviewing the law, updating, you know, the law, determine
17  if there's been any changes or any recent -- opinions
18  aren't necessarily changes, but further provide insight
19  into coverage issues.  I've also reviewed materials that
20  have been produced by Royal since the time of my opinion.
21      Q.   Have any of your opinions changed?
22      A.   Nothing has changed in that report, but I have,
23  you know, some additional opinions on the coverage.
24      Q.   And are those opinions set forth anywhere in
25  writing?

James Bettis                                                                                November 4, 2004

Page 31

1    A.    No.

2    Q.    What are those opinions?

3    A.    Well, again, I believe that coverage exists for
4    these claims, but it's for additional reasons than those
5    simply -- or not simply -- that are stated in my letter.
6    In my opinion letter, I address exclusions that were
7    pointed out by Mr. Swoveland as the basis for there not
8    being coverage, and my opinion was: There are exceptions
9    to the exclusions that can apply in this case. But I also
10   believe, upon further review of the policy -- it's a very
11   thick and complicated policy, but I believe that those
12   exclusions don't even come into play. You don't even have
13   to get to the exceptions to the exclusions.

14   Q.    As I understand it, in your original report you
15   primarily focused on exclusions and addressed the issue of
16   exceptions to those exclusions.

17   A.    Yes.

18   Q.    And you today are offering additional opinions
19   of the nature that you don't necessarily have to even get
20   to the exclusions in a coverage analysis.

21   A.    Correct.

22   Q.    All right. And what -- would you explain that?

23   A.    Under this policy it doesn't cover particular
24   types of damages. It covers all damage caused by a
25   covered cause of loss. And under this policy a covered

James Bettis                                                             November 4, 2004

Page 32

1   cause of loss is any cause of loss that is not excluded.
2   The covered -- there are two causes of loss that are --
3   appear in this case that I do not -- that I believe are
4   covered causes of loss; that is, they're not excluded.
5   That is water damage and also humidity. And let me
6   clarify on the humidity. It is an excluded cause of loss
7   as to personal property but not real property.
8       Q.   Humidity under the policy is an excluded cause
9   for personal property?
10      A.   Yes.
11      Q.   But not real property.
12      A.   Correct.
13      Q.   And you're aware that water damage is defined in
14  the policy.
15      A.   It is not excluded though. There's not an
16  exclusion for water damage. All causes of loss are
17  covered under this policy unless specifically excluded,
18  and there's not a water damage exclusion. There is one,
19  but it's a -- it's a narrow one about back-up of sewers
20  and things of that sort. There's not a general exclusion
21  for damage caused by water.
22      Q.   So are you -- you're of the opinion that water
23  damage is covered under the policy.
24      A.   Generally, yes. There's certain limited types
25  that are not.

James Bettis                                                                    November 4, 2004

Page 33

1   Q.  How would it -- how would water damage be
2   covered under the policy?  Because it's -- because in your
3   opinion, it's a covered cause and not excluded?
4   A.  Again, this policy is kind of like an all-risk
5   policy, meaning all causes of loss are covered.  All
6   physical damage caused by covered cause of loss is covered
7   unless the covered cause of loss is specifically excluded.
8   So to put that in more simpler terms, if a cause of loss
9   isn't specifically excluded, it's covered.
10  Q.  And in your opinion, water damage is covered.
11  A.  Some types of water damage are.  Not all water
12  damage, but water damage is covered unless excluded, and
13  there -- there are some limited exclusions.
14  Q.  What limited exclusions are you aware of for
15  water damage without looking at the policy?  And we'll get
16  into that in --
17  A.  It had -- it involves back-up of sewers and
18  similar things.  There may be another one, but...
19  Q.  And do you view humidity as a covered cause of
20  loss?
21  A.  Not for personal property but, yes, with respect
22  to real property.
23  Q.  Just any humidity?
24  A.  I don't have the policy in front of me right
25  now, but...

James Bettis                                                                November 4, 2004

Page 34

1      Q.   I mean, does it have to be excessive humidity or
2   just anything caused by humidity, in your view?
3      A.   In my view it's -- physical damage to covered
4   property caused by humidity is covered, that being real
5   property, not personal property, because it is not
6   excluded.
7      Q.   Are those your -- are those your opinions that
8   you have reached that are not expressed in your report?
9      A.   Yes.
10     Q.   I take it the bases for those opinions are your
11  reasoning as to how you view how the policy works as
12  opposed to any new evidence or new information that you've
13  suddenly become -- become aware of.
14     A.   Well, certainly it's not based upon any new
15  evidence, but there is some new case law that, I believe,
16  brings this issue clear --
17     Q.   What --
18     A.   -- De La Rentis or something like that.  An
19  opinion came out, but it was withdrawn, and the new
20  opinion came out in September of this year.
21     Q.   Involving the air conditioner in the apartment?
22     A.   It was a water leak in a -- in a house or
23  apartment.  I can't recall.  I think it was an air
24  conditioning leak.
25     Q.   What was the -- any other case law that you can

James Bettis                                                                 November 4, 2004

Page 43

```
 1        Q.   You've obviously formed opinions in this case
 2   that are critical of Royal Surplus Lines Insurance
 3   Company.
 4        A.   Yes.
 5        Q.   I take it you've not offered any opinions that
 6   are critical or adverse to GAB Robins.
 7        A.   Well, again, you know, I kind of view them as
 8   one and the same for purposes of this case.  The claims
 9   handling, it's Royal's responsibility and they hired GAB
10   Robins to do the work.  So they're one and the same.
11        Q.   Is it fair to say then though that -- that any
12   opinions you do have against GAB are those opinions that
13   are already expressed either here today or in your report?
14        A.   Well, there's one other thing I've learned about
15   that I did not -- was not aware of, I don't believe, at
16   the time I issued that opinion.  It all goes with the
17   claims handling.  But it's my understanding that GAB
18   Robins made a representation that they would go with --
19   would honor a report prepared by EFI, and they have failed
20   to do so.
21        Q.   How did you come by that understanding?
22        A.   It's in the -- it's in the counterclaim, an
23   amended counterclaim.
24        Q.   And are there any facts that you're aware of
25   that support that allegation?
```

James Bettis                                                    November 4, 2004

Page 44

1   A.   Other than it's been said by BISD.
2   Q.   It's been said in the papers -- in their lawsuit
3   papers.
4   A.   Yes.
5   Q.   Somebody can say anything they want to in
6   lawsuit papers, right?
7   A.   Yes, they can.
8   Q.   All right. Are you aware of any testimony to
9   date that supports that allegation?
10  A.   I've not read any.
11  Q.   So I take it you're not aware of any.
12  A.   I would assume if they've alleged it, there's
13  some support for it.
14  Q.   Are you able to identify any support at this
15  time?
16  A.   No.
17  Q.   What is your understanding of the -- I take it
18  that opinion that you have involving GAB is criticism of
19  either GAB and/or Royal.
20  A.   Again, kind of one and the same to me in this
21  case.
22  Q.   What is your understanding of what GAB and/or
23  Royal, in your opinion, did wrong in connection with that
24  issue?
25  A.   Well, if you make a representation to an insured

Page 153

```
1    STATE OF TEXAS              *
2    COUNTY OF HARRIS            *
3
4              I, the undersigned certified shorthand
5    reporter and notary public in and for the State of Texas,
6    certify that the facts stated in the foregoing pages are
7    true and correct.
8
9              I further certify that I am neither
10   attorney or counsel for, nor related to or employed by,
11   any of the parties to the action in which this deposition
12   is taken and, further, that I am not a relative or
13   employee of any counsel employed by the parties hereto, or
14   financially interest in the action.
15
16             SUBSCRIBED AND SWORN TO under my hand
17   and seal of office on this the ____ day of _____,
18   2004.
19
20             _____
               Mary Kay Hendricks, CSR
21             Certified Shorthand Reporter and
               Notary Public in and for
22             the State of Texas
23   Notary Expires:    9/9/04
     Certificate No.    1602
24   Expiration date:   12/31/04
25
```