IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **ROYAL SURPLUS LINES** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-03-109 |
| | § | |
| **BROWNSVILLE INDEPENDENT** | § | |
| **SCHOOL DISTRICT.** | § | |

## AFFIDAVIT

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

BEFORE ME, the undersigned authority, on this day, personally appeared **Steve M. Hays**, who, being duly sworn upon his oath according to law, did depose and state the following:

1. "My name is Steve Hays. I reside in the State of Texas. I am over the age of twenty-one (21) years and am competent to make this affidavit. I have never been convicted of a felony or any other crime involving moral turpitude. I am a licensed, professional engineer in many states, and am a Certified Industrial Hygienist. By reason of my employment with Gobbell Hays Partners, Inc. ("GHP") as Chairman of the Board, and my role in GHP's assessment and evaluation of Aiken Elementary School and Besteiro Middle School (collectively, the "BISD Schools") and related activities, including those set forth herein and in GHP's report (Exhibit A), I have personal knowledge of the facts set forth in this affidavit, including the exhibits hereto, and those facts are true and correct.

2. Attached as **Exhibit A** to this affidavit and incorporated herein by reference is a true and correct copy of my report detailing our investigation and findings, which I signed and was one of the primary authors, and which sets forth the basis for our findings, conclusions and opinions in connection with the BISD Schools. The factual statements set out in my report are true and correct. Attached as Exhibit B is a true and correct copy of my current resume, which identifies my qualifications for the findings, conclusions and opinions offered in connection with our assessment and evaluation of the BISD Schools.

3. I am qualified to give opinions regarding the environmental assessment of buildings and buildings systems, causation analysis, facilities remediation, and related issues, as set forth in my resume. I have a Bachelor of Engineering degree from Vanderbilt University in Chemical Engineering. I am a Professional

Engineer registered in Tennessee, Alabama, New Mexico, Arkansas, Illinois, Florida, Virginia, California, and Ohio. I am a Certified Industrial Hygienist by the American Board of Industrial Hygiene. I am also a Qualified Environmental Professional by the Institute of Professional Environmental Practice. I have specialized knowledge that will assist the trier of fact to understand the evidence.

4. I have particular expertise and experience in the area of environmental assessment of buildings and buildings systems, facilities remediation, causation analysis, and related matters. I have used methods acceptable in these specialized fields for reaching the findings, conclusions and opinions in this matter, as set out in Exhibit A. We have reviewed, among other things, the results and findings from numerous investigations of the BISD Schools done by others, voluminous documents produced by BISD regarding the design, construction, inspection and maintenance of the BISD Schools, environmental/indoor air quality testing results, engineering and environmental reports regarding the cause, scope and repairs to the BISD Schools, and depositions of BISD employees concerning the BISD Schools. These activities form the basis of my report, as further set out in Exhibit A."

Further Affiant sayeth not.

Steve M. Hays

SUBSCRIBED AND SWORN to before me on this the 2 2 day of April, 2005.

Notary Public, State of Texas

574178v.1

Page 2



**GOBBELL HAYS PARTNERS, INC.**
ARCHITECTURE
ENVIRONMENT • HEALTH • SAFETY

January 21, 2004

*Nashville*
*Denver*
*Cleveland*
*San Antonio*

Stephen R. Wedemeyer, Esq.
Beirne, Maynard & Parsons, L.L.P.
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056-3000
Tel (713) 960-7349
Fax (713) 960-1527

Re:   Brownsville Independent School District
      Raul Besteiro, Jr. Middle School/Bruce Aiken Elementary School
      6280/6290 Southmost Road
      Brownsville Texas 78521
      GHP Project No.02088.03

Dear Mr. Wedemeyer:

Gobbell Hays Partners, Inc. (GHP) has reviewed the documents listed in Appendix I. The purpose of the review was to provide opinions about the investigations done by others. This report is the result of a review of documents provided by Beirne, Maynard & Parsons, L.L.P. GHP has not performed any field investigation or conducted any sampling.

GHP bases its mold assessment activities on the EPA Guidance Documents, *Mold Remediation in Schools and Commercial Buildings* and *A Brief Guide to Mold, Moisture and Your Home*, and on the firm's knowledge and experience. We have considered sampling results, reported observations, and other pertinent information contained in the various reports. Recommendations that are supported by analytical evidence are weighted heavily. Recommendations that are not supported by analytical data are considered in light of other information that appears to be pertinent. Recommendations that run counter to other evidence (analytical, visual observation, etc.) are evaluated based primarily on our experience.

In addition to environmental consulting and industrial hygiene, GHP also practices architecture in many states and has on staff architects licensed in Texas. We therefore are very knowledgeable about design and construction. When required, this expertise is used along with our knowledge of, and experience in, assessments of structures for mold damage and amplification.

GHP reserves the right to modify or expand its opinions if additional evidence or information is supplied to us.

**EXHIBIT "_A_"**

RSL 001355

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 2 of 16

I. **SUMMARY OF CONCLUSIONS OF EXPERT REPORTS**

A. Rimkus Consulting Group, Inc. (Rimkus) conducted an evaluation of Aiken Elementary School on July 8, 1999, with the results of the investigation detailed in Rimkus' Report of Findings dated July 26, 1999. Rimkus makes the following conclusions:

1. "Laboratory analysis of surface samples confirmed the presence of excessive mold growth on classroom walls, classroom bathroom doors, hallway walls, classroom game toys, a carpet, and a section of ceiling tile."

2. "Air samples collected with Air-O-Cell cassettes indicated elevated mold spore levels in Room C-108, Room B-217, and Room A-108."

3. "Air samples collected with malt extract agar (MEA) plates revealed ... that mold spores inside the school building are potentially being generated from mold sources indoors."

4. "The elevated levels of mold spore found in the air samples stem from sources of mold growth on surface inside the building, as well as from inadequate air conditioning." "Data collected on July 8, 1999, indicate that the relative humidity is not being maintained below 60 percent in the school building. This has allowed mold to grow on walls doors, and other surfaces inside the building. The climate control system needs to be modified in order to maintain relative humidities below 60 percent."

5. "The following measures are recommended prior to opening the building for the new school season.

   • "The climate control system should be modified to maintain the relative humidity below 60 percent.

   • "The building should be inspected for any water leaks or moisture sources, and these should be eliminated.

   • "The building should be appropriately remediated for mold removal."

B. Assured Indoor Air Quality, L.P. (Assured) conducted an evaluation of Aiken Elementary School in November 2001, with the results detailed in Assured's Indoor Air Quality Environmental Survey dated November 9, 2001. Assured states the following results:

1. "Of the 80 surveys prepared ... the staff completed and returned 57 for a 71% response rate."

RSL 001356

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 3 of 16

    2.    "The cumulative score ... is a 5.0. Reported conditions indicate a building with a high probability to negatively impact the wellbeing of occupants. Determine cause. Develop a plan to lessen possible effects upon the occupants. Consider relocation of certain sensitive individuals. Consider viability of building."

    3.    "More than forty-three percent (43.86%) of responses indicate building related symptoms."

    4.    "Two small clusters (3-4 rooms) of rooms where responses indicate building-related symptoms were identified."

    5.    "Several responses reported water events where wetted materials were not replaced promptly."

    6.    "Several areas of odors were reported by respondents."

C.    Assured conducted an evaluation of Besteiro Middle School in November 2001 with the results detailed in Assured's Indoor Air Quality Environmental Survey dated November 9, 2001. Assured states the following results:

    1.    "Of the 120 surveys prepared ... the staff completed and returned 91 for a 76% response rate."

    2.    The cumulative score ... is a 4.0. Reported conditions correspond to warning signs regarding buildings that can affect the wellbeing of occupants. Determine cause."

    3.    "More than ten percent (10.98%) of responses indicate building-related symptoms."

    4.    "No clusters of rooms or areas indicate building-related symptoms were identified, but several rooms were close together where respondents indicate building-related symptoms."

    5.    "Few responses reported water events where wetted materials were not replaced promptly."

    6.    "Occasional odors were reported by respondents."

D.    Ambiotec Environmental Consultant, Inc. (Ambiotec) conducted an evaluation of Besteiro Middle School and Aiken Elementary School on February 27, 2002, March 28, April 3, and May 21, 2002, with the results detailed in Ambiotec's Mold Investigation report dated May 2002. Ambiotec makes the following conclusions:

RSL 001357

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 4 of 16

1. "In general, the results of the air samples do not indicate widespread elevated airborne mold concentrations at either school. Of 97 indoor air samples collected, only one was characterized as posing a serious concern; and three were characterized as posing a potential concern."

2. "Surface (tape) samples were collected at locations hat indicated visible signs of mold growth on building or other surfaces. The results of the surface samples indicate the presence of visible microbial growth in over eighty areas that would require remediation... Visible mold was found in the sheetrock (walls and ceilings) material in various locations in both schools, and in thermal system insulation jacket in the chilled water system at Aiken. In general, Aiken Elementary exhibited more extensive surface contamination than Besteiro."

3. "Moisture in the form of plumbing leaks, roof leaks, poor ventilation, HVAC condensation and humid ambient air entering the schools are all possible sources for creating an environment conducive to microbiological growth. Moisture trapped between walls and floors leads to increased presence of mold on wallboard and ceiling tiles. Condensation is a common source for mold growth on piping insulation. Preliminary indications from the pattern of visible mold suggest that one principal cause of the moisture intrusion in Aiken is from the chilled water HVAC system, and in Besteiro from plumbing and roof leaks."

4. Temperature and relative humidity measurements collected in both schools during the investigation indicated no anomalous patterns to suggest enhancement of fungal growth by these parameters although the humidity level within the building was slightly high (median of approximately 60%)."

E. Rimkus conducted an evaluation regarding reported water damage on June 13 and July 11, 2002 with the results detailed in Rimkus' Report of Findings, Building Water Intrusion Evaluation report dated December 20, 2002. Rimkus makes the following conclusions:

1. "Stains associated with the presence of moisture in the schools fall into two broad categories:"

    a. "General development of stains (believed to be mold on building finish materials and on the contents."

    b. "Localized development of stains (often accompanied with what is believed to be mold at 'site' specific areas of water intrusion."

RSL 001358

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 5 of 16

    2.     "The development of the general stains is the result of improper functioning of the Heating, Ventilation and Air-Conditioning (HVAC) systems. The improper functioning of the HVAC systems is a result of one or more of the following:"

         a.    "HVAC systems design error(s)."

         b.    "Improper operation of the HVAC systems."

         c.    "Improper maintenance of the HVAC systems."

    3.     "The development of localized stains is the result of one or more of the following site specific causes of water intrusion:"

         a.    "Roof leak(s), either at a membrane edge or penetration, roof drain hub, on the roof drain pipe (18 locations)."

         b.    "Plumbing leaks, both domestic water supply system and drainage system leaks (eight locations)."

         c.    "Dripping and/or leakage of condensate, and/or water from components of the HVAC system (27 locations)."

F.    The Center for Toxicology and Environmental Health (CTEH) conducted an evaluation of Akin Elementary School from July 8 through July 15, 2002, and on November 18 and 19, 2002, with the results detailed in CTEH's Indoor Air Quality Report dated January 10, 2002. CTEH makes the following conclusions:

    1.     "Approximately 2,163 ft$^2$ of visible mold is located in the school, primarily on the ceiling and chill-water pipe insulation."

    2.     "The airborne concentrations of fungi inside the school are similar to the outdoors and less than the fungal concentrations measured in a non-complaint school reportedly of similar age and HVAC-type."

    3.     "The fungal growth inside the school has not contaminated the HVAC system."

    4.     "The sampling results do not suggest the presence of hidden fungal contamination located behind classroom walls."

G.    The Center for Toxicology and Environmental Health (CTEH) conducted an evaluation of Besteiro Middle School from July 8 through July 15, 2002, and on November 18 and 19, 2002, with the results detailed in CTEH's Indoor Air Quality Report dated January 10, 2003. CTEH makes the following conclusions:

RSL 001359

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 6 of 16

1. "Approximately 1,381 ft$^2$ of visible mold is located in the school, primarily on the ceiling and room contents."

2. "The airborne concentrations of fungi inside the school are similar to the outdoors and less than the fungal concentrations measured in a non-complaint school reportedly of similar age and HVAC-type."

3. "The fungal growth inside the school has not contaminated the HVAC system."

4. "The sampling results do not suggest the presence of hidden fungal contamination located behind classroom walls."

H. Engineering and Fire Investigations (EFI) conducted an evaluation of Besteiro Middle School and Aiken Elementary School on November 19 – 22 and December 4 – 5, 2002, with the results being detailed in EFI's Remediation Evaluation Assessment, dated January 20, 2003. EFI makes the following conclusions:

1. "The results of the biological sampling and field observations conducted at Besteiro Middle School and Aiken Elementary School indicate that fungal contaminants are present in several of the areas tested and that visible mold/water damage is present on select building components, furnishings, supplies and equipment."

2. "The roof membrane systems serving both schools were observed to be in generally good condition; however, several potential sources of water infiltration were observed, including the following: blocked roof drain strainers, cracked mortar joints between precast concrete copings at parapet walls, cracks and discontinuities at parapet/parapet and parapet/rise wall intersections, deteriorated sealant at wall expansion joints and metal counter flashing assemblies, discontinuities at base flashing materials, and pipe supports and abandoned equipment bearing on aggregate surfacing."

3. "Besteiro Middle School ... A large number of the RTUs have thermostats that are not calibrated and are attempting to control room temperatures in a range of 3 to 5 degrees below or above the setpoint... measured room temperatures were in the range of 68 to 72 degrees F and relative humidity in the range of 55 to 62 percent... the air handling components of the RTUs including cooling coils, drain pans, insulated conditioned air sections contain moderate to heavy deposits of dust, debris, and accumulations of possible mold ... Outside air ventilation rates were observed and measured to be less than the design quantities. Condition air

RSL 001360

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 7 of 16

        quantities delivered by the RTUs were measured and found to be significantly below and above the design air quantities ... many of the RTUs serving the classrooms and administrative areas are somewhat oversized for the anticipated cooling demands. Consequently, the units that are oversized do not operate a sufficient number of hours to adequately control room temperature ad relative humidity."

4. "Aiken Elementary ... a large number of the fan coil units which have wall temperature sensors that are not calibrated, or are broken, and are attempting to control room temperatures in a range 3 to 5 degrees below or above the setpoint of the wall mounted temperature sensor... measured temperatures were in a range of 68 to 72 degrees F, and relative humidity in a range of 55 to 62 percent. Fan coil units including cooling coils, drain pans, and insulated conditioned air sections were found to contain moderate to heavy deposits of dust, debris, and accumulations of possible mold ... the quantities of ventilation air were found to be less than the design quantities... conditioned air quantities delivered by the fan coil units were measured and found to be significantly below or above the design air quantities ... the chill water piping revealed that the piping has corroded behind the insulation in a number of areas leading to possible mold growth due to sweating... due to leaks, chilled water flowing in the piping system is heavily corroded and contains air... may of the fan coil units serving the classrooms and administrative areas are oversized for the anticipated cooling demands and consequently do not adequately control room temperature or relative humidity."

5. "Our observations identified deficient items associated with the site drainage at the identified areas of Besteiro Middle School and Aikens Elementary School."

## II. CONCLUSIONS

A. Fungal growth within a building can be generally caused by two types of water moisture events: point source incidents or systemic issues. Point source incidents are incidents that originate in a specific location, and the water damage and fungal growth can be tied to the incident. Examples of point source incidents are plumbing leaks, roof leaks, window leaks, condensate pan overflows, etc. These types of incidents may be small, single occurrence events or large, multiple occurrence events. If the point source incidents are promptly identified, the leak or overflow repaired, then, generally, the building materials can be dried out without the development of fungal growth. Fungal growth from systemic issues cannot be associated with a specific incident. Systemic issues create conditions that allow fungal growth to develop at locations where the nutrient and moisture requirements are met; however, these locations are created due to the overall environmental conditions as opposed to specific events. A building that is not

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 8 of 16

properly dehumidified is an example of a systemic issue. Fungal growth from systemic issues may not immediately manifest itself, depending on the extent of the issues, even though the conditions that can cause fungal growth exist.

1. It is GHP's opinion that both schools have been impacted from point source incidents and systemic issues, and that both types existed from the time of occupancy. This opinion is based on the review of the documents provided by Brownsville Independent School District (BISD), which also supports the conclusions made in the expert reports reviewed, and detailed above. The combination of point source incidents and systemic issues creates damp, moist atmospheric conditions, which promotes fungal growth.

2. Besteiro Middle School had repeated roof leaks and plumbing leaks, as well as problems with the air-handling system not functioning correctly. Within approximately one year of occupancy, fungi had been identified on diffusers and walls in the Kitchen and on books in the Library, and the district had become aware of humidity problems in the building. The following correspondence documents BISD being aware of these problems.

   a. A letter from Mr. Robert H. Beasley, P.E., RBM Engineering, Inc. to Mr. Jorge Mora, AIA, Carrol, DuSang & Rand, dated December 13, 1994, discusses the presence of "mildew growth on diffusers and walls..." in the Kitchen.

   b. A letter from Mr. Jorge L. Mora, AIA, Carrol, DuSang & Rand, Inc. to Mr. Bill Wilson, Wilson Construction, December 14, 1994, discusses "Lockers G109: Air was very humid; walls and ceiling diffusers have mildew." Also this letter states, "... that all AC units, except Classroom Units, have had the outside air damper screwed shut thus preventing any fresh air into the building. We believe this was done after the deletion of the economizer package per Change Order No. 4."

   c. A letter from Mr. Sabas Lopez, Wilson Construction to Mr. Bill McBride, Sechrist Hall, dated August 22, 1995, discusses the status of the roof leaks.

   d. A document detailing a telephone conversation between Mr. Oscar Tapia, BISD, and Mr. Robert Beasley, RBM Engineering, dated September 19, 1995, states, "Mildew on books – Mold" in the library.

   e. Additional BISD documents indicate that roof leaks and high humidity were an ongoing problem at the school.

RSL 001362

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 9 of 16

    2.    Aiken Elementary School had humidity problems within the building immediately upon being occupied, which was tied to the air-handling system not functioning correctly. Other issues that were reported were roof leaks and site drainage problems that were affecting the interior of the building. The following correspondence documents BISD being aware of these problems.

        a.    A letter from Mr. George Tamez, BISD, to Mr. Jorge Mora, Carrol, Dusang & Rand, dated August 13, 1996, states, "At 3:00pm today, we received a call that the A/C was not cooling in the entire 2nd floor B wing...The first day of school is August 19th."

        b.    A letter from Mr. Jaime C. Condit, BISD, to Mrs. Jorge Mora, Carrol, Dusang & Rand, dated August 28, 1996, details numerous concerns "over continuous problems..." The problems detailed were site drainage problems, water stained ceiling tiles, water leaks, air conditioner problems, etc.

        c.    A letter from Mr. George Tamez, BISD, to Mr. Robert Beasley, RBM Engineering, Inc., dated August 28, 1996, states, "We are now in our second week of school in session. Throughout both weeks our Maintenance Dept. has received repeated complaints that the air conditioning is not cooling and that the humidity levels are too high." This letter also documents the humidity levels throughout the school, which were consistently above 60%.

        d.    Additional BISD documents indicate that roof leaks, site drainage problems, and high humidity were an ongoing problem at the school.

    3.    From approximately January 1999 through May 1999, the air conditioning system at Aiken Elementary was renovated; however, the documents provided by BISD still indicate high humidity levels and mold growth within the school after the renovation activities were completed. In addition, a letter from the Texas Department of Health, dated August 25, 1999, states, "During the follow-up inspection no visible mold growth was noted within the occupied areas (i.e. Classrooms). However, it was noted that signs of mold growth was still prevalent on the exterior surfaces of the chilled water lines." This letter indicates that while fungi clean up had occurred within the classrooms, not all of the known fungal growth was remediated.

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 10 of 16

    4.    In 2001, BISD conducted fungal remediation; however, based on the BISD documents, this remediation occurred only within the Kitchen, Library, and Computer Room, and did not address the fungal growth located in the classrooms, offices, and Common Areas. The issue of fungal growth being identified in areas other than the Kitchen, Library, and Computer Room were detailed in a letter from the Texas Department of Health, dated November 16, 2001. In addition, the underlying cause of the fungal growth was not corrected.

    5.    The remediation activities in the Library were not completed when it was decided that these activities should be conducted in conjunction with the remediation of both schools.

    6.    Both Besteiro Middle School and Aiken Elementary School has been shut down since January 2002.

B.    Based on GHP's experience, air-handling systems may not adequately reduce indoor relative humidity levels because of one or more of the following conditions.

    1.    Cooling coils that are oversized may satisfy the thermostat's setpoint too quickly; and therefore, the system short cycles and adequate dehumidification does not occur.

    2.    If the fan speed is set too high, the air flows past the cooling coil without sufficient time for adequate dehumidification.

    3.    If the fan speed is set too low, the air can become too cold, which in turn can satisfy the thermostat's setpoint, causing the system to short cycle. Adequate dehumidification is not accomplished.

    4.    Outside air intakes that are closed or restricted may cause the building to become negatively pressurized relative to the outside. The reduced interior pressure causes unconditioned outside air infiltration around windows, doors, etc.

    5.    Dirty cooling coils restricts the air flow and can cause the supply air to become too cold, which in turn can satisfy the thermostat's setpoint, causing the system to short cycle. Adequate dehumidification is not accomplished.

    6.    Thermostats that are not properly calibrated can cause the temperature requirements for the system to be satisfied falsely; therefore, proper dehumidification may not occur.

RSL 001364

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 11 of 16

    7.    All of the conditions described above have been documented to exist at one time or another, based on the BISD documents and other experts' reports.

    8.    The conditions described above may be the result of design errors, construction errors, improper operation, or improper maintenance.

C.    GHP makes the following comments regarding fungal remediation at Besteiro Middle School and Aiken Elementary School.

    1.    Rimkus' Report of Findings, Sampling for Mold at Aiken Elementary School, July 26, 1999, makes no remediation recommendations. In addition, while fungal growth was identified on building surfaces, Rimkus did not form any conclusion regarding causation, except high humidity, nor did Rimkus provide any quantification.

    2.    Assured's Indoor Air Quality Environmental Survey for Besteiro Middle School and Aiken Elementary School, November 9, 2001, makes no remediation recommendations. Assured did indicate areas where water intrusion events had reportedly occurred; however, the type of water intrusion, the date of the event, or the extent of damage was not detailed.

    3.    Ambiotec's Mold Investigation report for Besteiro Middle School and Aiken Elementary School, May 2002, did, in general terms, make comments regarding causation; however, the report does not detail the damage associated with any specific cause. In addition, the report does not detail any quantities or provide any specific remediation recommendations.

    4.    Rimkus' Report of Findings, Building Water Intrusion Evaluation report, December 20, 2002, does discuss the water damage and fungal growth in terms of causation; however, no quantities were detailed and no dates of occurrences were reported. Finally, no remediation recommendations are given.

    5.    CTEH's Indoor Air Quality Report, January 10, 2003, does make remedial recommendations, provides estimated quantities, and cost estimates, however, no opinion regarding causation was detailed. CTEH refers to Rimkus' 2002 report regarding issues of causation.

    6.    EFI's Remediation Evaluation Assessment, January 20, 2003, does provide quantities for remediation and cost estimates; however, the report does not detail causation in regards to specific damage.

RSL 001365

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 12 of 16

    7.    GHP attempted to compare the locations, quantities, and causes of water damage or fungal growth between Rimkus' 2002 report, CTEH's 2003 report, and EFI's 2003 report to attempt to form an opinion regarding the estimated costs. In addition, GHP has been informed by our client that extensive remediation activities are being conducted at the schools, including correcting the underlying causes. GHP has also been informed that Beirne, Maynard & Parsons has not been provided with any remediation specifications, bid documents, invoices, etc.; therefore, GHP cannot form an opinion regarding costs. GHP reserves the right to provide opinions regarding cost upon review of the appropriate documents.

D.    It is GHP's opinion that all causes of water intrusions, leaks, and humidity problems should be immediately repaired. In GHP's opinion, the following remediation guidelines should be followed. These guidelines are general in nature, and specific circumstances may need specific solutions.

    1.    When fungal growth is observed on ceiling tiles, it is recommended that the ceiling tiles be removed and replaced.

    2.    If there is fungal growth on gypsum board wall or ceiling materials and the growth is on the surface only, then the material can be cleaned and reused. If the growth extends into the gypsum board material or if the gypsum board has lost its structural integrity, then the material should be removed and replaced.

    3.    Wood construction members with fungal growth can be cleaned and sanded; however, if they have lost their structural integrity, those items should be replaced.

    4.    Hard surfaced items, desks, chairs, tables, etc., can be effectively cleaned.

    5.    Soft surfaced items, items with fabric upholstery, can be cleaned as long as fungal growth has not developed.

    6.    Insulation with fungal growth should be replaced as well as insulation that has become saturated with water.

    7.    Carpeting can be cleaned if fungal growth has not developed.

    8.    Fiber board air duct systems can be effectively cleaned if fungal growth has not developed.

RSL 001366

Besteiro Middle School/Aiken Elementary School
January 21, 2004
Page 13 of 16

If you have any questions regarding this report, please do not hesitate to call me at (210) 824-5600.

Sincerely
GOBBELL HAYS PARTNERS, INC. by

Steve M. Hays, CIH
Chairman

Stephen Kenoyer
Environmental Scientist

RSL 001367